GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org
KATRINA A. TOMAS (CA Bar No. 329803)
ktomas@earthjustice.org
EARTHJUSTICE
1 Sansome Street, Suite 1700
San Francisco, California 94104
T: (415) 217-2000 ● F: (415) 217-2040

GABRIEL F. GREIF (CA Bar No. 341537)
ggreif@earthjustice.org
EARTHJUSTICE
707 Wilshire Blvd., Ste. 4300
Los Angeles, CA 90017
T: (415) 217-2000 ● F: (415) 217-2040

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, <br><br> Plaintiff, <br><br> vs. <br><br> U.S. DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in his official capacity as Secretary of the Interior; NATIONAL PARK SERVICE; JESSICA BOWRON, in her official capacity as Acting Director of the National Park Service; KEVIN SCHLUCKEBIER, in his official capacity as Acting Superintendent of Mojave National Preserve, <br><br> Defendants. | No.: 2:26-cv-4002 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1. Plaintiff National Parks Conservation Association (NPCA) challenges Defendants' reversal of position permitting renewed industrial mining operations at the decommissioned Colosseum Mine in Mojave National Preserve without the environmental review and approvals required by federal law. Defendants' illegal decision to reopen Colosseum threatens irreparable harm to a fragile desert ecosystem that Congress has protected for its "outstanding natural, cultural, historical, and recreational values . . . ." 16 U.S.C. § 410aaa-41.

2. Mining at Colosseum ended in 1993. In 1994, Congress established Mojave National Preserve, which transferred federal jurisdiction over Colosseum Mine from the U.S. Bureau of Land Management (BLM) to the National Park Service. In 1995, the Park Service approved a temporary plan to complete reclamation activities at Colosseum Mine. But in 2021, as gold prices surged, the Australian company Dateline Resources Ltd. (Dateline) acquired Colosseum Mine with the intent of reopening the mine.

3. Between 2021 and 2024, consistent with federal laws and regulations, the Park Service repeatedly and unequivocally advised Dateline that no new operations associated with Colosseum could proceed unless BLM confirmed the validity of Dateline's mining claims and the Park Service's Regional Director approved a new plan of operations addressing the environmental impacts of reopening the mine. During this period, the Park Service ordered Dateline to "immediately cease and desist" all operations within the Mojave National Preserve and demanded over $200,000 in damages from Dateline for unauthorized operations that had damaged protected Preserve resources.

4. In April 2025, shortly after the change in presidential administrations, the Park Service abruptly reversed course without explanation. In an April 3, 2025 letter, the Park Service's Acting Director purported to recognize Dateline's "valid existing rights" at Colosseum and asserted that Dateline could rely on an expired

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

environmental review and mining plan of operations approved by BLM in 1985, well before Congress established Mojave National Preserve. On April 14, 2025, the Park Service rescinded its prior decision ordering Dateline to cease its operations and pay for damages to Mojave National Preserve resources.

5. Defendants' decision in April 2025 to authorize the reopening of Colosseum Mine without a valid plan of operations or necessary permits and approvals (April 2025 Decision) is arbitrary, capricious, and violates the Mining in the Parks Act of 1976, the California Desert Protection Act of 1994, and the National Environmental Policy Act of 1969. Plaintiff therefore asks this Court to set aside Defendants' illegal decision, declare that Defendants have violated federal law, and enjoin Defendants from authorizing or allowing any further mining operations or activities in connection with Colosseum Mine pending Defendants' compliance with the law.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1346 because Plaintiff's claims arise under federal law and Defendants are agents of the United States. The Court may issue a declaratory judgment and further relief under 28 U.S.C. §§ 2201-02. An actual justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201 and 5 U.S.C. §§ 701-706.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1), because a substantial part of the public land that is the subject of this action lies in this District.

8. Assignment to the Western Division of this District is proper under General Order No. 16-05 I.B.1.a(1)(b).

## PARTIES

9. NPCA is a non-partisan, non-profit organization headquartered in Washington, D.C. with 1,956,926 members and supporters across the nation and approximately 207,091 members and supporters in California. NPCA's mission is to protect and enhance America's National Park System for present and future

generations. As part of that mission, NPCA also seeks to protect public lands that comprise and/or contribute to intact cultural and ecological landscapes that include National Park System units. NPCA works to preserve iconic public lands like Mojave National Preserve and to address the destructive impacts of extractive industries on national parks.

10. NPCA has members who recreate in Mojave National Preserve in the vicinity of the Colosseum Mine, as well as members who live and work in the gateway communities near and around the Preserve. NPCA's members and supporters enjoy, on a continuing basis, public lands within the Preserve and surrounding BLM lands that will be affected by renewed operations at Colosseum Mine. NPCA's members derive professional, aesthetic, recreational, and educational enjoyment from the natural ecosystems of the Preserve and its members are actively engaged in protecting the viewsheds, soundscapes, airsheds, and other values that make the Preserve unique and worthy of protection.

11. NPCA's members include cultural resource and archaeology enthusiasts, hikers, mountain bikers, canyoneers, educators, bird- and wildlife-watchers, and photographers who visit Mojave National Preserve. NPCA's work to protect and defend the Preserve benefits its members' interests by protecting the area from disruption and damage caused by development, mining, and other activities. These protections are essential to preserving the unparalleled scientific, cultural, ecological, and scenic values of the area.

12. NPCA has been, is being, and will continue to be adversely affected and irreparably injured by Defendants' April 2025 Decision to authorize renewed mining activity at Colosseum Mine. NPCA's members will be injured by the noise, pollution, and adverse impacts to plants and wildlife associated with reopening, operation and maintenance of Colosseum Mine. NPCA members have taken, and will take, personal and professional trips for hiking, birding, sight-seeing, and observing wildlife and plants in the Preserve.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

13. The injuries described above are caused by Defendants' April 2025 Decision challenged herein, because that decision allows Dateline to undertake harmful activities that would otherwise be illegal or impracticable. NPCA's injuries would be redressed by the relief sought therein. NPCA has no adequate remedy at law.

14. Defendant U.S. Department of the Interior is an executive department of the United States government responsible for the conservation and management of the nation's natural resources, including its public lands, wildlife and endangered species, resources, mineral estate, and cultural heritage. In this managerial capacity, the U.S. Department of the Interior is responsible for implementing and complying with federal law, including the federal laws under which this action is brought.

15. Defendant Doug Burgum is the Secretary of the U.S. Department of the Interior and is sued in his official capacity.

16. Defendant National Park Service is the administrative agency within the Department of the Interior responsible for managing the National Park System, including Mojave National Preserve. In this managerial capacity, the Park Service is responsible for implementing and complying with federal law, including the federal laws under which this action is brought.

17. Defendant Jessica Bowron is the Comptroller for the National Park Service and is currently exercising the delegated authority of the Director of the National Park Service. She is sued in her official capacity.

18. Defendant Kevin Schluckebier is the Acting Superintendent of Mojave National Preserve and is sued in his official capacity.

<strong><u>FACTUAL BACKGROUND</u></strong>

**I.     Mojave National Preserve**

19. In 1994, Congress determined "the federally owned desert lands of southern California constitute a public wildland resource of extraordinary and inestimable value." California Desert Protection Act of 1994, Pub. L. 103-433, Oct. 31, 1994, 108 Stat. 4471, § 2(a)(1).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

20.     Along with Death Valley and Joshua Tree National Parks, the California Desert Protection Act of 1994 "established the Mojave National Preserve, comprising approximately one million four hundred nineteen thousand eight hundred acres." *Id.* § 502 (codified at 16 U.S.C. § 410aaa-42). Congress directed the Secretary of the Interior to "administer the preserve in accordance with this title and with the provisions of law generally applicable to units of the National Park System." *Id.* § 506(a) (codified at 16 U.S.C. § 410aaa-46(a)).

21.     Located between Los Angeles and Las Vegas, Mojave National Preserve currently spans 1.6 million acres of diverse desert habitat, making it the third-largest unit of the National Park System in the contiguous United States. The Preserve protects an expanse of desert lands that represent a mosaic of three of the four major North American desert ecosystems: the Great Basin, Sonoran, and Mojave. Approximately half of Mojave National Preserve (695,200 acres) is Congressionally designated as wilderness. The Preserve's remoteness, vast open spaces, and lack of development instill a sense of discovery in visitors and allow them to experience a wide variety of historical and natural features that exist nowhere else in the United States in such close proximity to one another.

22.     Mojave National Preserve encompasses thirty unique ecosystems, including pinyon-juniper woodlands, Joshua tree woodlands, cactus-yucca scrub, and desert dunes. The Preserve's pinyon-juniper woodlands generally grow at the higher elevations of the Clark, Granite, New York, and Providence Mountains. The Preserve provides important habitat for populations of bighorn sheep as well as critical habitat for the desert tortoise, which is listed as threatened under the federal Endangered Species Act and endangered under the California Endangered Species Act.

23.     Mojave National Preserve also has a vibrant cultural history. Among its rocky outcrops lies evidence of early human uses, including archeological sites dating back 10,000 years. Arrow points, pestles, pottery sherds, and rock art sites relay stories of the Mojaves, Chemehuevis, and Paiutes and provide evidence of these early

6

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

inhabitants of the Mojave Desert. These lands also served as an important transportation corridor for indigenous communities, connecting the coastal tribes of California with tribes along the Colorado River and beyond.

## II. Colosseum Mine

24. Colosseum Mine is located on the northeast slope of the Clark Mountains, within the discontiguous portion of Mojave National Preserve on the north side of Interstate 15. With an elevation ranging from 5,000 to 6,000 feet above sea level, Colosseum is surrounded by an area of the Preserve characterized by pinyon-juniper woodlands and cactus-yucca scrub.

25. Colosseum operated intermittently as a gold and silver shaft mine from the 1860s until 1942, when all non-strategic metal operations were closed by the War Production Board. During the 1970s, an increasing price for gold attracted new investors who sought to convert Colosseum's existing underground shaft into an open pit mine.

26. In 1972, Draco Mines and its partners performed intermittent exploration drilling at Colosseum. Amselco leased the property from Draco Mines in 1982 and conducted extensive drilling and feasibility studies between 1982 and 1984.

27. In 1986, Dallhold Resources, Inc. acquired Colosseum and converted the shaft mine into a facility with two open pits—a North Pit and South Pit—and related processing facilities. Dallhold eventually became part of Bond International Gold, Inc.

28. In November 1989, the Colosseum Mine changed ownership once more when Lac Minerals, Ltd., acquired the mine through their purchase of Bond International Gold, Inc.'s properties. Colosseum, Inc., a subsidiary of Lac Minerals Ltd., operated the mine until 1993.

29. Extraction at Colosseum ended in 1992 and the mine went into reclamation in 1993.

30. In 1996, Barrick Gold Corporation acquired Colosseum Mine. In 2021, Dateline acquired Colosseum from Barrick Gold Corporation.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

31.    Today, Colosseum Mine occupies the northern end of a gently sloping plateau-like area, which extends from the north flank of Clark Mountain to one large abandoned open pit, the South Pit, which is 220 feet deep and a third of a mile across. Most of the mining facility lies on unpatented federal land; but two patented claims are located in the South Pit. The mine is accessed by Colosseum Road, a National Park Service-managed road that runs east from the mine towards the Ivanpah Solar Electric Generating System near Interstate 15.

<b><u>STATUTORY BACKGROUND</u></b>

**I.    The Mining in the Parks Act of 1976**

32.    The Mining in the Parks Act reflects Congress' judgment that "continued application of the mining laws of the United States to [Park] System units to which the mining laws apply conflicts with the purposes for which the [Park] System units were established." 54 U.S.C. § 100731.

33.    The Mining in the Parks Act requires that "all activities resulting from the exercise of mineral rights on patented or unpatented mining claims within any [Park] System unit shall be subject to such regulations prescribed by the Secretary [of the Interior] as the Secretary considers necessary or desirable for the preservation and management of the System units." 54 U.S.C. § 100732.

34.    In accordance with this mandate, the Park Service has promulgated regulations that "control all activities within units of the National Park System resulting from the exercise of valid existing mineral rights on patented or unpatented mining claims without regard to the means or route by which the operator gains access to the claim." 36 C.F.R. § 9.1.

35.    The Park Service's regulations provide that "[n]o operations shall be conducted within any [Park System] unit until a plan of operations has been submitted by the operator to the Superintendent and approved by the Regional Director." 36 C.F.R. § 9.9(a).

8

36.     The Park Service regulations define "operations" as "[a]ll functions, work and activities in connection with mining on claims, including: prospecting, exploration, surveying, development and extraction; dumping mine wastes and stockpiling ore; transport or processing of mineral commodities; reclamation of the surface disturbed by such activities; and all activities and uses reasonably incident thereto, including construction or use of roads or other means of access on National Park System lands, regardless of whether such activities and uses take place on Federal, State, or private lands." 36 C.F.R. § 9.2(b).

**II.      The California Desert Protection Act of 1994**

37.     The California Desert Protection Act established Mojave National Preserve to "perpetuate in their natural state significant and diverse ecosystems of the California desert" and "preserve unrivaled scenic, geologic, and wildlife values associated with these unique natural landscapes." Pub. L. 103-433, Oct. 31, 1994, 108 Stat. 4471, § 2(b)(1).

38.     "Subject to valid existing rights," the California Desert Protection Act provides that "all Federal lands within the [Mojave National] [P]reserve are hereby withdrawn from all forms of entry, appropriation, or disposal under the public land laws; from location, entry, and patent under the United States mining laws; and from disposition under all laws pertaining to mineral and geothermal leasing, and mineral materials, and all amendments thereto." 16 U.S.C. § 410aaa-47.

39.     The California Desert Protection Act confirms that all mining claims located within Mojave National Preserve are subject to the Mining in the Parks Act. 16 U.S.C. § 410aaa-48.

40.     The California Desert Protection Act also provides that the Secretary of the Interior "shall not approve any plan of operation prior to determining the validity of the unpatented mining claims, mill sites, and tunnel sites affected by such plan within the preserve and shall submit to Congress recommendations as to whether any valid or patented claims should be acquired by the United States, including the

estimated acquisition costs of such claims, and a discussion of the environmental consequences of the extraction of minerals from these lands." 16 U.S.C. § 410aaa-49(a).

41.     BLM has responsibility for conducting validity determinations on unpatented mining claims throughout the United States, including in the National Park System.

**III.    The National Environmental Policy Act of 1969**

42.     The National Environmental Policy Act (NEPA) declares "it is the continuing policy of the Federal Government . . . to use all practicable means and measures . . . to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations of Americans." 42 U.S.C. § 4331(a).

43.     At its core, NEPA requires federal agencies to prepare a "detailed statement" (generally referred to as an "environmental impact statement" or "EIS") for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Among other things, an EIS must address:

> (i) reasonably foreseeable environmental effects of the proposed agency action;
>
> (ii) any reasonably foreseeable adverse environmental effects which cannot be avoided . . . ; [and]
>
> (iii) a reasonable range of alternatives to the proposed agency action, including an analysis of any negative environmental impacts of not implementing the proposed agency action . . . ;

*Id.*

44.     Consistent with NEPA, "[i]f there remains major Federal action, to occur, and if the new information is sufficient to show that the remaining action will affect the quality of the human environment in a significant manner or to a significant extent not already considered, a supplemental EIS must be prepared." *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 374 (1989) (internal quotations omitted).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PROCEDURAL BACKGROUND

45.    In 1976, the Federal Land Policy and Management Act (FLPMA) granted BLM jurisdiction over the federal land underlying Colosseum Mine.

46.    In 1980, BLM promulgated regulations pursuant to FLPMA establishing procedures and standards to "prevent unnecessary or undue degradation of public lands by operations authorized by the mining laws." 43 C.F.R. § 3809.1(a). Among other things, BLM's regulations require putative miners to "submit a plan of operations and obtain BLM's approval before beginning operations." *Id.* § 3809.11(a).

47.    In 1982, consistent with BLM's Part 3809 regulations implementing FLPMA, BLM approved a plan of operations to conduct gold mining operations at Colosseum Mine. Between 1982 and 1987, BLM amended and modified the plan of operations for Colosseum at least seven times to memorialize changes in operators, authorize subsequent operational phases, and incorporate additional exploratory work into the operative plan.

48.    BLM's approvals of the 1982 plan of operations and subsequent amendments for Colosseum Mine confirmed that "approval of [the] plan will not now or in the future serve as a determination of the ownership or the validity of any mining claim to which it may relate." BLM has never conducted a validity determination for the unpatented mining claims at Colosseum Mine.

49.    In 1985, state and federal authorities finalized a joint Environmental Impact Statement and Environmental Impact Report (EIS/EIR) prepared under NEPA and the California Environmental Quality Act (CEQA) to assess environmental impacts from the plan of operations for Colosseum Mine. In 1987, BLM prepared an additional environmental assessment under NEPA to analyze impacts from a proposed access road, powerline, and pipeline.

50.    The record of decision for the EIS/EIR for Colosseum states that the life of the project would be "11 to 12 years," including 2 years for construction and development, 9 for production operations, and 1 for reclamation. The plan of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

operations likewise described the life of the mine, from excavation through beginning of reclamation, as approximately 12 years. The plan also confirmed the final pre-reclamation phase of operations at Colosseum will "end with the exhaustion of economically recoverable sulfide [gold] ore from within the open pit." The operations contemplated in the project approvals for Colosseum included milling and cyanidation processes for gold extraction, as well as open pit mining, leaching, and reclamation procedures.

51.    The plan of operations also noted, as part of the reclamation phase, that "[e]xploration drilling may still be continuing, and if feasible, preparations for underground mining may be underway." However, the plan of operations acknowledged that an additional amendment would be required to pursue underground mining operations after pit mining concluded, and that "no extended periods of nonoperation are contemplated" within the scope of the plan. Following reclamation, the plan of operations anticipated that the site would be opened for human recreation and wildlife habitat.

52.    In 1992, extraction at Colosseum ended and the mine went into reclamation, with milling continuing on-site until 1993.

53.    In 1994, the California Desert Protection Act created the Mojave National Preserve and transferred jurisdiction of the federal land underlying Colosseum Mine from BLM to the National Park Service.

54.    On July 14, 1995, National Park Service Field Director Stanley Albright issued a letter granting a "temporary approval" to the then-owners of Colosseum Mine to complete reclamation activities under the 1982 plan of operations and subsequent amendments. The 1995 letter limited the temporary authorization to only the reclamation phase of operations, which was "nearing . . . completion," and required submission of a new proposed plan of operations before initiating the monitoring phase. The 1995 letter further stated that the Park Service, "in close collaboration with

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the BLM and San Bernardino County," would determine whether reclamation was completed in accordance with the plan of operations.

55.     In October 1995, then-operators of Colosseum Mine submitted a Closure Plan for Colosseum to the California Regional Water Quality Control Board, Lahontan Region, which specified the closure and post-closure maintenance of the unlined tailing impoundment, two leachate collection surface impoundments, and four waste rock piles at the mine.

56.     On February 8, 1996, the California Regional Water Quality Control Board, Lahontan Region issued Order No. 6-96-11 following the submission of the complete closure plan. The order confirmed that Colosseum Mine "is no longer operating" and specified that "closure and post-closure maintenance will be performed in a manner which protects water quality."

57.     In 2021, Dateline acquired Colosseum Mine.

58.     On May 2, 2022, a Mojave National Preserve ranger discovered contractors in the process of demobilizing diamond core drilling equipment from the Colosseum Mine site. Mojave National Preserve rangers informed the contractors that no activities could be conducted on the Preserve without a permit from the Park Service.

59.     On May 13, 2022, the Park Service inspected Colosseum and discovered active, unpermitted road maintenance along approximately 6 miles of road to the mine, stretching across both Park Service and BLM land. The unpermitted activities included the use of "heavy earthmoving equipment" off-road, causing vegetation damage. Large, perennial shrubs had been uprooted and pushed aside. Further, areas near the mine pit had been recently bladed, leveled, and vegetation removed.

60.     On June 6, 2022, the Superintendent of Mojave National Preserve ordered Dateline to cease and desist activities in the Preserve until a new plan of operations was submitted and approved by the Park Service. The Superintendent also directed Dateline to apply for and receive a special use permit from Mojave National

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Preserve allowing limited access to the site to fulfill Dateline's obligations under Regional Board Order No. 6-96-11. The Superintendent's letter confirmed "no access to the site will be permitted until a plan of operations has been submitted and approved."

61.     On February 2, 2023, the National Park Service issued a Special Use Permit, NPS-MOJA-5300-23-0011, so that Dateline contractors could legally undertake the obligatory water quality monitoring required in Regional Board Order No. 6-96-11. The terms and conditions of the Special Use Permit specifically precluded the use of heavy equipment and road maintenance without further compliance and monitoring.

62.     On February 8, 2023, due to Dateline's ongoing violations, the Park Service issued a letter rescinding the 1995 temporary authorization to complete reclamation activities. The Park Service again ordered Dateline to cease and desist operations within the boundaries of Mojave National Preserve and demanded that Dateline submit a special use permit application limited to the activities required by Regional Board Order No. 6-96-11, as well as a proposed plan of operations for review.

63.     On March 25, 2023, a National Park Service ranger encountered Dateline contractors operating a bulldozer and other heavy equipment on Colosseum Road. The ranger informed Dateline contractors that they were in violation of their Special Use Permit, directing them to stop work and remove their equipment from the Preserve. The ranger returned the following day to find the road work had continued to completion and observed that heavy equipment remained parked at the site. In a subsequent inspection, National Park Service botanists documented the additional destruction of more than 300 perennial plants.

64.     In a letter dated March 31, 2023, the Acting Superintendent of Mojave National Preserve revoked the water quality monitoring Special Use Permit for willful violation of the permit's specified terms and conditions.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

65.    On June 9, 2023, the National Park Service sent Dateline a letter confirming the federal laws and regulations governing mining operations within Mojave National Preserve, including those related to access, surface disturbance, exploration, drilling, extraction, reclamation, transportation, and water use. The letter directed Dateline to submit a proposed plan of operations compliant with 36 C.F.R. Part 9, Subpart A describing Dateline's intended operations on its patented and unpatented mining claims and millsites and plans for accessing the site. The June 2023 letter further reiterated that the temporary authorization issued by the Park Service in 1995 "applied only to [the] reclamation and treatment/monitoring" described in the 1982 plan of operations and subsequent amendments. The June 2023 letter confirmed that the temporary authorization "did not 'recognize' or 'acknowledge' that the BLM-approved plan of operations would be 'valid' into perpetuity in Mojave National Preserve, that it would cover all types of operations in addition to reclamation and tailings pond water treatment, or that it would allow future mining operators at the Colosseum Mine site, such as [Dateline], to ignore [Park Service] laws and regulations."

66.    The National Park Service's June 2023 letter to Dateline also confirmed that BLM must conduct a validity determination of Dateline's unpatented mining claims and mill sites prior to Dateline commencing any further operations. The Park Service made clear that BLM had not undertaken a validity determination for any of the unpatented mining claims located at Colosseum Mine, and that Dateline was not holding its claims in compliance with applicable laws and regulations.

67.    The National Park Service's June 2023 letter again directed Dateline to cease operations and remove its equipment from Mojave National Preserve. The June 2023 letter flagged that continued operations without Park Service approval would constitute a trespass.

68.    On July 21, 2023, the National Park Service demanded $213,387 in restoration costs under the System Unit Resource Protection Act (SURPA) for damage

to Preserve lands due to Dateline and its contractors' actions in May 2022 and March 2023. The Park Service renewed its demand for restoration costs in a May 9, 2024 e-mail. On July 24, 2024, Dateline requested additional time to respond to this renewed demand and requested a settlement discussion to take place in October 2024.

69. President Donald J. Trump took office on January 20, 2025.

70. On April 3, 2025, the National Park Service sent a letter to Dateline that purports to recognize Dateline's "valid existing rights" and affirm that the "plan of operations approved by BLM remains in effect." The Park Service also asserted that it "does not require a validity examination" for the unpatented mining claims and would only require a new plan of operations "for a new mining operation not encompassed within the existing, approved plan [of operations]." The Park Service's April 3, 2025 letter states that it "supersedes and replaces any other letter or communication" regarding Colosseum Mine and renders any contrary Park Service communications "invalid and of no force or effect."

71. On April 8, 2025, BLM issued a press release stating that the "Department of Interior today recognized the Colosseum Mine in California can continue mining operations under its existing mine plan of operations with the Bureau of Land Management."

72. On April 10, 2025, the Superintendent of Mojave National Preserve reiterated to Dateline that the Park Service "recognizes [Dateline's] valid existing rights as stated in the [plan of operations approved by BLM] . . . and that these rights remain valid subsequent to passage of the California Desert Protection Act." The Superintendent stated that the "plan of operations approved by BLM remains in effect" and confirmed that "Mojave National Preserve is rescinding the July 21, 2023 . . . demand for damages" caused by Dateline's unauthorized roadwork and movement of heavy equipment along the access road leading to Colosseum.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

73. In May 2025, President Trump highlighted Colosseum Mine in his official Truth Social weekly update, stating: "The Colosseum Mine, America's second rare earths mine, has been approved after years of stalled permitting."

74. Between October 2024 and March 2026, Dateline performed additional development, including diamond drill rig testing and other exploration work, and grading along the access road leading to Colosseum, as well as surrounding areas. In addition, Dateline leveled areas of Preserve land, resulting in continued degradation of vegetation and natural resources beyond the damages assessed by the Park Service in 2022 and 2023.

## FIRST CAUSE OF ACTION

### (Violation of the Mining in the Parks Act)

75. Plaintiff re-alleges and incorporates, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

76. Defendants' April 2025 Decision authorizing Dateline to proceed with renewed operations at Colosseum Mine constitutes "final agency action for which there is no other adequate remedy in a court" under the Administrative Procedure Act (APA). 5 U.S.C. § 704.

77. Defendants' compliance with the Mining in the Parks Act is subject to judicial review under the APA. The APA provides that courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

78. Defendants' April 2025 Decision authorizing Dateline to proceed with operations at Colosseum Mine is not in accordance with the Mining in the Parks Act.

79. The Mining in the Parks Act provides that all mining activities within any Park System unit are subject to such regulations prescribed by the Secretary of the Interior. 54 U.S.C. § 100732. These implementing regulations provide that "[n]o operations shall be conducted within any [National Park System] unit until a plan of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

operations has been submitted by the operator to the Superintendent and approved by the Regional Director," and that "[a]ll operations within any unit shall be conducted in accordance with an approved plan of operations." 36 C.F.R. § 9.9.

80.     The National Park Service has never received or approved a plan of operations for extraction or exploration at Colosseum Mine. Moreover, neither the 1982 plan of operations and subsequent amendments approved by BLM nor the National Park Service's 1995 temporary authorization encompassed or contemplated further mining at Colosseum. BLM's plan of operations specified it would be effective for, at most, twelve years from commencement of mining operations, which began in 1987. The Park Service's 1995 authorization was expressly limited to reclamation activities and required a new plan for any renewed mining, development, or other operational activities.

81.     Any renewed mining, exploration, drilling, or road development therefore constitutes new operational activity requiring submission and approval of a new or amended plan of operations. Defendants' decision to allow Dateline to proceed in the absence of a valid plan of operations violates the Mining in the Parks Act and the Park Service's implementing regulations.

82.     Defendants' assertion that BLM's prior plan of operations "remains in effect" is also arbitrary and capricious, in violation of the APA.

83.     Agency action is arbitrary and capricious where the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In addition, "the APA requires an agency to provide more substantial justification when its new policy rests upon factual findings that contradict those which underlay its prior policy." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 106 (2015).

84.     Between 1995 and 2023, Defendants found repeatedly that BLM's prior plan of operations would not encompass renewed mining at Colosseum and that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Defendants could not authorize operations at Colosseum without a new plan of operations. Defendants' April 2025 Decision contradicts their prior findings, and Defendants failed to articulate a satisfactory explanation for their new position, in violation of the APA.

### SECOND CAUSE OF ACTION

### (Violation of the California Desert Protection Act)

85.     Plaintiff re-alleges and incorporates, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

86.     Defendants' compliance with the California Desert Protect Act is subject to judicial review under the APA.

87.     The California Desert Protection Act provides that the Secretary of the Interior "shall not approve any plan of operation prior to determining the validity of the unpatented mining claims, mill sites, and tunnel sites affected by such plan within [Mojave National] [P]reserve." 16 U.S.C. § 410aaa-49(a). The Act also requires the Secretary to "submit to Congress recommendations as to whether any valid or patented claims should be acquired by the United States." *Id*.

88.     The Secretary of the Interior, through BLM or any other subagency, has never determined the validity of the unpatented mining claims at Colosseum Mine. Nor has the Secretary of the Interior, through BLM or any other subagency, ever submitted to Congress recommendations as to whether the patented mining claims at Colosseum Mine should be acquired by the United States.

89.     Defendants' April 2025 Decision authorizing Dateline to proceed with operations at Colosseum without a validity determination as to the unpatented claims and without submitting recommendations to Congress as to acquisition of the patented claims violates the California Desert Protection Act. 16 U.S.C. § 410aaa-49(a).

90.     Defendants' April 3, 2025 assertion that renewed mining at Colosseum "does not require a validity [determination]" is also arbitrary and capricious, in violation of the APA.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

91.    Between 1995 and 2023, Defendants found repeatedly that any new mining operations at Colosseum could not occur in the absence of a validity determination by BLM for the unpatented claims. Defendants' April 2025 Decision contradicts Defendants' prior findings, and Defendants failed to articulate a satisfactory explanation for their new position, in violation of the APA.

### THIRD CAUSE OF ACTION

### (Violation of NEPA)

92.    Plaintiff re-alleges and incorporates, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

93.    Defendants' compliance with NEPA is subject to judicial review under the APA.

94.    Defendants' April 2025 Decision authorizing Dateline to proceed with new mining operations at Colosseum is a "major Federal action[] significantly affecting the quality of the human environment" under NEPA, triggering NEPA's requirement to prepare a detailed statement analyzing the environmental effects of, and reasonable alternatives to, their decision. 42 U.S.C. § 4332(2)(C).

95.    In violation of NEPA, Defendants did not prepare any statement or analysis evaluating the environmental impacts of, or alternatives to, their April 2025 Decision authorizing Dateline to proceed with mining operations at Colosseum.

96.    In addition, new information and changed circumstances that post-date the 1985 EIS/EIR for Colosseum Mine—such as, but not limited to, the establishment of Mojave National Preserve in 1994 and the expiration of the originally-contemplated life of the mine—necessitate supplemental NEPA analysis. *Marsh*, 490 U.S. at 374. Defendants' failure to address the environmental impacts of renewed mining operations at Colosseum therefore violated NEPA.

### PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests an order from this Court:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Setting aside and vacating Defendants' April 2025 Decision authorizing Dateline to proceed with operations at Colosseum, as well as any subsequent agency actions relying on the April 2025 Decision;

2. Declaring that Defendants' April 2025 Decision violated the Mining in the Parks Act, California Desert Protection Act, and NEPA;

3. Enjoining Defendants from authorizing or otherwise allowing further operations at Colosseum Mine pending compliance with all applicable laws and regulations;

4. Awarding Plaintiff its costs of litigation, including reasonable attorneys' fees and costs;

5. Granting such additional relief as the Court may deem proper; and

6. Retaining jurisdiction over this matter until Defendants remedy the violations of law complained of herein.

Dated: April 15, 2026                    Respectfully submitted,

/s/ Gregory C. Loarie
GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org
KATRINA A. TOMAS (CA Bar No. 329803)
ktomas@earthjustice.org
EARTHJUSTICE
1 Sansome Street, Suite 1700
San Francisco, California 94104
T: (415) 217-2000 ● F: (415) 217-2040

GABRIEL F. GREIF (CA Bar No. 341537)
ggreif@earthjustice.org
EARTHJUSTICE
707 Wilshire Blvd., Ste. 4300
Los Angeles, CA 90017
T: (415) 217-2000 ● F: (415) 217-2040

*Counsel for Plaintiff*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF