GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org
KATRINA A. TOMAS (CA Bar No. 329803)
ktomas@earthjustice.org
EARTHJUSTICE
1 Sansome Street, Suite 1700
San Francisco, California 94104
T: (415) 217-2000 ● F: (415) 217-2040

GABRIEL F. GREIF (CA Bar No. 341537)
ggreif@earthjustice.org
EARTHJUSTICE
707 Wilshire Blvd., Ste. 4300
Los Angeles, CA 90017
T: (415) 217-2000 ● F: (415) 217-2040

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR, *et al*., <br><br> Defendants. | No.: 2:26-cv-4002-CAS-AS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: July 27, 2026 <br> Time: 10:00 AM <br> Judge: Hon. Christina A. Snyder |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 6

BACKGROUND ........................................................................................................... 6

LEGAL STANDARD .................................................................................................. 11

ARGUMENT ............................................................................................................... 11

I.    NPCA IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM THAT THE PARK SERVICE'S APRIL 2025 DECISION TO APPROVE COLOSSEUM VIOLATED THE MINING IN THE PARKS ACT AND IS ARBITRARY AND CAPRICIOUS. ................................................................................................... 11

    A.    NPCA Has Standing, and This Court Has Jurisdiction to Review the Park Service's April 2025 Decision Under the Administrative Procedure Act. ... 11

    B.    The Park Service's April 2025 Decision Wrongly Concludes that New Operations at Colosseum May Proceed Under BLM's 1985 Plan of Operations. .................................................................................................. 14

II.   INJUNCTIVE RELIEF IS NECESSARY TO PREVENT IRREPARABLE HARM. ................................................................................................................ 18

III.  THE EQUITIES TIP SHARPLY IN FAVOR OF TEMPORARILY ENJOINING FURTHER OPERATIONS AT COLOSSEUM PENDING THE RESOLUTION OF THIS CASE. ...................................................................................................... 21

IV.   THE COURT SHOULD IMPOSE NO BOND OR ONLY A NOMINAL BOND. ........................................................................................................................... 23

CONCLUSION ............................................................................................................ 23

CERTIFICATE OF COMPLIANCE .......................................................................... 25

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ..................................................................21, 23

*Amoco Prod. Co. v. Village of Gambell*,
480 U.S. 531 (1987).................................................................................19, 21

*Bales v. Ruch*,
522 F. Supp. 150 (E.D. Cal. 1981) ...............................................................21

*Barahona-Gomez v. Reno*,
167 F.3d 1228 (9th Cir. 1999) .................................................................11, 21

*Bennett v. Spear*,
520 U.S. 154 (1997)............................................................................12, 13 14

*California ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*,
766 F.2d 1319 (9th Cir. 1985) .......................................................................23

*Columbia Riverkeeper v. U.S. Coast Guard*,
761 F.3d 1084 (9th Cir. 2014) .......................................................................13

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) .......................................................................21

*Env't Prot. Info. Ctr. v. Carlson*,
968 F.3d 985 (9th Cir. 2020) .........................................................................22

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977)........................................................................................12

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) .......................................................................23

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,
752 F.3d 755 (9th Cir. 2014) ...........................................................19, 20, 21, 22

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016)................................................................22

*Massachusetts v. Env't. Prot. Agency*,
549 U.S. 497 (2007)............................................................................12

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983).............................................................................17

*N. Alaska Env't Ctr. v. Hodel*,
803 F.2d 466 (9th Cir. 1986) .............................................................16

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005)............................................................................18

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
465 F.3d 977 (9th Cir. 2006) ........................................................ 13, 14

*Organized Village of Kake v. U.S. Dep't of Agric.*,
795 F.3d 956 (9th Cir. 2015) .............................................................18

*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015)..............................................................................17

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) ...........................................................22

*S. Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*,
588 F.3d 718 (9th Cir. 2009) ........................................................11, 19, 22, 23

*S.F. Herring Ass'n v. Dep't of the Interior*,
946 F.3d 564 (9th Cir. 2019) .............................................................13

*Se. Alaska Conservation Council v. U.S. Army Corps*,
472 F.3d 1097 (9th Cir. 2006) ...................................................... 22, 23

*Sierra Club v. Bosworth*,
510 F.3d 1016 (9th Cir. 2007) ...........................................................19

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)................................................................................11

4

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**Statutes**

5 U.S.C.
   § 551(4)......................................................................................................12
   § 551(11)(B)..............................................................................................12
   § 551(13)....................................................................................................12
   § 704..........................................................................................................12
   § 706(2)(A) ...............................................................................................14

16 U.S.C.
   § 410aaa *et seq.* .........................................................................................7
   § 410aaa–43 ................................................................................................7
   § 410aaa–47 ................................................................................................7
   § 410aaa–48 ................................................................................................7

43 U.S.C.
   § 1781(a)(2) ..............................................................................................19

54 U.S.C.
   § 100731 *et seq.* . ..................................................................................6, 14
   § 100732....................................................................................................14

California Desert Protection Act,
   Pub. L. No. 103-433, 108 Stat. 4471 (1994) ....................................7, 19

**Rules and Regulations**

36 C.F.R.
   § 9.2(b) (1977) ..........................................................................................15
   § 9.9 (1977)...............................................................................8, 14, 15, 16
   § 9.10(g) (1977) ........................................................................................16

43 C.F.R.
   § 3809.5 (2000)...........................................................................................7
   § 3809.11(a) (1980) ..................................................................................15

Fed. R. Civ. P. 65(a).........................................................................................6

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 65(a), Plaintiff National Parks Conservation Association (NPCA) moves for a preliminary injunction to maintain the status quo and prevent irreparable harm to Mojave National Preserve while this case is adjudicated. Specifically, NPCA asks the Court to enjoin the federal defendants (collectively, the Park Service) (1) to set aside their April 2025 determination that allowed new mining operations to proceed at the Colosseum Mine in Mojave National Preserve, (2) to halt and prohibit further operations at Colosseum pending the resolution of this case, and (3) to monitor and enforce public access rights along Colosseum Road leading to and past Colosseum Mine.

A preliminary injunction is warranted. First, NPCA is likely to succeed on the merits. While the Park Service has yet to lodge the administrative record, documents produced by the Park Service under the Freedom of Information Act or otherwise made available to the public establish that the Park Service's decision to reverse course and green-light operations at Colosseum Mine violated the Mining in the Parks Act, 54 U.S.C. §§ 100731–100737, and is arbitrary and capricious. Second, a preliminary injunction is necessary to prevent further irreparable harm to the environment and the public, as the mine operator has recently begun significant road widening, bulldozing of vegetation, grading and development at Colosseum and has obstructed public access within Mojave National Preserve. Third, the equities tip sharply in favor of a preliminary injunction to maintain the status quo and preserve the Court's ability to craft an appropriate remedy after full briefing and consideration of the merits.

# BACKGROUND

NPCA filed this action on April 15, 2026, challenging the Park Service's decision to allow new mining at Colosseum Mine within Mojave National Preserve in southeastern California. Pl.'s Compl. for Declaratory and Injunctive Relief (Compl.), Dkt. No. 1. For purposes of this motion, the relevant facts leading up to the decision at

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

issue are set forth in official government documents and are beyond reasonable dispute. In 1985, the U.S. Bureau of Land Management (BLM) approved a "plan of operations" for the Colosseum Mine (1985 Plan) pursuant to the Federal Land Policy and Management Act and the National Environmental Policy Act. Decl. of Chance Wilcox (Wilcox Decl.), Ex. A at 179–185. BLM's 1985 Plan permitted Colosseum's then-owner, Amselco Exploration, Inc., to construct an open-pit gold mining operation on what was then federal public land under BLM's jurisdiction. Wilcox Decl., Ex. A. at 179, 205. The 1985 Plan specified the life of the project would be 11 to 12 years, with two years for construction, nine years for gold mining, and one year for "reclamation" of land disturbed by mining activities to stable and environmentally safe conditions. Wilcox Decl., Ex. A at 179.; *see also* 43 C.F.R. § 3809.5 (2000) (BLM regulations defining reclamation). Following reclamation, the 1985 Plan anticipated the Colosseum Mine site would be used for recreation and wildlife habitat. Wilcox Decl., Ex. A at 47–49, 184.

As contemplated by BLM's 1985 Plan, mining operations at Colosseum ended in 1993, and the mine went into reclamation. Wilcox Decl., Ex. B at 225. One year later, Congress enacted the California Desert Protection Act of 1994 (CDPA), Pub. L. No. 103-433, 108 Stat. 4471 (1994) (codified at 16 U.S.C. §§ 410aaa–410aaa-91), which fundamentally changed the legal landscape at Colosseum Mine. Declaring that "the federally owned desert lands of southern California constitute a public wildland resource of extraordinary and inestimable value," the CDPA established Mojave National Preserve and transferred management of the federal public land where Colosseum Mine is located from BLM to the National Park Service. Pub. L. No. 103-433, § 2(a)(1), 108 Stat. 4471 (1994); 16 U.S.C. § 410aaa-43. Subject to valid existing rights, the CDPA prohibits new mining within Mojave National Preserve. *Id.* § 410aaa-47. The CDPA also confirms that any mining within the Preserve is subject to the Mining in the Parks Act. *Id.* § 410aaa-48. As a result, preexisting mines within the Preserve are subject to regulations promulgated by the Park Service under the

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Mining in the Parks Act, which provide that "[n]o operations shall be conducted within any [National Park System] unit until a plan of operations has been submitted by the operator to the Superintendent and approved by the Regional Director." 36 C.F.R. § 9.9(a) (1977).

Following the transfer of jurisdiction over Colosseum's land from BLM to the National Park Service, on July 14, 1995, the Park Service issued a letter granting a "temporary approval" to the then-owners of Colosseum Mine to complete reclamation activities in accordance with BLM's 1985 Plan. Wilcox Decl., Ex. C at 238–239. The 1995 letter limited the temporary authorization to only the reclamation phase of operations, which the Park Service confirmed was "nearing . . . completion," and required submission of a new proposed plan of operations before initiating the final, post-reclamation monitoring phase. Wilcox Decl., Ex. C at 238.

In 2021, Dateline Resources Ltd (Dateline), an Australian mining enterprise operating through its subsidiary Colosseum Rare Metals, Inc., acquired Colosseum Mine. *See* Wilcox Decl., Ex. D at 241. In 2022, Mojave National Preserve rangers discovered that Dateline had brought diamond core drilling equipment onto the site. Wilcox Decl., Ex. D at 241. Preserve rangers warned Dateline's contractors that "no activities could be conducted on Mojave National Preserve" without Park Service authorization. Wilcox Decl., Ex. D at 241. Despite these warnings, on May 13, 2022, Park Service discovered active, unpermitted maintenance along six miles of Park Service and BLM land, including off-road use of heavy earthmoving equipment that caused extensive vegetation damage. Wilcox Decl., Ex. D at 242.

In a June 6, 2022 letter following these events, the then-Superintendent of Mojave National Preserve ordered Dateline to "cease and desist activities in [the Preserve] until . . . [a] plan of operations has been approved by the [Park Service]." Wilcox Decl., Ex. D at 242. The Superintendent also directed Dateline to obtain a special use permit for limited access needed to meet reclamation obligations. Wilcox Decl., Ex. D at 242. Dateline's violations continued, however, and on February 8,

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

2023, the Park Service rescinded the temporary authorization it had granted in 1995 to complete reclamation. Wilcox Decl., Ex. E at 246. Again, the Park Service ordered Dateline to "immediately cease and desist any other activities within the boundaries of Mojave National Preserve" pending approval of a plan of operations. Wilcox Decl., Ex. E at 246.

Dateline did not cease operations at Colosseum, prompting the Park Service to send Dateline another letter on June 9, 2023, detailing the federal laws and regulations governing mining in Mojave National Preserve and directing Dateline to submit a plan of operations covering any proposed new operations at Colosseum. Wilcox Decl., Ex. C at 230–235. Pending compliance with the law, the Park Service again ordered Dateline to "cease its current operations and remove its equipment from [the Preserve]," warning that continued unapproved operations would constitute "trespass." Wilcox Decl., Ex. C at 234.

In April 2025, shortly after the change in presidential administrations, the Park Service abruptly reversed course and announced the decision at issue in this case. Wilcox Decl., Exs. F, G, H. On April 3, 2025, the Park Service sent a letter to Dateline that purports to recognize Dateline's "valid existing rights" and states that the Park Service would only require a new plan of operations "for a new mining operation not encompassed within the existing, approved plan [of operations]." Wilcox Decl., Ex. F. The Park Service's April 3, 2025 letter states that it "supersedes and replaces any other letter or communication" regarding Colosseum Mine and renders any contrary Park Service communications "invalid and of no force or effect." Wilcox Decl., Ex. F. BLM followed suit, issuing a press release on April 8, 2025, stating that the "Department of Interior today recognized the Colosseum Mine in California can continue mining operations under its existing mine plan of operations with the Bureau of Land Management." Wilcox Decl., Ex. G at 250. The Superintendent of Mojave National Preserve also reiterated this new decision in a letter to Dateline on April 14,

2025, affirming that "the plan of operations approved by BLM remains in effect." Wilcox Decl., Ex. H.

Following the April 2025 Decision, Dateline undertook relatively limited activities at Colosseum, and it was unclear whether Dateline had the financial backing to reopen the mine. Wilcox Decl. ¶¶ 16–17. In July 2025, NPCA employees visited Colosseum Mine and confirmed limited activities and impacts to Mojave National Preserve. Wilcox Decl. ¶ 16. Specifically, NPCA employees did not notice any new road or construction work at the site as compared to prior visits before the April 2025 Decision. Wilcox Decl. ¶ 16.

In March 2026, NPCA employees visited Colosseum again and discovered that Dateline had begun grading and widening the access road significantly. Wilcox Decl. ¶¶ 19–20. Dateline had erected a berm along the side of the road, with piles of earth and vegetation approximately six feet high. Wilcox Decl. ¶ 19. New, smaller roads had also been carved into the mountain, and NPCA employees observed a large, flattened area of earth along the road where there once was dense vegetation. Wilcox Decl. ¶ 19.

NPCA filed this lawsuit in April 2026, challenging the Park Service's authorization of renewed mining operations at Colosseum under the Mining in the Parks Act, the California Desert Protection Act, and the National Environmental Policy Act. Compl. ¶¶ 75–96, Dkt. No. 1. In May 2026, NPCA employees visited Colosseum yet again hoping to continue monitoring activity at the mine and damage to Preserve lands. Wilcox Decl. ¶¶ 21–22. This time, however, the public access road through Mojave National Preserve to Colosseum had been blocked. Wilcox Decl. ¶¶ 21–22. Two large, concrete barricades flanked the road, featuring a red STOP sign, as well as a sign requiring personal protective equipment to be worn on-site and another sign stating "DANGER-NO ENTRY." Wilcox Decl. ¶¶ 21–22.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## LEGAL STANDARD

NPCA requests that this Court issue a preliminary injunction to prohibit implementation of challenged approvals of mining operations at Colosseum until NPCA's claims can be adjudicated. The purpose of a preliminary injunction is to preserve the status quo of the parties and prevent irreparable loss before judgment can issue. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1234 (9th Cir. 1999). To obtain a preliminary injunction, a plaintiff must demonstrate (1) a likelihood of success on the merits; (2) that it is likely to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of equities favors an injunction; and (4) that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). NPCA meets all these requirements.

## ARGUMENT

**I.  NPCA Is Likely to Succeed on the Merits of Its Claim that the Park Service's April 2025 Decision to Approve Colosseum Violated the Mining in the Parks Act and Is Arbitrary and Capricious.**

A plaintiff need only show a likelihood of success on one claim for the preliminary injunction to be awarded. *See S. Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*, 588 F.3d 718, 728 (9th Cir. 2009). Here, NPCA is likely to succeed on its first cause of action that the Park Service has violated the Mining in the Parks Act. Compl. ¶¶ 75–84, Dkt. No. 1. Specifically, the Park Service reversed course and authorized Dateline to proceed with operations at Colosseum without a valid plan of operations and without any rational explanation.

**A.  NPCA Has Standing, and This Court Has Jurisdiction to Review the Park Service's April 2025 Decision Under the Administrative Procedure Act.**

As an initial matter, this Court has jurisdiction to review the Park Service's April 2025 Decision to reverse course and approve new mining at Colosseum. Declarations filed in support of this motion demonstrate that NPCA's members satisfy

Article III's injury, causation, and redressability requirements. *See* Wilcox Decl. ¶¶ 10–13, 23–25; Decl. of James André (André Decl.) ¶¶ 11–13, 19; *Massachusetts v. Env't. Prot. Agency*, 549 U.S. 497, 517 (2007) (describing the elements of Article III standing). Further, the interests at stake are germane to NPCA's purposes as a conservation organization dedicated to protecting Mojave National Preserve and neighboring public lands. Wilcox Decl. ¶¶ 2–9. Therefore, participation of NPCA's individual members is not necessary, and NPCA has Article III standing to bring this suit. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Moreover, the Park Service's April 2025 Decision authorizing Dateline to proceed with renewed operations at Colosseum Mine constitutes "final agency action for which there is no other adequate remedy in a court[,]" making it subject to judicial review by this Court under the Administrative Procedure Act (APA). 5 U.S.C. § 704.

First, the Park Service's decision qualifies as "agency action" for purposes of the APA. The APA defines the term "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). The term "relief" is further defined to include "recognition of a claim, right, immunity, privilege, exemption, or exception[.]" *Id.* § 551(11)(B). And "rule" encompasses "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency[.]" *Id.* § 551(4). Here, the April 2025 Decision constitutes both the "recognition of a . . . right," and a "statement of . . . particular applicability and future effect," because it recognizes Dateline's "valid existing rights" and confirms that the "plan of operations approved by BLM remains in effect." *Id.* §§ 551(4), (11)(B); Wilcox Decl., Exs. F, G, H.

The April 2025 Decision is also a "final" agency action reviewable under the APA. In *Bennett v. Spear*, the Supreme Court clarified two conditions that must be satisfied for agency action to be considered "final" for purposes of the APA: "First,

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined' or from which 'legal consequences will flow[.]'" 520 U.S. 154, 177–78 (1997) (citations omitted). In this analysis, "courts consider whether the practical effects of an agency's decision make it a final agency action, regardless of how it is labeled." *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1094–95 (9th Cir. 2014).

The Park Service's April 2025 Decision satisfies *Bennett.* It reverses decades of prior agency positioning and asserts that Dateline may begin operations without further permits or deliberation, thereby marking the consummation of the Park Service's decision-making process. *See S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 578 (9th Cir. 2019) (finding agency decision met first *Bennett* requirement where agency arrived at a definitive position regarding its jurisdiction). The April 2025 Decision employs unequivocal language, stating explicitly that the Park Service "does not require . . . further approval of exploration." Wilcox Decl., Ex. F. This April 2025 Decision amounts to the agency's final word as to renewed mining operations at Colosseum. *Id.* ("Any statement or communication from . . . the NPS to the contrary . . . are invalid and of no force or effect."). As further confirmation, in May 2025 President Trump highlighted the Decision in his official Truth Social weekly update stating: "The Colosseum Mine . . . has been approved after years of stalled permitting." Wilcox Decl., Ex. I.

The April 2025 Decision also transmits a decision from which legal consequences flow and rights are determined. "Courts have consistently interpreted *Bennett* to provide several avenues for meeting the second finality requirement." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 986 (9th Cir. 2006). According to the Ninth Circuit, "the general rule is that administrative orders are not final and reviewable 'unless and until they impose an obligation, deny a right, or fix *some* legal relationship as a consummation of the administrative process.'" *Id.* at 986–87

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

(alteration and emphasis in original) (citation omitted). Here, the Park Service's April 2025 Decision fixed a legal relationship between the Park Service and Dateline by confirming the Park Service's official position that BLM's 1985 Plan is valid and legally sufficient. The April 2025 Decision had the further legal consequence of suspending the Park Service's determinations between 1995 and 2023 in which the Park Service found that it must approve a new plan of operations before any further operations at Colosseum may legally commence. *See* Wilcox Decl., Ex. C. Following the April 2025 Decision, Dateline now has all the legal assurances necessary to begin operations at Colosseum without being liable for trespass on Park Service land and without adhering to the procedural requirements of the Mining in the Parks Act, the California Desert Protection Act, or the National Environmental Policy Act. The Park Service's determination is therefore "one by which rights . . . have been determined" and "from which legal consequences will flow[.]" *Bennett*, 520 U.S. at 178 (citation and internal quotation marks omitted).

In short, this Court has jurisdiction to review the Park Service's April 2025 Decision in accordance with the APA.

**B.    The Park Service's April 2025 Decision Wrongly Concludes that New Operations at Colosseum May Proceed Under BLM's 1985 Plan of Operations.**

The APA provides that courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Here, the Park Service's April 2025 Decision authorizing Dateline to proceed with operations at Colosseum Mine is not in accordance with the Mining in the Parks Act.

Exercising its delegated authority under the Mining in the Parks Act, 54 U.S.C. § 100732, the Park Service has promulgated regulations that make clear "[n]o operations shall be conducted within any [National Park System] unit until a plan of operations has been submitted by the operator to the Superintendent and approved by

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

the Regional Director." 36 C.F.R. § 9.9(a) (1977). The regulations also confirm "[a]ll operations within any [National Park System] unit shall be conducted in accordance with an approved plan of operations[,]" *id.*, and they contain no exemption for prior approvals issued by other agencies or for plans of operations approved decades earlier for materially different activities. The regulations define "operations" to include exploration, surveying, development, extraction work, and construction or use of roads on National Park System lands. *Id.* § 9.2(b) (1977).

In this case, the Park Service has never received or approved a plan of operations for extraction or exploration at Colosseum Mine, in violation of 36 C.F.R. section 9.9. As discussed previously, BLM approved a 12-year plan of operations for Colosseum in 1985 consistent with BLM's authority and responsibilities under the Federal Land Policy and Management Act. 43 C.F.R. § 3809.11(a) (1980). But by 1994, when the California Desert Protection Act established Mojave National Preserve and transferred management authority over Colosseum to the Park Service, mining under BLM's 1985 Plan had ended and Colosseum was in the final stages of reclamation. Wilcox Decl., Exs. B, C. The 1985 Plan did not encompass or contemplate further mining at Colosseum. Indeed, the terms of the 1985 Plan specified that it would remain effective for, at most, 12 years from commencement of mining operations, which began in 1987. Wilcox Decl., Ex. A at 179. BLM's 1985 Plan also acknowledged that an additional amendment would be required to pursue underground mining operations after pit mining concluded, and that "no extended periods of nonoperation are contemplated" within the scope of the plan. Wilcox Decl., Ex. A at 49, 99, 127. When Dateline acquired the mine in 2021, pit mining had concluded and extraction operations at Colosseum had not occurred for nearly 30 years. Wilcox Decl., Ex. B at 225 (2023 inspection noting the status of mine operations as "[c]losed with no intent to resume" since June 30, 1993). In short, the Park Service cannot rely on BLM's 1985 Plan to satisfy its obligations under the Mining in the Parks Act.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Nor can the Park Service legally rely on the temporary authorization to complete reclamation at Colosseum that the Park Service granted in 1995 before rescinding in 2022. *See* Wilcox Decl., Ex. E at 246. The Park Service's 1995 temporary authorization was expressly limited to reclamation, and the Park Service made clear in its temporary authorization that the authorization did not permit any mining operations. Wilcox Decl., Ex. C at 238–239. Rather, it explicitly stated that the agency "will require a new proposed plan of operations" before initiating the monitoring phase of operations. Wilcox Decl., Ex. C at 239. The Park Service confirmed this understanding in a June 2023 letter to Dateline, explaining that temporary authorization did not authorize production or exploratory work under the 1985 Plan; it did not make the BLM-approved plan valid in perpetuity, authorize operations beyond reclamation, or allow Dateline to bypass Park Service laws and regulations. Wilcox Decl., Ex. C at 230–235. The Park Service made clear that a new plan of operations would be required for any further activity beyond the scope of the original reclamation plan. Wilcox Decl., Ex. C at 230. The Park Service's 1995 temporary authorization is therefore consistent with the Mining in the Parks Act implementing regulations, which allow the Park Service, "[p]ending approval of the plan of operations," to authorize the temporary continuation of existing operations solely to enable compliance with applicable laws and regulations. 36 C.F.R. § 9.10(g) (1977).

A temporary authorization under section 9.10(g) cannot substitute for, or eliminate, the requirement to submit and obtain approval of a plan of operations under 36 C.F.R. section 9.9. *See N. Alaska Env't Ctr. v. Hodel*, 803 F.2d 466, 470 (9th Cir. 1986) (concluding that the Park Service cannot use the temporary authorization provision to approve a plan of operations). The Park Service acknowledged as much in a February 2023 letter to Dateline, where the agency revoked the 1995 temporary authorization due to unpermitted exploratory underground drilling, grading, and roadwork on Mojave National Preserve lands. Wilcox Decl., Ex. E at 245. After

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

February 2023, there was neither temporary authorization to continue reclamation at Colosseum, nor a valid plan of operations for any further mining operations.

The Park Service's newfound conclusion in April 2025 that Dateline may resume mining operations at Colosseum without a new plan of operations is also arbitrary and capricious in violation of the APA, because it reverses prior Park Service findings without a reasoned explanation. Between 1995 and 2023, the Park Service found repeatedly that neither its 1995 temporary authorization nor the BLM-approved 1985 Plan would encompass renewed mining at Colosseum and that the Park Service could not authorize operations at Colosseum without a new plan of operations. *See, e.g.*, Wilcox Decl., Exs. C, D, E. In April 2025, shortly after the change in presidential administrations, the Park Service arbitrarily reversed course without explanation, authorizing the reopening of Colosseum without a valid plan of operations or necessary permits and approvals. Wilcox Decl., Exs. F, G, H.

Against this backdrop, the Park Service's unexplained reversal of position violates the APA. Agency action is arbitrary and capricious where the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation and internal quotation marks omitted). In addition, "the APA requires an agency to provide more substantial justification when its new policy rests upon factual findings that contradict those which underlay its prior policy[.]" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 106 (2015) (citation and internal quotation marks omitted). In other words, an agency may not simply disregard or contradict its earlier factual determinations without acknowledging and explaining that change.

Here, the Park Service's April 2025 Decision does not grapple with its prior findings that Dateline's mining operations fell outside the scope of the Park Service's approvals or the prior 1985 Plan for Colosseum. The Park Service's April 2025 Decision also does not explain why its prior conclusions of law and fact were

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

incorrect, nor does it provide a reasoned basis for resuscitating an expired authorization granted by BLM long before Mojave National Preserve existed. By failing to articulate a satisfactory explanation for their new position, the Park Service has violated the APA. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) ("Unexplained inconsistency [between agency actions] is . . . a reason for holding an interpretation to be an arbitrary and capricious change[.]"). Indeed, the Ninth Circuit has invalidated similar post-election policy reversals where the agency discarded prior factual findings without a reasoned explanation. *See, e.g.*, *Organized Village of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir. 2015) (finding agency's contradictory policy change, absent justification or explanation, was arbitrary and capricious).

In short, NPCA is likely to succeed on the merits of its first cause of action because the Park Service's decision in April 2025 to reverse course and approve new mining at Colosseum violated the Mining in the Parks Act and is arbitrary and capricious.

## II.   Injunctive Relief Is Necessary to Prevent Irreparable Harm.

Mojave National Preserve, NPCA, and the public generally will suffer irreparable harm in the absence of a preliminary injunction preventing further mining operations at Colosseum.

Relying on the Park Service's April 2025 Decision, Dateline has already graded acres of sensitive Preserve habitat through roadwork, leveling, transportation of equipment, and exploratory drilling. Wilcox Decl. ¶¶ 19–20. Between September 2025 and March 2026, Dateline significantly widened the Colosseum access road leading up to Colosseum through heavy grading, clearing dense vegetation along the side of the road in the process. Wilcox Decl. ¶¶ 18–20. Indeed, Dateline has erected an earthen berm along the side of the road, with piles of earth and vegetation approximately six feet high. Wilcox Decl. ¶ 19. New, smaller roads have also been carved into the mountain to facilitate increased industrial traffic and movement of

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

large equipment at the site, such as drills, machinery, trucks, and infrastructure. Wilcox Decl. ¶ 19. More recently, Dateline has blocked public access to Colosseum Road in Mojave National Preserve, posting no entry signs and limiting access to the National Park Service lands. Wilcox Decl. ¶ 21. The Park Service has declined to stop this activity. *See, e.g.*, Wilcox Decl., Ex. G. These latest developments indicate that Dateline will imminently proceed beyond mere exploratory drilling and into full-scale extraction outside of public view. *See S. Fork Band Council*, 588 F.3d at 728 (enjoining mining activity because of the "likelihood of irreparable environmental injury without adequate study of the adverse effects and possible mitigation").

The resumption of mining operations at Colosseum Mine has caused, and will continue to cause, irreparable harm to a fragile desert environment that Congress chose to preserve because it "constitute[s] a public wildland resource of extraordinary and inestimable value[.]" Pub. L. No. 103-433, § 2(a)(1), 108 Stat. 4471 (1994); *see also* 43 U.S.C. § 1781(a)(2) (finding California's deserts are "extremely fragile, easily scarred, and slowly healed"). Courts have long recognized that "environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033 (9th Cir. 2007) (alteration in original) (internal quotation marks omitted) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987)); *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014) (same). And in the absence of a preliminary injunction, further irreparable harm is imminent here.

New road development and the presence of additional machinery indicate a quick shift from exploration to full-scale extraction operations at Colosseum, which will lead to further irreparable damage to Mojave National Preserve. *See* Wilcox Decl. ¶¶ 14–22 (chronicling change in operations at Colosseum from January 2025 to May 2026). Imminent construction activity at Colosseum would pave the way for round-the-clock drilling and increased traffic on scenic public roads, which will damage the

undisturbed qualities of the Preserve. *See* Wilcox Decl. ¶¶ 23–25; André Decl. ¶¶ 13–19.

Dr. James André, a botanist with expertise on the flora of Mojave National Preserve and the Director of the University of California's Sweeney Granite Mountains Desert Research Center—a research institute located within the Preserve—describes the myriad ecological impacts associated with further activity at the Colosseum Mine. André Decl. ¶¶ 1–5; 10–19. Heavy machinery and dust will irreparably damage the Preserve's fragile ecosystem. André Decl. ¶ 15. The Clark Mountains contain an unusually high concentration of rare and endemic plants, many of which depend on fragile limestone cliffs, calcareous soils, and biological soil crusts that take hundreds of years to develop. André Decl. ¶¶ 7–9, 13–15. Grading, bulldozing, drilling, industrial vehicles, and repeated disturbance would irreparably destroy desert habitat and soil systems. André Decl. ¶ 16–17; *see also* Wilcox Decl. ¶ 24. Dust from construction and other operations will coat plant leaves and interfere with photosynthesis. André. Decl. ¶ 15. Noise and activity will also disrupt pollinators, seed dispersers, and other wildlife that sustain the desert ecosystem. André Decl. ¶ 15. Because desert ecosystems are slow-growing and highly sensitive to disturbance, these harms are not easily repaired once they occur. André Decl. ¶ 13; *see also* Wilcox Decl. ¶ 24. In fact, damaged soils, crusts, plant communities, and ecological connections may not recover on any meaningful timeframe. André Decl. ¶¶ 13–14; *see League of Wilderness Defs.*, 752 F.3d at 764 (granting injunction in part because money damages or planting seedlings cannot remedy loss of slow growing, mature trees).

Additionally, blocking the public road makes it impossible for NPCA and its members to monitor the extent of harm to public land resources near the mine site and diminishes the ability of NPCA's staff and members to use and enjoy the Preserve. Wilcox Decl. ¶¶ 12–13; André Decl. ¶ 18. Courts have enjoined mining operations and found that blocking public access to federal lands through the postage of no

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

trespassing signs constitutes irreparable harm, particularly where there is active degradation of the land. *See Bales v. Ruch*, 522 F. Supp. 150, 156-57 (E.D. Cal. 1981). A preliminary injunction is similarly appropriate here where blocking the main access road and future imminent environmental degradation will prevent public access to the Preserve and prevent NPCA and its members from documenting ongoing damage. Wilcox Decl. ¶¶ 21–22; André Decl. ¶ 18.

A preliminary injunction is the only available recourse to ensure that no further irreparable harm will occur to Mojave National Preserve lands. Absent an injunction at this stage, harm to the Preserve could progress to such an extent that once this case reaches adjudication, any remedy would be incapable of redressing the injuries that would have already occurred. *See Barahona-Gomez*, 167 F.3d at 1234 (finding goal of a preliminary injunction is to preserve the status quo and prevent irreparable loss before judgment can issue).

**III.    The Equities Tip Sharply in Favor of Temporarily Enjoining Further Operations at Colosseum Pending the Resolution of This Case.**

The balance of equities and public interest also support preliminary injunctive relief. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) ("Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge.").

When, as here, environmental injury is "sufficiently likely, . . . the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod. Co.*, 480 U.S. at 545; *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (finding that there is "well-established public interest in preserving nature and avoiding irreparable environmental injury.") As described above, NPCA has demonstrated that it is likely to succeed on the merits of its underlying claims and has also explained the irreparable injuries to public lands and natural resources from the resumed mining operations at Colosseum. NPCA's members will suffer permanent environmental harms from damage to Preserve lands,

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

plants, and natural resources near Colosseum and from the loss of the Preserve's quiet, undisturbed qualities and impaired recreational and aesthetic interests. Wilcox Decl. ¶¶ 23–25; André Decl. ¶¶ 13–19. Such damage would be difficult, if not impossible, to undo. *See League of Wilderness Defs.*, 752 F.3d at 764 (finding harm to environment is not easily reparable through money or similar damages).

By contrast, the Park Service will not be harmed by returning to the orderly and legally compliant process required by the law, including the processes for lawful mining approvals required in the Mining in the Parks Act, California Desert Protection Act, and the Park Service's own regulations. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 992 (9th Cir. 2020) ("The public interest is served by requiring the Forest Service to comply with the law."). Indeed, the government "cannot suffer harm from an injunction that merely ends an unlawful practice[.]" *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see also League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action.") (citations omitted).

Moreover, any economic harm to Dateline would be temporary. *See League of Wilderness Defs.*, 752 F.3d at 765–66 (granting injunction to prevent permanent environmental harm where intervenor's harm only amounted to temporary delay). Potential economic harm caused by a short-term, temporary delay in mining operations during the preliminary injunction does not override the need to ensure that the Park Service follows the law and that environmental and public resources are protected in the meantime. Where, as here, the hardships are "principally in economic terms" that "may for the most part be temporary[,] . . . the balance of hardships favors the [plaintiff]." *S. Fork Band Council*, 588 F.3d at 728 (issuing injunction against mining project); *see also Se. Alaska Conservation Council v. U.S. Army Corps*, 472 F.3d 1097, 1101 (9th Cir. 2006) (finding that "the public interest strongly favor[ed] preventing environmental harm" despite a countervailing public "economic interest in

the mine" because delay would not "reduce significantly any future economic benefit that may result from the mine's operation").

Ultimately, the public interest weighs in favor of "careful consideration of environmental impacts" and suspending further operations until that consideration occurs "comports with the public interest." *All. for the Wild Rockies*, 632 F.3d at 1138 (*quoting S. Fork Band Council*, 588 F.3d at 728).

**IV.   The Court Should Impose No Bond or Only a Nominal Bond.**

In issuing the requested injunctive relief, the Court should exercise its broad discretion to require no or only a nominal bond. *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("Rule 65(c) invests the district court with discretion as to the amount of security required, if any.") (citation, emphasis, and internal quotation marks omitted). Where, as here, plaintiff is a nonprofit organization seeking to vindicate an established public interest in environmental protection, courts routinely waive the bond requirement or impose a nominal bond. *See, e.g., California ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985) (no bond). This Court should do likewise.

**CONCLUSION**

For the foregoing reasons, NPCA requests that this Court enter a preliminary injunction until it has decided NPCA's claims, enjoining Defendants (1) to set aside their April 2025 Decision that renewed mining operations may proceed at Colosseum Mine in Mojave National Preserve, (2) to halt and prohibit further operations at Colosseum pending the resolution of this case, and (3) to monitor and enforce public access rights along Colosseum Road leading to and past Colosseum Mine.

Dated: June 23, 2026              Respectfully submitted,

GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

/s/ Katrina A. Tomas
KATRINA A. TOMAS (CA Bar No. 329803)
ktomas@earthjustice.org
EARTHJUSTICE
1 Sansome Street, Suite 1700
San Francisco, California 94104
T: (415) 217-2000 ● F: (415) 217-2040

GABRIEL F. GREIF (CA Bar No. 341537)
ggreif@earthjustice.org
EARTHJUSTICE
707 Wilshire Blvd., Ste. 4300
Los Angeles, CA 90017
T: (415) 217-2000 ● F: (415) 217-2040

*Counsel for Plaintiff*

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff National Parks Conservation Association, certifies that this brief contains 6,029 words, which:

  X   complies with the word limit of L.R. 11-6.1.


Dated: June 23, 2026                   /s/ Katrina A. Tomas
                                    KATRINA A. TOMAS (CA Bar No. 329803)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION