JEFFER MANGELS & MITCHELL LLP
KERRY SHAPIRO (Bar No. 133912)
*kshapiro@jeffer.com*
MICHAEL H. STRUB, JR. (Bar No. 153828)
*MStrub@jeffer.com*
HA CHUNG (Bar No. 332571)
*hchung@jeffer.com*
3 Park Plaza, Suite 1100
Irvine, California 92614-2592
Telephone: (949) 623-7200
Facsimile: (949) 623-7202

HOLLAND & HART LLP
MURRAY FELDMAN (pro hac pending)
*mfeldman@hollandhart.com*
JENNIFER SCHELLER NEUMANN (pro hac pending)
*jsneumann@hollandhart.com*
AMELIA YOWELL (pro hac pending)
*AGYowell@hollandhart.com*
ANDREA J. DRIGGS (Bar No. 223224)
*AJDriggs@hollandhart.com*
800 W. Main Street, Suite 1750
Boise, Idaho 83702
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

Attorneys for DATELINE RESOURCES LTD. and
COLOSSEUM RARE METALS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION,<br><br>              Plaintiff,<br><br>       v.<br><br>U.S. DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in his official capacity as Secretary of the Interior; NATIONAL PARK SERVICE; JESSICA BOWRON, in her official capacity as Acting Director of the National Park Service; KEVIN SCHLUCKEBIER, in his official capacity as Acting Superintendent of Mojave National Preserve,<br><br>              Defendants. | Case No. 2:26-cv-4002-CAS-AS<br><br>**COLOSSEUM RARE METALS, INC.'S MOTION TO INTERVENE AS A DEFENDANT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**<br><br>Date: August 3, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Christina A. Snyder |

## NOTICE OF MOTION AND MOTION

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 3, 2026 at 10:00 a.m., or as soon thereafter as counsel may be heard, proposed Intervenor-Defendants Dateline Resources Ltd. and its wholly owned subsidiary, Colosseum Rare Metals, Inc. (collectively, "CRM"), hereby move this Court for an order permitting it to intervene as party defendant in this action, pursuant to Federal Rule of Civil Procedure 24(a)(2) (intervention as of right) or, in the alternative, pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) (permissive intervention). This motion is made on the grounds that CRM has a significant protectable interest in the subject matter of this action that may be impaired or impeded if intervention is denied, and that CRM's interest is not adequately represented by the existing parties. CRM has contacted each party to this case through counsel, and no party has stated that they are going to oppose this Motion.

Pursuant to Federal Rule of Civil Procedure 24(c), this Motion is accompanied by CRM's proposed answer and affirmative defenses.

This Motion is based on this Notice of Motion and Motion, the accompanying memorandum of points and authorities, the Declarations of Kerry Shapiro and Stephen Baghdadi, the proposed answer and affirmative defenses, the pleadings and records on file in this action, and such further oral argument and evidence as the Court may consider at the hearing of this motion.

DATED:  July 1, 2026

JEFFER MANGELS & MITCHELL LLP
KERRY SHAPIRO
MICHAEL H. STRUB, JR.


By: _____
      MICHAEL H. STRUB, JR.


HOLLAND & HART LLP
MURRAY FELDMAN
JENNIFER SCHELLER NEUMANN
AMELIA YOWELL
ANDREA J. DRIGGS


By: _____*/s/ Murray Feldman*_____
          MURRAY FELDMAN

Attorneys for Proposed Intervenor-
Defendants Dateline Resources Ltd. and
Colosseum Rare Metals, Inc.

JMM | Jeffer Mangels & Mitchell LLP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 6

II.   STATEMENT OF FACTS .................................................................... 7

      A.    The Colosseum Mine and CRM's interest.................................. 7

      B.    Mining operations ................................................................... 7

      C.    The California Desert Protection Act and CRM's valid existing rights................................................................................... 9

      D.    DOI, BLM, and NPS recognize CRM's continued mine rights ........... 10

      E.    The Government's April 2025 confirmation ........................... 10

      F.    NPCA's challenge................................................................... 11

      G.    CRM has made a significant investment in the Colosseum Mine ........ 11

III.  LEGAL ARGUMENT ........................................................................ 12

      A.    Intervention as of right under Rule 24(a)(2) ......................... 12

            1.    The Motion is timely ................................................... 13

            2.    CRM has a significant protectable interest................... 14

            3.    CRM's interests will be impaired if intervention is denied........ 15

            4.    The existing parties do not sufficiently represent CRM's interests .......................................................................... 16

      B.    Permissive intervention under Rule 24(b)(1)(B) ................... 17

IV.   CONCLUSION .................................................................................. 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ...............................................................................13

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) .........................................................................14, 17

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ...............................................................................15

*Nuesse v. Camp*,
385 F.2d 694 (D.C. Cir. 1967)..............................................................................14

*Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*,
310 U.S. 434 (1940) .............................................................................................17

*Smith v. Los Angeles Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016)................................................................................13

*Sw. Center for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001)................................................................................13

*United States v. City of L.A., Cal.*
288 F.3d 391 (9th Cir. 2002)................................................................................13

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011)........................................................................13, 14

**Statutes**

16 U.S.C. §§ 410aaa-47, 48, 49.............................................................................9

28 U.S.C. § 1331...................................................................................................17

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CRM'S MOTION TO INTERVENE

### I.   INTRODUCTION

On April 15, 2026, the National Parks Conservation Association ("NPCA") brought this action challenging the April 2025 recognition by the National Park Service ("NPS") and the U.S. Department of the Interior ("DOI") of the valid existing rights ("VERs") of Colosseum Rare Metals, Inc. and its parent Dateline Resources Ltd. ("Dateline," and, collectively, "CRM") to undertake mining operations under a previously approved plan of operations at the Colosseum Mine (the "Complaint" or "Compl."). ECF No. 1. The Complaint named the DOI, NPS, and related individuals and entities associated with the federal government as defendants but did not name CRM.

CRM's mining rights and operations are the subject of this litigation. NPCA seeks declaratory and injunctive relief that would set aside the DOI's and NPS's recognition and enjoin any further mining operations or activities at the Colosseum Mine. Compl., Prayer for Relief, ECF No. 1 at 21. Further, on June 23, 2026, NPCA filed a Motion for Preliminary Injunction seeking, among other things, to halt and prohibit further operations at Colosseum pending the resolution of this case." ECF No. 20 (Proposed Order). A ruling in NPCA's favor would directly affect CRM's ability to conduct operations at the mine and would impair CRM's VERs in its plan of operations. Because CRM's economic and property interests are directly at stake, and because the DOI and NPS cannot fully represent CRM's private interests, CRM seeks leave to intervene as a defendant under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, under Rule 24(b)(1)(B).

Pursuant to Local Rule 7-3, CRM has notified of its intention to file this Motion. Declaration of Kerry Shapiro ("Shapiro Decl.") ¶ 3. NPCA has not stated that it will oppose CRM's motion to intervene. *Id*. Nor did they express an intent to not oppose, until NPCA received the papers filed in support of intervention. The DOI and

the other federal defendants have indicated that they do not intend to oppose CRM's motion to intervene. *Id*.

## II.   STATEMENT OF FACTS

### A.   The Colosseum Mine and CRM's interest

The Colosseum Mine (the "Mine") is located on the northern flank of Clark Mountain at the head of Colosseum Gorge in the historic Clark Mountain Mining District of northeastern San Bernardino County, California, approximately seven miles north of Mountain Pass and roughly ten miles west of Stateline, Nevada. The Mine has a long history of gold mining operations and currently is engaged in consequential rare earth element exploration. In 2025 the BLM, in its press release, described the Colosseum Mine as "America's second rare earth elements mine," framing it as part of the national strategy to reduce dependence on China for rare earth elements. *See* www.blm.gov/announcement/colosseum-mine-california-given-go-ahead-continue-mining-operation.

In 2021, CRM acquired the Colosseum Mine from LAC Minerals (USA) LLC. Declaration of Stephen Baghdadi ("Baghdadi Decl.") ¶ 7. CRM is a wholly owned subsidiary of Dateline, which is a publicly traded company. *Id.* ¶ 5. CRM holds direct operational interests in the mine and is identified in the Complaint's Notice of Interested Parties as a party with a pecuniary interest in the outcome of this case. Notice of Interested Parties, ECF No. 5, at 1.

### B.   Mining operations

CRM is the fee owner of two patented lode mining claims: Colosseum No. 1 and Colosseum No. 2. Baghdadi Decl. ¶ 7. In addition to its two patented claims on private land, CRM possesses 80 unpatented mining claims and millsites located on federal land. *Id*. The unpatented mining claims are adjacent to and surround the two patented claims. *Id*. All the unpatented claims and millsites are active and in good standing, and the current annual BLM and County filings have been made as to all claims. *Id*.

Mining at the Colosseum Mine dates back to at least the 1860s. Baghdadi Decl. ¶ 8 & Ex. B. Mining operations occurred intermittently through the early 20th century but were idled during World War II as a non-essential industry. *Id*. Following the war, mining and exploration resumed. *Id.*

On September 10, 1985, the BLM approved the "Third Modification to Reclamation Plan and Plan of Operations, Colosseum Project" in Decision Record No. 3800-EIS-85-69-1792-1, thereby approving the plan of operations for the Mine at issue in this case (the "BLM Approved Plan"). Baghdadi Decl. ¶ 11 & Ex. E. The BLM Approved Plan was supported by a joint Environmental Impact Statement and Environmental Impact Report prepared under NEPA and the California Environmental Quality Act. *Id*.

Roughly concurrent with the BLM Approved Plan, in June 1985 San Bernardino County ("County") approved Reclamation Plan 85M-02 for both the patented and unpatented portions of the Colosseum Mine project area. Baghdadi Decl. ¶ 12 & Ex. F. By approving the Reclamation Plan for the Mine without requiring a use permit for the two patented claims on private land, the County determined the private land was subject to vested mining rights under state law (i.e., grandfathered rights to mine absent the need for a land use permit). Recently, the County issued a Certificate of Land Use Compliance in 2023, re-confirming that "mineral resource development activities" (i.e., mining) on the patented land constitute a legally established conforming land use based on a pre-existing vested right. Baghdadi Decl. ¶ 13 & Ex. G. In other words, after first confirming vested mining rights in the 1980s, the County recently re-confirmed those same vested rights decades later in 2023.

Extraction and other mining activities were performed at the Colosseum Mine until 1993. Baghdadi Decl. ¶ 14. Since then, mineral operations have continued: the Mine owners have maintained the 80 unpatented mining claims, mill sites, and a tunnel site by making annual maintenance payments to BLM and recording notices of intent to hold with the County; maintained reclamation plans and reclamation bonds

Colosseum Rare Metals Inc.'s Motion to Intervene as a Defendant

for over 31 years; monitored groundwater quality and maintained water quality bonds consistent with NPS and state water board demands; constructed and maintained miles of fencing around the mine areas; and expressly asserted an intent to resume extraction upon favorable economic conditions. *Id.* Reclamation is not completed, and the drainage ponds remain lined and continuously operational. *Id*. CRM undertook expensive operations after the NPS confirmed recognition of CRM's vested existing rights, and its operations are ongoing. Baghdadi Decl. ¶ 18.

## C.  The California Desert Protection Act and CRM's valid existing rights

In 1994, Congress enacted the California Desert Protection Act ("CDPA"), which withdrew certain lands from the public land laws and established the Mojave National Preserve ("MOJA") on the withdrawn lands. Pub.L. 103-433, Title III, § 301, Oct. 31, 1994, 108 Stat. 4485, codified at 16 U.S.C. § 410aaa *et seq*. The Colosseum Mine site was included within the boundaries of MOJA, and thus management jurisdiction over the federal land underlying the Colosseum Mine was transferred from BLM to the NPS. Critically, the CDPA's transfer of jurisdiction was expressly made "subject to valid existing rights." Under Sections 507, 508, and 509 of the CDPA, Congress established multiple categories of protected valid existing rights, including unpatented mining claims located prior to enactment of the CDPA and the right to continue mining operations under previously approved plans of operations. 16 U.S.C. §§ 410aaa-47, 48, 49.

CRM's unpatented mining claims were located and maintained prior to the enactment of the CDPA and accordingly constitute valid existing rights that survived the 1994 withdrawal. Baghdadi Decl. ¶ 16. CRM's plan of operations also was approved prior to enactment of the CDPA and similarly constitutes a valid existing right, encompassing  the right to continue operations, the right of access, and the right to operate under the BLM Approved Plan. The MOJA General Management Plan in 2001 recognized the Colosseum Mine property as comprising existing patented and

unpatented mining claims and depicted those claims as current mining claims within the Preserve. *See* National Park Service, *Mojave National Preserve, Abbreviated Final Environmental Impact Statement and General Management Plan* (June 2001), Map 12, p. 109, www.npshistory.com/publications/moja/gmp-2002.pdf.

**D.      DOI, BLM, and NPS recognize CRM's continued mine rights**

CRM acquired the Colosseum Mine in 2021 with the intent, based in part on current economic conditions, to reengage in mineral extraction under the existing BLM Approved Plan. Baghdadi Decl. ¶ 15. Beginning in 2021, CRM undertook activities encompassed by that Plan, including access and maintenance along the historic Colosseum Mine Road right-of-way and exploratory and site-investigation work within both patented and federal land. *Id.*

**E.      The Government's April 2025 confirmation**

Following unsuccessful efforts by CRM to clarify inconsistent statements by NPS on the nature and scope of its valid existing rights, on January 30, 2025, counsel for CRM sent a letter to Secretary of the Interior Doug Burgum, named as a defendant in this litigation, requesting that the DOI confirm the continuing validity of the BLM Approved Plan. Shapiro Decl. ¶ 4 & Ex. A.

On April 3, 2025, Acting NPS Director Jessica Bowron confirmed in a letter to CRM's counsel that the National Park Service "recognizes your client's valid existing rights" as stated in the BLM Approved Plan and "that these rights remain valid subsequent to passage of the California Desert Protection Act." Shapiro Decl. ¶ 5 & Ex. B; Compl. ¶ 70. The NPS further confirmed that the "plan of operations approved by BLM remains in effect" and that the NPS "does not require a validity examination or further approval of exploration and other activities encompassed by the plan." *Id*.

On April 10, 2025, the Superintendent of Mojave National Preserve reiterated the NPS's recognition of CRM's valid existing rights and rescinded a prior demand for $213,387 in damages for prior alleged unauthorized activities. Compl. ¶ 72; Shapiro Decl. ¶ 6 & Ex. C. In May 2025, the BLM highlighted the Colosseum Mine

Colosseum Rare Metals Inc.'s Motion to Intervene as a Defendant

as "America's second rare earths mine." *See* www.blm.gov/announcement/colosseum-mine-california-given-go-ahead-continue-mining-operation.

### F.    NPCA's challenge

Over a year after the NPS letter confirmed valid existing rights in the BLM Approved Plan, the NPCA filed this action on April 15, 2026, asserting three causes of action: (1) violation of the Mining in the Parks Act of 1976 for authorizing mining without an approved plan of operations, Compl. ¶¶ 75-82; (2) violation of the California Desert Protection Act of 1994 for failing to conduct a validity determination of the unpatented mining claims before approving operations, Compl. ¶¶ 85-91; and (3) violation of the National Environmental Policy Act for failing to prepare an environmental analysis of the alleged decision to authorize renewed mining, Compl. ¶¶ 92-96. NPCA seeks an order setting aside and vacating the April 2025 letter, declaring that defendants violated federal law, and enjoining defendants from authorizing any further mining operations at Colosseum Mine. Compl., Prayer for Relief, at 21.

The April 3, 2025 NPS correspondence did not create new rights. It acknowledged rights that have existed since 1985 and that Congress preserved in 1994. The letter expressly states that NPS "***recognizes***" CRM's "valid existing rights as stated in the 'Third Modification and Reclamation Plan and Plan of Operations, Colosseum Project,' approved September 10, 1985, by the Bureau of Land Management." Recognition of existing rights is not a new approval.

### G.    CRM has made a significant investment in the Colosseum Mine

CRM and its predecessors have made extensive investments in the Mine over many decades since the creation of MOJA, including investments in exploration, development, environmental compliance, reclamation, maintenance of mining claims, site maintenance, and facilities restoration. Baghdadi Decl. ¶ 17. CRM maintains substantial reclamation bonds for the benefit of San Bernardino County and the

Colosseum Rare Metals Inc.'s Motion to Intervene as a Defendant

Lahontan Regional Water Quality Control Board. *Id.* CRM has also maintained annual claim maintenance filings and fees for all 80 unpatented mining claims and millsites. *Id.* CRM is pursuing its mineral operations at this Mine to protect and further the interest of its shareholders, but also importantly to pursue exploration and possible future development of potentially vital rare earth element resources strategically important to national security. The Mine is located only six miles from the Mountain Pass Mine, the sole operating rare earth elements mine in the United States and the only facility in the United States that can process rare earth elements. *Id.* The close proximity of the Colosseum Mine to the Mountain Pass Mine would allow rare earth element resources mined at the Colosseum Mine to be transported to and processed at the Mountain Pass Mine. Even if rare earth elements were found in a different mine in a different location, they could not be processed until a new processing facility was built, because it would be prohibitively expensive to transport the unprocessed and raw material containing the rare earth elements from that mine to Mountain Pass Mine to process. *Id.* It could take a decade or more to obtain approval for and then construct a new processing facility. *Id.*

## III.   LEGAL ARGUMENT

### A.   Intervention as of right under Rule 24(a)(2)

Federal Rule of Civil Procedure 24(a)(2) provides that the Court must permit intervention by anyone who, on timely motion, "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

The Ninth Circuit applies a four-part test for intervention as of right: (1) the application must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the

Colosseum Rare Metals Inc.'s Motion to Intervene as a Defendant

applicant's interest must not be adequately represented by existing parties. *Wilderness Soc'y v. U.S. Forest Serv.,* 630 F.3d 1173, 1177 (9th Cir. 2011). Consistent with all other federal courts of appeal, the Ninth Circuit applies this test broadly in favor of intervention:

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involved related issues; at the same time, we allow an additional interested party to express its views before the court.

*United States v. City of L.A., Cal.* 288 F.3d 391, 397-98 (9th Cir. 2002) (internal quotation marks and citation omitted; emphasis in original); *see also Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) ("While an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are broadly interpreted in favor of intervention").

Furthermore, "[c]ourts are to take all well-pleaded, non-conclusory allegations in the motion to intervene [and accompanying pleadings] as true." *Sw. Center for Biological Diversity v. Berg*, 268 F.3d 810, 819-20 (9th Cir. 2001). As discussed below, CRM meets each of the requirements for intervention as of right.

### 1.   The Motion is timely

"Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)).

This action was filed on April 15, 2026. CRM moves to intervene less than three months after the filing of the Complaint, before any responsive pleading has been filed, before any administrative record has been prepared, before any discovery has been conducted, and before any dispositive motions have been submitted. No

Colosseum Rare Metals Inc.'s Motion to Intervene as a Defendant

party will be prejudiced by CRM's intervention at this early stage of the litigation, and intervention will not cause undue delay. *See, e.g.*, *Mont. Wilderness Ass'n*, 647 F.3d at 897 (holding motion deemed timely when filed less than three months after plaintiffs' complaint and less than two weeks after defendant's answer). The Motion is timely in all respects.

### 2. CRM has a significant protectable interest

A significant protectable interest exists where an applicant "asserts an interest that is protected under some law" and "there is a relationship between [the applicant's] legally protected interest and the plaintiff's claims." *City of L.A.*, 288 F.3d at 397-98 (internal quotation marks and citation omitted). "The relationship requirement is met 'if the resolution of the plaintiff's claims actually will affect the applicant.'" *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998)).

The sufficiency of an interest is a "practical, threshold inquiry" and "[n]o specific legal or equitable interest need be established." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818. Rather, the interest requirement of Rule 24(a) is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967); *see Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011).

CRM has significant and well-demonstrated property, economic, and regulatory interests in the present litigation. The relief NPCA seeks would bring CRM's operations at the Mine to a halt. Compl., Prayer for Relief, at 21. CRM has invested substantial resources in acquiring the Mine, maintaining the mining claims, and developing the Mine facilities. Baghdadi Decl. ¶ 18. As even NPCA concedes, between October 2024 and March 2026, CRM performed additional development work at the site, including diamond drill rig testing, exploration work, and access road improvements. Compl. ¶ 74. Those activities are ongoing. Baghdadi Decl. ¶ 18.

Colosseum Rare Metals Inc.'s Motion to Intervene as a Defendant

The Complaint itself identifies CRM as a party with a pecuniary interest in the outcome of this case. Notice of Interested Parties, ECF No. 5, at 1. These interests—including mineral rights, investments in exploration and development, and operational entitlements—are legally protectable and bear a direct relationship to the claims at issue. *See Sw. Center for Biological Diversity*, 268 F.3d at 820 ("interests in projects that have been granted assurances . . . and that are involved in various stages of planning and implementation are sufficient to constitute legally protectable interests."). CRM has a significant protectable interest in this litigation.

### 3. CRM's interests will be impaired if intervention is denied

Under Rule 24, the test for impairment focuses on practical effects and an absent party should be entitled to intervene where they would be substantially affected, "in a practical sense," by a determination in the action. *See Citizens for Balanced Use*, 647 F.3d at 898 (quoting Advisory Committee's note on Fed. R. Civ. P. 24). The burden is minimal. *California ex rel. Lockyer v. United States,* 450 F.3d 436, 442 (9th Cir. 2006); *see also Citizens for Balanced Use,* 647 F.3d at 898 ("[I]ntervention of right does not require an absolute certainty that a party's interests will be impaired."). Further, intervention is particularly appropriate where, as here, the plaintiffs seek injunctive relief. *See Sw. Center for Biological Diversity*, 268 F.3d at 818.

NPCA's requested relief enjoins any further mining operations at the Colosseum Mine. Compl., Prayer for Relief, ECF No. 1 at 21. If the Court grants NPCA the relief it seeks, CRM would be prohibited from conducting any further activities at its mine. Baghdadi Decl. ¶ 19. CRM has invested about $40 million dollars in connection with its operations, and NPCA's requested relief would significantly harm CRM and its shareholders. *Id.* The threat of impairment is not speculative; it is the very purpose of this lawsuit. CRM's interest would be directly and immediately impaired if it is unable to participate in this litigation and defend the validity of the Government's decision. *Id.*

JMM | Jeffer Mangels & Mitchell LLP

### 4. The existing parties do not sufficiently represent CRM's interests

CRM's interests are sufficiently different from those of the federal defendants to warrant intervention. CRM must shoulder only a minimal burden to demonstrate inadequate representation and need only show that its interests differ from the existing parties' such that their representation "may be" inadequate. *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)). In making its determination, the Court must consider "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *City of L.A.*, 288 F.3d at 398 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)).

The Ninth Circuit has recognized that the interests of a private or non-public entity and those of a public entity are sufficiently different to warrant intervention. *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 823-24. Here, the interests and perspectives of CRM, a private party with a direct economic stake in this dispute, differ significantly from those of the DOI, a federal agency primarily interested in defending its administrative processes and decisions. *See Citizens for Balanced Use,* 647 F.3d at 898-99 (reversing denial of intervention where government's prior adverse litigation position and broader public interest focus rendered its representation inadequate). Therefore, CRM's interests are sufficiently different enough from those of the federal defendants to warrant intervention.

In addition, CRM's participation in the litigation will likely aid the Court's consideration of the issues in this case. CRM has actual, on-the-ground experience developing mineral assets in an environmentally responsible manner. CRM likely will make arguments that will aid the Court's understanding of the issues in this case that

will not be made by other parties to the litigation.

CRM is thus entitled to intervene as of right because (i) its motion is timely, (ii) it has a significantly protectable interest in the lawsuit, (iii) the outcome of this action will impair CRM's interests, (iv) the federal defendants do not sufficiently represent CRM's interests, and (v) CRM will aid the Court's resolution of the issues. Further, no party has stated that they intend to oppose CRM's intervention.

**B.    Permissive intervention under Rule 24(b)(1)(B)**

Permissive intervention, like intervention as of right, is construed liberally in favor of the moving party. *See City of L.A.*, 288 F.3d 397-98. Under Rule 24(b), a court may permit intervention where "(1) [the] applicant shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly*, 159 F.3d at 412. Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940). Federal question jurisdiction exists under 28 U.S.C. § 1331 because all claims arise under federal law (Mining in the Parks Act, CDPA, and NEPA).

The common questions of law and fact between CRM's defenses and the claims in this action are extensive and obvious. The central questions in this litigation are whether the NPS's April 2025 letter acknowledging CRM's valid existing rights and permitting mining under the BLM Approved Plan violated the Mining in the Parks Act, Compl. ¶¶ 75-84, the CDPA, Compl. ¶¶ 85-91, and NEPA, Compl. ¶¶ 92-96. CRM will defend against each of these claims and will present evidence and argument directly bearing on the factual and legal questions at the core of this case, including, if necessary, the scope and validity of the BLM Approved Plan, the status of the unpatented mining claims, and the adequacy of prior environmental review.

Permissive intervention will not unduly delay or prejudice the adjudication of the existing parties' rights. This motion is brought at the earliest stages of the case,

before any responsive pleading or discovery. CRM's participation will assist the Court in resolving the legal issues presented. Thus, if this Court were to deny CRM's motion to intervene as of right, CRM should be granted permissive intervention.

## IV.    CONCLUSION

For the foregoing reasons, CRM respectfully requests that this Court grant its motion to intervene as a defendant in this action pursuant to Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, pursuant to Rule 24(b)(1)(B), and permit CRM to respond to NPCA's Complaint.

DATED:  July 1, 2026

JEFFER MANGELS & MITCHELL LLP
KERRY SHAPIRO
MICHAEL H. STRUB, JR.

By: _____
        MICHAEL H. STRUB, JR.

HOLLAND & HART LLP
MURRAY FELDMAN
JENNIFER SCHELLER NEUMANN
AMELIA YOWELL
ANDREA J. DRIGGS

By: _____
        */s/ Murray Feldman*
        MURRAY FELDMAN

Attorneys for Proposed Intervenor-Defendants Dateline Resources Ltd. and Colosseum Rare Metals, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of July, 2026, I electronically filed the foregoing **COLOSSEUM RARE METALS, INC.'S MOTION TO INTERVENE AS A DEFENDANT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Gabriel F. Greif<br>Earthjustice<br>707 Wilshire Blvd, Suite 4300<br>Los Angeles, CA 90017<br>415-217-2000<br>Fax: 415-217-2040<br>Email: ggreif@earthjustice.org | Attorneys for Plaintiff National Parks Conservation Association |
| Gregory Cahill Loarie<br>Katrina Anais Tomas<br>Earthjustice<br>1 Sansome Street, Suite 1700<br>San Francisco, CA 94104<br>415-217-2000<br>Fax: 415-217-2040<br>Email: gloarie@earthjustice.org<br>Email: ktomas@earthjustice.org | Attorneys for Plaintiff National Parks Conservation Association |
| Daniel Luecke<br>DOJ-Enrd<br>Natural Resources Section<br>P.O. Box 7611<br>Washington, DC 20044-7611<br>202-598-7863<br>Email: daniel.luecke@usdoj.gov | Attorneys for Defendant U.S. Department of the Interior; Defendant Doug Burgum; Defendant National Park Service; Defendant Jessica Bowron; Defendant Kevin Schluckebier |
| Katharine Laubach<br>United States Department of Justice<br>PO Box 7611<br>Washington, DC 20044-7611<br>202-305-8568<br>Email: katharine.laubach@usdoj.gov | Attorneys for Defendant U.S. Department of the Interior; Defendant Doug Burgum; Defendant National Park Service; Defendant Jessica Bowron; Defendant Kevin Schluckebier |

*/s/ Michael H. Strub, Jr.*