GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org
KATRINA A. TOMAS (CA Bar No. 329803)
ktomas@earthjustice.org
EARTHJUSTICE
1 Sansome Street, Suite 1700
San Francisco, California 94104
T: (415) 217-2000 ● F: (415) 217-2040

GABRIEL F. GREIF (CA Bar No. 341537)
ggreif@earthjustice.org
EARTHJUSTICE
707 Wilshire Blvd., Ste. 4300
Los Angeles, CA 90017
T: (415) 217-2000 ● F: (415) 217-2040

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION,<br><br>       Plaintiff,<br><br>  v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et al*.,<br><br>       Defendants. | No.: 2:26-cv-4002-CAS-AS<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: July 27, 2026<br>Time: 10:00 AM<br>Judge: Hon. Christina A. Snyder |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................7

ARGUMENT ...................................................................................................................7

I.      NPCA Is Likely to Succeed on the Merits of Its Claim. ....................................7

        A.      The Park Service's April 2025 Decision is Final Agency Action
                Reviewable by this Court under the Administrative Procedure Act..........8

        B.      The Park Service's April 2025 Decision Wrongly Concludes that
                New Operations at Colosseum May Proceed Under BLM's 1985
                Plan of Operations. ...............................................................................10

                1.      The California Desert Protection Act Does Not
                        Exempt Pre-Existing Mining Claims from
                        Compliance with the Mining in the Parks Act.............................10

                2.      The 1985 Plan Expired and Could Not Authorize New
                        Operations at Colosseum. ...........................................................14

                3.      The Park Service's April 2025 Reversal Required
                        Reasoned Explanation in Compliance with the
                        Administrative Procedure Act.....................................................17

II.     Injunctive Relief Is Necessary to Prevent Irreparable Harm.............................19

        A.      Imminent Operations at Colosseum Mine will Cause Irreparable
                Harm to Mojave National Preserve.........................................................20

        B.      NPCA Did Not Improperly Delay in Moving for a Preliminary
                Injunction...............................................................................................23

III.    The Equities Tip Sharply in Favor of Temporarily Enjoining Further
        Operations at Colosseum Pending the Resolution of This Case. .......................25

CONCLUSION ............................................................................................................27

CERTIFICATE OF COMPLIANCE............................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Integrative Med. Sci. Inst., PLLC v. Garland,*
24 F.4th 1249 (9th Cir. 2022) ...............................................................................9

*All. for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ........................................................................21, 27

*All. for the Wild Rockies v. Gassmann,*
604 F. Supp. 3d 1022 (D. Mont. 2022)............................................................23, 24

*Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Office of Personnel,*
No. C 25-01780 WHA, 2025 WL 660053 (N.D. Cal. 2025) ...........................22

*Arc of Cal. v. Douglas,*
757 F.3d 979 (9th Cir. 2014) ...........................................................................23, 24

*Bennett v. Spear,*
520 U.S. 154 (1997)............................................................................................8, 9

*Blue Ribbon Coal., Inc. v. U.S. Bureau of Land Mgmt.,*
No. 2:23-CV-923-DAK-JCB, 2024 WL 1197862 (D. Utah Mar. 20,
2024) ......................................................................................................................22

*Brown v. U.S. Forest Serv.,*
465 F. Supp. 3d 1119 (D. Or. 2020) ................................................................22, 23

*Cal. Pub. Util. Comm'n v. Fed. Energy Regul. Comm'n,*
879 F.3d 966 (9th Cir. 2018) .............................................................................18

*California v. Health & Hum. Servs.,*
390 F. Supp. 3d 1061 (N.D. Cal. 2019)............................................................24

*Ctr. for Biological Diversity v. Haaland,*
988 F.3d 1061 (9th Cir. 2021) ..........................................................................18

*Ctr. for Biological Diversity v. Salazar,*
706 F.3d 1085 (9th Cir. 2013) .......................................................................15, 16

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
    No. CV 17-8587-GW(ASx), 2019 WL 2635587 (C.D. Cal. Jun. 20,
    2019) ...............................................................................................................9

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016)........................................................................................18

*Env't Prot. Info. Ctr. v. Carlson*,
    968 F.3d 985 (9th Cir. 2020) .........................................................................25

*FCC v. Fox Television Stations, Inc.*,
    566 U.S. 502 (2009)..............................................................................17, 18, 19

*Food and Drug Admin. v. Wages and White Lion Invs., LLC*,
    604 U.S. 542 (2025).........................................................................................18

*Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*,
    588 F.3d 718 (9th Cir. 2009) .........................................................................20

*Ft. Funston Dog Walkers v. Babbitt*,
    96 F. Supp. 2d 1021 (N.D. Cal. 2000)............................................................22

*Galusha v. N. Y. State Dep't of Env't Conservation*,
    27 F. Supp. 2d 117 (N.D. N.Y. 1998)..............................................................22

*Grand Canyon Tr. v. Provencio*,
    467 F. Supp. 3d 797 (D. Ariz. 2020), *aff'd,* 26 F.4th 815 (9th Cir.
    2022) ...............................................................................................................14

*Havasupai Tribe v. Provencio*,
    906 F.3d 1155 (9th Cir. 2018) ...............................................................*passim*

*Hualapalai Indian Tribe v. Haaland*,
    755 F. Supp. 3d 1165 (D. Ariz. 2024).......................................................25, 26

*Kapa'a v. Trump*,
    794 F. Supp. 3d 793 (D. Hawai'i 2025) ...........................................................9

*League of Wilderness Defs./Blue Mountains Biodiversity Project v.
    Connaughton*,
    752 F.3d 755 (9th Cir. 2014) ....................................................................21, 24

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024).........................................................................................18

4
REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*Lydo Enters., Inc. v. City of Las Vegas*,
   745 F.2d 1211 (9th Cir. 1984) ....................................................................24

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985).....................................................................................26

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983).......................................................................................18

*Native Ecosystems Council v. Marten*,
   334 F. Supp. 3d 1125 (D. Mont. 2018).......................................................24

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006) .........................................................................8

*Rayco v. Bernhardt*,
   No. 2:21-CV-00512-SVW-GJS, 2024 WL 4329006 (C.D. Cal. Jan. 9,
   2024) ....................................................................................................11, 12

*San Carlos Apache Tribe v. U.S. Forest Serv.*,
   472 F.3d 1097 (9th Cir. 2006) ....................................................................26

*Se. Alaska Conservation Council v. U.S. Army Corps*,
   472 F.3d 1097 (9th Cir. 2006) ....................................................................27

*Talbott v. United States*,
   176 F.4th 720 (D.C. Cir. 2026)....................................................................26

*Valero Energy Corp. v. EPA*,
   927 F.3d 532 (D.C. Cir. 2019)........................................................................9

*W. Watersheds Project v. Bernhardt*,
   392 F. Supp. 3d 1225 (D. Or. 2019).......................................................21, 22

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017).....................................................................................26

**Statutes**

16 U.S.C.
   § 410aaa-43.............................................................................................12, 14
   § 410aaa-44....................................................................................................12
   § 410aaa-48.............................................................................................10, 11

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

§ 410aaa-59 ...............................................................................................12

30 U.S.C.
   § 21 *et seq.* ..........................................................................................13

43 U.S.C.
   § 1781(a)(2) ...................................................................................20, 21

California Desert Protection Act,
   Pub. L. No. 103-433, 108 Stat. 4471 (1994) .........................................13, 20, 21

**Rules and Regulations**

36 C.F.R.
   § 9.9 (1977)...................................................................................*passim*

 43 C.F.R.
   § 3809.5 (2000)....................................................................................17

**Other Authorities**

103rd Congress S4115 (1994) ...............................................................13

S. Rep. No. 103-165 (1993) ..................................................................12

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## INTRODUCTION

Federal defendants (Park Service) and proposed intervenors (CRM) cannot rebut plaintiff NPCA's showing that a preliminary injunction is necessary and proper to prevent irreparable harm to Mojave National Preserve. First, NPCA is likely to succeed on the underlying merits because the Park Service's decision to reverse course and green-light operations at Colosseum violated the Mining in the Parks Act and contradicts prior findings, absent reasoned explanation. Second, preliminary relief is necessary now because CRM has begun grading within the Preserve and threatens irreparable injury to fragile desert resources. Finally, the equities and public interest strongly favor a temporary injunction that enforces Congress's protections for National Park System lands and prevents private mining operations from inflicting permanent harm before this Court can resolve NPCA's claims.

NPCA asks this Court to issue a preliminary injunction enjoining the Park Service to (1) set aside their April 2025 determination that allowed new mining operations to proceed at the Colosseum Mine in Mojave National Preserve, (2) halt and prohibit further operations at Colosseum pending the resolution of this case, and (3) monitor and enforce public access rights along Colosseum Road leading to and past Colosseum Mine.

## ARGUMENT

I.    **NPCA Is Likely to Succeed on the Merits of Its Claim.**

NPCA is likely to succeed on its first cause of action that the Park Service violated the Mining in the Parks Act when it reversed course and authorized CRM to begin mining Colosseum without a new plan of operations and without any rational explanation. Compl. ¶¶ 75–84, Dkt. No. 1. The Park Service's and CRM's arguments to the contrary are unavailing.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**A.    The Park Service's April 2025 Decision is Final Agency Action Reviewable by this Court under the Administrative Procedure Act.**

The opposing parties' argument that the Park Service's April 2025 Decision reversing course on Colosseum is not "final" agency action under the Administrative Procedure Act (APA) is unpersuasive. The April 2025 Decision is final because it "marks the 'consummation' of the agency's decision-making process," and has "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). Courts focus on both the "practical and legal effects of the agency action" and construe the finality requirement "in a pragmatic and flexible manner." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.,* 465 F.3d 977, 982 (9th Cir. 2006) (citations omitted).

Here, the April 2025 Decision marks the "consummation" of the Park Service's decisionmaking process because it confirms that no further Park Service approvals are necessary before operations can resume at Colosseum. Decl. Chance Wilcox, Dkt. No. 20-2 (Wilcox Decl.), Ex. F, H. There is nothing in the April 2025 Decision to suggest that it is "of a merely tentative or interlocutory nature," or that the Park Service intends later to review and approve a plan of operations for renewed mining activity in accordance with the Mining in the Parks Act. *Bennett*, 520 U.S. at 178.

The April 2025 Decision also has "legal consequences." *Bennett*, 520 U.S. at 178. The Park Service concedes that it issued the April 2025 Decision in response to a request from CRM regarding its mining interests within Mojave National Preserve. Defs.' Mem. P. & A. Opp'n Pl.'s Mot. Prelim. Inj., Dkt. No. 24 (Defs.' Opp'n) at 6; Wilcox Decl., Ex. F. The April 2025 Decision affords the precise legal result that CRM sought—recognition that mining operations may proceed without additional approvals from the Park Service and without adhering to the procedural requirements of the Mining in the Parks Act. *See* Wilcox Decl., Exs. H, F; *cf.* Decl. Kerry Shapiro Supp. CRM's Opp'n Pl.'s Mot. Prelim. Inj., Ex. A, Dkt. No. 25-38 at 7–8 (describing CRM's requested relief from the Park Service). Courts have held that similar agency

letters that "inform[] permit holders that [activity] is now fair game" are final agency actions because they "announce[] a firm agency commitment to non-enforcement" and thus carry legal consequences. *Kapa'a v. Trump*, 794 F. Supp. 3d 793, 802, 821 (D. Hawai'i 2025); *see also Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. CV 17-8587-GW(ASx), 2019 WL 2635587 at *10–13 (C.D. Cal. Jun. 20, 2019) (holding agency letter is final when it "sets the rights of any third-parties.").

The Ninth Circuit's decision in *Havasupai Tribe v. Provencio* is instructive. 906 F.3d 1155 (9th Cir. 2018). There, the Court ruled that a Forest Service mineral report determining that a company held "valid existing rights" had legal consequences and satisfied the second *Bennett* prong. *Id.* at 1161–63. The court reasoned that— regardless of whether the Forest Service was required to prepare the mineral report or whether the report actually conferred any rights—the Forest Service's recognition "that such rights existed with respect to [the project]" was "all *Bennett* requires." *Id.* at 1162–63. Such is the case here. The Park Service's press release announcing its April 2025 Decision stated explicitly that the Park Service had "recognized the Colosseum Mine in California can continue mining operations," Wilcox Decl., Ex. G at 249, leading President Trump to announce, "Colosseum Mine. . . has been approved after years of stalled permitting." Wilcox Decl., Ex. I at 256. The Park Service's determination is therefore "one by which rights. . . have been determined" and "from which legal consequences will flow[.]" *Bennett*, 520 U.S. at 178; Wilcox Decl., Exs. F, G, H.

This case is easily distinguishable from cases where an agency "did no more than point to the plain language of existing law," *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1261 (9th Cir. 2022). While merely restating a statute or expressing a view of the law is insufficient, if an agency action creates an "identifiable effect on the regulated community," it is a decision with legal consequence. *Id.* at 1259 (citing *Valero Energy Corp. v. EPA*, 927 F.3d 532, 536 (D.C. Cir. 2019) (internal citation omitted)). Here, the Park Service does not cite,

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

reference, or restate any law in its April 2025 letters. Instead, the April 2025 Decision affirms CRM's mining rights and suspends the Park Service's prior determinations that it must approve a new plan of operations. *See* Wilcox Decl., Exs. F, G, H. Following the April 2025 Decision, CRM has all the legal assurance it needs to begin operations at Colosseum without being liable for trespass and without adhering to the requirements of the Mining in the Parks Act.

In short, the Park Service's and CRM's arguments fail; the Park Service's April 2025 Decision is "final" for purposes of the APA, and this Court has jurisdiction to review the Decision.

**B.    The Park Service's April 2025 Decision Wrongly Concludes that New Operations at Colosseum May Proceed Under BLM's 1985 Plan of Operations.**

The Park Service's and CRM's opposition to the merits of NPCA's Mining in the Parks claim is also unpersuasive. First, the California Desert Protection Act (CDPA) grandfathered existing mining claims in the Mojave National Preserve, but it did not exempt those existing claims from compliance with the Mining in the Parks Act. Second, the 1985 Plan expired and, regardless, does not cover new operations at Colosseum Mine. Finally, the Park Service's April 2025 reversal of prior Park Service policy required a reasoned explanation, but none was given.

**1.    The California Desert Protection Act Does Not Exempt Pre-Existing Mining Claims from Compliance with the Mining in the Parks Act.**

The Park Service relies on section 508 of the CDPA to assert that the Mining in the Parks Act and its regulations do not apply to existing mining claims in Mojave National Preserve. Defs.' Opp'n at 11–14. This is incorrect.

Section 508 states that "[s]ubject to valid existing rights, all mining claims located within the preserve shall be subject to all applicable laws and regulations applicable to mining within units of the National Park System, including . . . [the

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Mining in the Parks Act].” 16 U.S.C. § 410aaa-48. Here, the Park Service argues that the phrase “subject to valid existing rights” means that all mining claims with plans of operations approved prior to the establishment of the Mojave National Preserve are exempt from regulation by the Park Service.

This novel interpretation is a total reversal of the Park Service’s prior reading of section 508, conveniently timed to enable the unlawful reopening of Colosseum Mine. In a June 2023 letter to CRM, the Park Service made clear: “This provision is not interpreted so as to exempt ‘valid existing rights’ in Mojave National Preserve from [Park Service] laws and regulations[.]” Wilcox Decl., Ex. C at 232. Instead, the Park Service explained the clause “subject to valid existing rights” in section 508 is “logically interpreted to mean ‘where a property right to a valid claim exists,’ (i.e., a valid unpatented mining claim or a patented claim), since these are the only mining claims in park units where operations can occur and where [Park Service] laws and regulations would be applied.” Wilcox Decl., Ex. C. at 232; Wilcox Decl., Ex. D (2022 Park Service letter finding same).

The Park Service’s new reading of the CDPA is also a complete reversal from the position it took before this District Court just three years ago in *Rayco v. Bernhardt*, which the Park Service describes as “the only case to directly consider the meaning of ‘valid existing rights’ in Section 508.” Defs.’ Opp’n at 13; No. 2:21-CV-00512-SVW-GJS, 2024 WL 4329006 at *15-17 (C.D. Cal. Jan. 9, 2024). There, the Park Service argued that “[t]he first clause of section 508 generally provides that *all mining operations conducted within the Preserve on ‘mining claims’ must comply with applicable laws and regulations, including the Mining in the Parks Act and regulations promulgated thereunder*.” Req. Judicial Notice Supp. Pl.’s Reply, Ex. 1 at 39-40, filed herewith (emphasis added). The Park Service explained that this reading of the CDPA is supported by the legislative history:

> The inclusion of the ‘subject to valid existing rights’ language recognizes a separate category of lands in the Preserve that would *not* be required to comply

with the [36 C.F.R.] Part 9A regulations after enactment: private inholdings within the BLM-managed public lands being added to the Preserve under section 503 and 504. *See* 16 U.S.C. §§ 410aaa-43, 410aaa-44. Prior to enactment of the CDPA, owners of these private inholdings within BLM-managed public lands had the right to conduct mining operations without complying with federal mining regulations. *See* 16 U.S.C.S § 410aaa-59. *See generally* S. Rep. 103-165, at 57-61 (additional comments of Sens. Wallop, Murkowski, Nickles, Craig, and Bennett discussing inholdings in the lands to be included within the Preserve). The first clause of section 508 necessarily recognizes that these non-regulated, pre-CDPA, private inholdings had "valid existing rights" to continue to conduct mining operations free of federal regulation after the inclusion of the surrounding lands in the Preserve, just as they had before the CDPA.

Req. Judicial Notice Supp. Pl.'s Reply, Ex. 1 at 40.

In sum, the Park Service in *Rayco* argued that section 508's "subject to valid existing rights" provision allows "private inholdings" to continue mining operations free of federal regulations moving forward, but all other mining claims should properly be subject to the Mining in the Parks Act and its regulations. This District Court found this interpretation "plausible on its face." 2024 WL 4329006 at *16 (merits turning on separate issues). Noone argues that Colosseum is a "private inholding" exempt from regulations, as opposing parties concede that BLM properly regulated mining at Colosseum before the CDPA. *See, e.g.,* Defs.' Opp'n at 2–3; CRM Opp'n at 12. Once Congress created the Mojave National Preserve and transferred jurisdiction to the National Park Service, the same mining activity necessarily became subject to the Mining in the Parks Act and Park Service regulations. *See* 16 U.S.C. § 410aaa-43 (CDPA transferring management from BLM to National Park Service).

Indeed, this is the only way to sensibly read section 508. Because section 507 of the CDPA prohibits new mining claims in Mojave National Preserve, the interpretation that the Park Service is now asking the court to accept would exempt essentially all mining claims from the Mining in the Parks Act regulations. Such a reading would undermine the goals of the CDPA. *See* Wilcox Decl., Ex. C at 232 (Park Service in 2023 finding the same).

Ultimately, there is no indication that Congress intended to exempt all mining claims in Mojave National Preserve from the Mining in the Parks Act and its implementing regulations. To the contrary, Congress clearly intended to improve the protection of natural resources in California Desert parks from the impacts of mining through the designation of Mojave National Preserve. Pub. L. No. 103-433, § 2(a)(1), 108 Stat. 4471 (1994); *see also* Wilcox Decl., Ex. C at 232 (2023 Park Service letter finding same). Opposing parties cite to legislative history that does not contradict this point. *See., e.g.,* Defs.' Opp'n at 14 ("All active mines are protected.") (citing Congressional Record, 103rd Congress (1993-1994), p. S4115 (April 12, 1994)). The Mining in the Parks Act regulations do not prohibit mining operations on valid, pre-existing claims. The Act simply subjects pre-existing mining claims (except for private inholdings, which Colosseum is not) to regulations to ensure the Preserve resources are considered and protected. 36 C.F.R. § 9.9(a) (1977).

The opposing parties reading of section 508 also ignores the fact that an approved mining plan of operations does not grant "rights" and therefore cannot be construed to provide "valid existing rights." CRM's Proposed Opp'n Pl.'s Mot. Prelim. Inj., Dkt. No. 25-3 (CRM's Opp'n) at 21 (arguing the 1985 Plan provides valid existing rights); Defs.' Opp'n at 11 (same). The "right" to mine on federal land is conferred by the General Mining Act of 1872. 30 U.S.C. §§ 21–53. A plan of operations approved under the Federal Land Policy and Management Act or the Mining in the Parks Act does not confer additional rights but simply authorizes the operator to exercise their mining rights in accordance with applicable regulations.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Wilcox Decl., Ex. C at 231 ("[Park Service] regulations do not describe plans of operations as 'valid,' . . . instead our regulations use the terms 'submitted' and 'approved.'"). Indeed, the 1985 Plan plainly states that "[a]pproval of this plan will not now or in the future serve as a determination of the validity of any mining claim." Wilcox Decl., Ex. A at 88; *see also id.* at 66 (1983 letter stating same), 200 (1986 amendment to Plan stating same). The Park Service reaffirmed this understanding in June 2023. Wilcox Decl., Ex. C at 233.

The opposing parties' reliance on the *Grand Canyon Trust* line of authority is misplaced. Defs.' Opp'n at 12. There, the U.S. Forest Service determined that mining could proceed under a plan of operations approved decades earlier only after concluding that the laws and regulations governing the plan of operations had not changed and that the plan "was still in effect." *Grand Canyon Tr. v. Provencio*, 467 F. Supp. 3d 797, 802 (D. Ariz. 2020), *aff'd,* 26 F.4th 815 (9th Cir. 2022); *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1160 (9th Cir. 2018). The agency there did not view the plan of operations as independently conferring a property right or "valid existing right." Moreover, here, the laws and regulations *have* changed; after approval of the 1985 Plan, Congress established Mojave National Preserve and transferred jurisdiction over those lands from BLM to the National Park Service. 16 U.S.C. § 410aaa-43. Accordingly, these cases cannot stand for the proposition that the 1985 Plan must survive as a matter of law or that it provides "valid existing rights" that exempt mining at Colosseum from laws and regulations designed to protect National Park System units. *See* Defs.' Opp'n at 12; CRM's Opp'n at 19.

In short, the CDPA does not exempt mining claims at Colosseum from regulation under the Mining in the Parks Act and 36 C.F.R. section 9.

### 2.   The 1985 Plan Expired and Could Not Authorize New Operations at Colosseum.

Even assuming mining at Colosseum was exempt from the Mining in the Parks Act, which it is not, the opposing parties' argument that BLM's 1985 Plan remains in

14

effect does not withstand scrutiny. The Park Service and CRM rely on Ninth Circuit precedent concerning the resumption of mining activity to suggest that the 1985 Plan extends into perpetuity, but those cases are distinguishable for three reasons. Defs.' Opp'n at 14–16; CRM's Opp'n at 21–22 (citing *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085 (9th Cir. 2013); *Havasupai Tribe v. Provencio*, 906 F.3d 1155 (9th Cir. 2018)).

First, mining operations at Colosseum ceased with no intention to resume, as envisioned by the 1985 Plan. In both *Salazar* and *Havasupai Tribe,* the Ninth Circuit emphasized that the relevant plans expressly contemplated extended periods of non-operation, unlike the case here. In *Salazar*, the plan of operations included provisions governing interim management during prolonged inactivity. 706 F.3d at 1089. In *Havasupai Tribe*, the court relied on a temporary closure clause within the operative plan. 906 F.3d at 1163. Neither the Park Service nor CRM cite to a comparable provision within the 1985 Plan that contemplated permanent, or even temporary, cessation followed by renewed mining decades later. That is because none exists. Indeed, the 1985 Plan, distinct from those in *Salazar* and *Havasupai Tribe,* provides that "no extended periods of nonoperation are contemplated" within the scope of the Plan. Wilcox Decl., Ex. A at 99, 127, 162. As recently as 2023, mining inspection reports classified Colosseum as "[c]losed with no intent to resume" mining operations. Wilcox Decl., Ex. B at 225. To the extent mining operations at Colosseum were intended to continue to "exhaustion," as the Park Service and CRM argue, the 1985 Plan specified that "future development work will therefore be considered in subsequent amendments of [the Plan]." Wilcox Decl., Ex. A at 44. No such amendment or new plan of operations has been put forth or approved for current mining activity at Colosseum.

Second, the 1985 Plan is inapplicable not because mining operations ceased, though they had, but because the Park Service has never received or approved a plan of operations for extraction or exploration at Colosseum Mine, in violation of 36

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

C.F.R. section 9.9. This is a significant distinction between the present case and the Park Service's and CRM's proffered authority. Neither *Salazar* nor *Havasupai Tribe* involved mining operations within the National Park System governed by the Mining in the Parks Act and its implementing regulations. The mines in *Salazar* and *Havasupai Tribe* are on BLM and Forest Service land, respectively, and were continuously subject to BLM and Forest Service regulations. *Salazar*, 706 F.3d at 1088-89; *Havasupai Tribe*, 906 F.3d at 1159-61. Though mining resumed in both cases decades after the original plans of operations were approved, the mines were not on lands that had subsequently been designated a National Park unit, as is the case here.

Third, the Park Service revoked temporary authorization of existing operations in 2023. Wilcox Decl., Ex. E at 246. By contrast, in both *Salazar* and *Havasupai Tribe*, the plans and approvals at issue had not been revoked. Here, the Park Service affirmatively rescinded the 1995 temporary authorization to continue "existing operations" at Colosseum in February 2023, directing cessation of reclamation, exploration, and all related activities. Wilcox Decl., Ex. E at 246. From that point forward, no mining-related activity could lawfully occur absent submission and approval of a new plan of operations in accordance with the Mining in the Parks Act. The Park Service and CRM's arguments that the Park Service had not "nullified" the BLM-approved Plan are irrelevant. Defs.' Opp'n at 11; CRM's Opp'n at 23. Following the CDPA, mining within Mojave National Preserve can only occur subject to the regulations within the Mining in the Parks Act which specifically require Park Service approval of plans of operation. 36 C.F.R. § 9.9 (1977).

Moreover, the 1995 temporary authorization never covered other phases of mining operations other than reclamation. When the Park Service granted the 1995 temporary authorization, before revoking it in 2023, the "existing operations" exclusively included "the completion of reclamation." Wilcox Decl., Ex. C at 238. Reclamation and extraction operations cannot occur simultaneously. Wilcox Decl.,

Ex. A at 179, 184 (1985 Plan describing the distinct phases of mining operations, followed by reclamation); *see also* 43 C.F.R. § 3809.5 (2000) (describing "reclamation" as "following disturbance of public lands"). Accordingly, as the Park Service specified in 1995 and in subsequent letters, any other phases of mining operations, including monitoring, exploration, or extraction, "will require a new proposed plan of operations." Wilcox Decl., Ex. C at 230–239. That procedure has not been followed here.

In short, the Mining in the Parks Act and the Park Service's own regulations require the agency to approve a new plan of operations before authorizing any renewed mining at Colosseum. That has never occurred here.

### 3. The Park Service's April 2025 Reversal Required Reasoned Explanation in Compliance with the Administrative Procedure Act.

Finally, the Park Service's decision to abruptly reverse course on Colosseum after a change in presidential administrations required reasoned explanation to satisfy the APA. The Park Service and CRM argue that the Park Service need not explain its change in position in the April 2025 Decision because the agency has not conducted a "factual finding" and is instead merely providing a legal interpretation. Defs.' Opp'n at 16–18; CRM's Opp'n at 24. This argument is incorrect on multiple fronts.

First, the Park Service's April 2025 Decision is based on findings of fact, despite arguments to the contrary. Defs.' Opp'n at 16–17. The Park Service's prior determinations between 1995 and 2023 rested on concrete factual findings about the 1985 Plan: specifically, that the Plan no longer applied to current mining operations at Colosseum and did not authorize renewed exploration or extraction without additional Park Service approval. Wilcox Decl., Exs. C, D, E. The April 2025 reversal ignores those facts without justification or explanation and is therefore arbitrary and capricious in violation of the APA. *FCC v. Fox Television Stations*, *Inc.*, 566 U.S. 502, 537 (2009) (Kennedy, J., concurring that an agency violates the APA "if the

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

agency ignores or countermands its earlier factual findings without reasoned explanation for doing so").

Even if the Park Service's April 2025 reversal only amounted to a change in legal position, as opposing parties allege, courts have repeatedly required a "reasoned explanation" when an agency adopts a new legal interpretation. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016) (applying "reasoned explanation" requirement to reversal in agency's interpretation of statutory term); *Ctr. for Biological Diversity v. Haaland*, 988 F.3d 1061, 1067 (9th Cir. 2021) (applying "reasoned explanation" requirement to agency's reversal of position as to whether species warranted protection under Endangered Species Act); *Cal. Pub. Util. Comm'n v. Fed. Energy Regul. Comm'n*, 879 F.3d 966, 977-78 (9th Cir. 2018) (holding that agency orders were arbitrary and capricious because they "departed from [longstanding] policy" without reasoned explanation).

When an agency changes its position, as the Park Service has here, it must "(1) display awareness that it is changing position, (2) show the new policy is permissible under the statute, (3) believe the new policy permissible under the statute, and (4) provide good reasons for the new policy." *Ctr. for Biological Diversity v. Haaland*, 988 F.3d at 1067 (quoting *FCC v. Fox Television Stations, Inc.*, 566 U.S. 502, 515–16 (2009)). Although an agency may justify its policy choice by explaining why its new interpretation is more consistent with statutory language, the agency must still "analyze or explain why the statute should be interpreted to" align with its new interpretation. *Encino Motorcars*, 579 U.S. at 223–24. The April 2025 Decision does not satisfy any of these requirements. The Park Service's April 2025 Decision does not explain why its prior conclusions that renewed mining at Colosseum would require an NPS-approved plan of operations were incorrect, nor does it provide a reasoned basis for suddenly relying on a plan of operations approved by BLM long before Mojave National Preserve existed.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Moreover, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) is entirely inapplicable, despite the Park Service's assertion. Defs.' Opp'n at 18. The Supreme Court has since reaffirmed the change-in-position doctrine articulated in *State Farm* and *Fox* "provides the governing framework" when an agency reverses its previous policy positions without reasoned explanation. *Food and Drug Admin. v. Wages and White Lion Invs., LLC*, 604 U.S. 542 (2025) (citing *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Fox*, 566 U.S. at 515–16).

In brief, NPCA is likely to succeed on the merits of its first cause of action because the Park Service's decision in April 2025 to reverse course and approve new mining at Colosseum violated the Mining in the Parks Act and is arbitrary and capricious because the agency's change in policy position contradicts earlier factual findings and lacks reasoned explanation.

## II.    Injunctive Relief Is Necessary to Prevent Irreparable Harm.

NPCA has demonstrated a likelihood of imminent irreparable harm to Mojave National Preserve, NPCA, and the public in the absence of a preliminary injunction preventing further mining operations at Colosseum. The Park Service's and CRM's arguments to the contrary do not pass scrutiny. Opposing parties simultaneously accuse NPCA of moving too soon and too late. On the one hand, the Park Service claims irreparable harm is "speculative" and faults NPCA for failing to demonstrate that "full-scale extraction" is imminent. Defs.' Opp'n at 22–23. On the other, the Park Service claims NPCA "should have known there was an impending timeline for the resumption of operations" immediately after the Park Service reversed course in April 2025, and NPCA's decision to wait until CRM began grading this year "undercuts the plaintiff's claim of irreparable injury." Defs.' Opp'n at 19 (internal citations omitted).

The opposing parties cannot have it both ways. NPCA filed this motion as soon as it became clear that preliminary relief was necessary to preserve the status quo on the ground and prevent imminent irreparable harm pending the Court's resolution of this case.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

A.      **Imminent Operations at Colosseum Mine will Cause Irreparable Harm to Mojave National Preserve.**

NPCA has demonstrated that continued exploration and future extraction operations at Colosseum Mine will cause irreparable landscape disturbance, aesthetic harm, and destruction of sensitive native flora and fauna. Decl. of James André, Dkt. No. 20-3 (André Decl.) ¶¶ 13-17 (impacts to surface substrate, habitat fragmentation, invasive species introduction, and destruction of rare and native plants); Wilcox Decl. ¶¶ 24-25 (ground and habitat disturbance, vegetation removal, diminished enjoyment of landscape). Those impacts would cause substantial and permanent harm to Mojave National Preserve's fragile desert habitat, and would irreparably impair access, research opportunities, and recreational enjoyment for NPCA's members and staff. André Decl. ¶¶ 17–19; Wilcox Decl. ¶¶ 6, 10–13, 24–25.

Imminent, irreparable injuries to Mojave National Preserve from the Park Service's authorization of renewed mining activities at Colosseum are not too "speculative." Defs.' Opp'n at 22. CRM has stated unequivocally that it intends to proceed with additional mining operations at Colosseum. *See, e.g.,* CRM's Opp'n at 30–31. Additionally, new road development and the presence of additional machinery indicate a swift escalation in mining activity. Wilcox Decl. ¶¶ 14–22. Such work will immediately disrupt the Mojave National Preserve by increasing ground disturbance, destroying more fragile native species, and introducing dust and other construction debris in the habitat surrounding Colosseum Mine. *See* Wilcox Decl. ¶¶ 23–25; André Decl. ¶¶ 13–19. The Ninth Circuit has treated mining and other land-disturbing projects as paradigmatic sources of irreparable environmental harm. *See, e.g., Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*, 588 F.3d 718, 729 (9th Cir. 2009).

The opposing parties' efforts to diminish the significance of the harm to Mojave National Preserve are not persuasive. According to Congress, California's Mojave Desert is "extremely fragile, easily scarred, and slowly healed," 43 U.S.C. §

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1781(a)(2), and Mojave National Preserve "constitute[s] a public wildland resource of extraordinary and inestimable value[.]" Pub. L. No. 103-433, § 2(a)(1), 108 Stat. 4471 (1994). Damage to native desert plants, which has already occurred and will continue to occur in the absence of an injunction constitutes irreparable harm that cannot be remedied by "the planting of new seedlings nor the paying of money damages." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014). The fact that prior mining occurred at Colosseum does not excuse new and greater irreparable harm to the landscape in and around the mine. Courts recognize that renewed disturbance may cause irreparable harm even where the affected land or habitat has previously been damaged. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1129, 1135 (9th Cir. 2011) (granting injunction in area that had previously been logged); *League of Wilderness Defs.*, 752 F.3d at 764–65 (rejecting argument that irreparable harm was undermined in timber project because "the project area has previously been logged").

The opposing parties' argument that irreparable harm will not occur throughout the entirety of Mojave National Preserve is also wrong. Defs.' Opp'n at 20; CRM's Opp'n at 28–29. The Ninth Circuit rejected that precise argument in *All. for the Wild Rockies*, explaining that its "logical extension" would be that "a plaintiff can never suffer irreparable injury resulting from environmental harm in a forest area as long as there are other areas of the forest that are not harmed." 632 F.3d at 1135; *see also W. Watersheds Project v. Bernhardt*, 392 F. Supp. 3d 1225, 1258 (D. Or. 2019) (finding members' loss of enjoyment irreparable even though the affected lands were "a small part (39 square miles) of the surrounding 5,125 miles.").

Likewise, the Park Service's argument that harm to the Preserve can be remedied through reclamation after operations end is unfounded. Defs.' Opp'n at 23. The agency acknowledges that reclamation remains ongoing more than thirty years later—long after it was supposed to be complete—and that the Park Service rejected prior closure efforts because of continuing water-quality concerns. Defs.' Opp'n at 4–

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

5, 23. The Park Service's and CRM's continuing failure to complete reclamation reinforces, rather than undermines, NPCA's showing of imminent irreparable harm. The Ninth Circuit has firmly held that the possibility of future remediation, including natural regrowth over time, does not undermine a showing of irreparable harm, particularly where, as here, recovery could take hundreds of years. *League of Wilderness Defs.*, 752. F.3d at 764–765; *W. Watersheds Project v. Bernhardt,* 392 F. Supp. 3d 1225, 1254–55 (D. Or. 2019); André Decl. ¶ 13 ("Once destroyed, [the Preserve's desert plants] are extremely slow to restore on a meaningful timescale.").

Finally, the Park Service and CRM are also wrong that loss of access to a major junction within the Preserve is not irreparable, or that a multiple-hour detour each way renders the harm negligible. Defs.' Opp'n at 21; CRM's Opp'n at 28–30. Courts have long recognized that loss of access to National Park lands for recreation can itself support a finding of irreparable harm. For example, in *Ft. Funston Dog Walkers v. Babbitt*, plaintiffs sought a preliminary injunction to reopen one of only three access points to a beach on Park Service land. 96 F. Supp. 2d 1021 (N.D. Cal. 2000). The court adopted the reasoning of a sister court that "every day the plaintiffs missed in the park constituted irreparable harm," finding the harm both "substantial and irreparable." *Id.* at 1039-40 (citing *Galusha v. N. Y. State Dep't of Env't Conservation*, 27 F. Supp. 2d 117 (N.D. N.Y. 1998)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Office of Personnel*, No. C 25-01780 WHA, 2025 WL 660053, at *13 (N.D. Cal. 2025) ("The partial closure and degradation of national parks constitutes likely, irreparable harm due to both environmental injury and loss of access.").

Authorities cited by opposing parties on this point are readily distinguishable. Defs.' Opp'n at 21 (citing *Blue Ribbon Coal., Inc. v. U.S. Bureau of Land Mgmt.,* No. 2:23-CV-923-DAK-JCB, 2024 WL 1197862 (D. Utah Mar. 20, 2024); *Brown v. U.S. Forest Serv.,* 465 F. Supp. 3d 1119, 1130 (D. Or. 2020)). In *Blue Ribbon Coal.*, the court found no irreparable harm because the road closure was temporary and the route could reopen at an identifiable later date. 2024 WL 1197862 at *10. Here, by contrast,

there is no such assurance: the route through the Preserve may never reopen should mining operations continue. Similarly in *Brown*, the harm alleged by plaintiff was, at most, a three-week road closure. 465 F. Supp. 3d at 1130. The harm NPCA has demonstrated here is the complete closure of a public access road and major thoroughfare through Mojave National Preserve, which would irreparably diminish the ability of NPCA's staff and members to use the Preserve for scientific and recreational purposes. Wilcox Decl. ¶¶ 12–13; André Decl. ¶ 18.

In brief, NPCA has demonstrated imminent irreparable harm to Mojave National Preserve and NPCA's members; arguments raised by opposing parties to the contrary are unsubstantiated.

**B.      NPCA Did Not Improperly Delay in Moving for a Preliminary Injunction.**

Having accused NPCA of filing this motion in the absence of imminent irreparable harm, the opposing parties argue NPCA also unduly delayed in seeking preliminary relief. The Court should reject their effort to have it both ways. *All. for the Wild Rockies v. Gassmann*, 604 F. Supp. 3d 1022, 1036 (D. Mont. 2022) (rejecting delay argument, in part, due to "tension" between defendants' argument that "activities . . . are insufficiently imminent to warrant injunction" and argument that plaintiffs delayed in seeking relief). Regardless, the opposing parties' claims of delay do not withstand scrutiny.

NPCA filed this motion for preliminary relief shortly after discovering substantial road expansions, vegetation removal, and heavy equipment, as well as barriers and posted signage preventing entry. Wilcox Decl. ¶¶ 14–25. At that point, it was clear that irreparable harm was imminent. "[W]aiting to file for preliminary relief until a credible case for irreparable harm can be made is prudent rather than dilatory." *Arc of Cal. v. Douglas*, 757 F.3d 979, 990-91 (9th Cir. 2014).

The court's decision in *All. for the Wild Rockies v. Gassmann* is instructive. 604 F. Supp. 3d 1022, 1027, 1036 (D. Mont. 2022). There, defendants notified plaintiffs

that project activities could begin "as early as 2021," but plaintiffs did not seek a preliminary injunction until April 2022, after receiving notice that on-the-ground work would begin by that summer. *Id.* at 1036. The court rejected the argument that plaintiffs "should have filed a much earlier motion based on notification of *possible* project activities beginning more than seven months in the future," instead measuring delay from when plaintiffs received notice of construction activities. *Ibid.* (emphasis in original).

The court should apply the same reasoning here and reject the opposing parties' argument that NPCA should have filed this Motion immediately after the April 2025 Decision at issue. *See* Defs.' Opp'n at 19-20; CRM's Opp'n at 29-30. While the April 2025 Decision made it "possible" for CRM to begin operations at Colosseum, those operations did not in fact begin until much later. Wilcox Dec. ¶¶ 19–22. NPCA filed its motion on June 23, 2026—three months after discovering substantial roadwork and less than one month after discovering the access restrictions. That timeline does not show delay, much less delay sufficient to undermine irreparable harm. *California v. Health & Hum. Servs.*, 390 F. Supp. 3d 1061 (N.D. Cal. 2019) (finding five-month delay "minimal and not a basis for denying preliminary relief").

Further, a delay in seeking injunctive relief carries little weight where harm is ongoing or worsening, as is the case here. Indeed, courts are "loath to withhold relief solely on [delay] ground[s]." *Arc of Cal.*, 757 F.3d at 990 (quoting *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984)); *League of Wilderness Defs.*, 752 F.3d at 764 ("We have upheld or granted injunctions . . . in cases where plaintiffs have been less than timely."). Protected Mojave National Preserve lands face substantial, imminent, and ongoing harm; accordingly, the opposing parties cannot invoke delay to justify proceeding with unlawful and damaging mining operations. *See Native Ecosystems Council v. Marten*, 334 F. Supp. 3d 1125, 1133 (D. Mont. 2018) (ten-month delay after learning of impending construction did not undermine showing of risk of irreparable injury to lynx habitat) (injunction dissolved as moot).

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**III.    The Equities Tip Sharply in Favor of Temporarily Enjoining Further Operations at Colosseum Pending the Resolution of This Case.**

The public interest does not favor allowing CRM to destroy National Park lands, block public access to those lands, and continue for-profit mining operations in Mojave National Preserve while this litigation unfolds. The opposing parties are correct that courts consider the relevant statutory scheme and congressional intent when evaluating the balance of equities and public interest. CRM's Opp'n at 31-32; *see also* Defs.' Opp'n at 24. But those considerations favor granting a preliminary injunction here.

NPCA seeks only a temporary halt of operations to ensure that the Park Service adheres to its statutory and regulatory duties under federal law. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 992 (9th Cir. 2020) ("The public interest is served by requiring [federal agencies] to comply with the law."). And the public's generalized interest in "stability in agency decision-making," CRM's Opp'n at 32, also supports an injunction where, as here, the challenged action amounts to an unexplained reversal of the Park Service's own position. *See* Supra Section I.B.

Nor do CRM's and the Park Service's appeals to "national security" interests alter this analysis. Defs.' Opp'n at 25. Courts have rejected similar efforts to elevate sweeping assertions of national security interests above environmental harms or agencies' legal and procedural obligations. In *Hualapalai Indian Tribe v. Haaland*, 755 F. Supp. 3d 1165 (D. Ariz. 2024), for example, a tribe sought a preliminary injunction against a lithium exploration project that was presented as "one part of the United States' larger effort to transition to renewable sources of energy" and involved a "613-acre exploration area" with "100 exploratory core holes." *Id.* at 1173, 1175. Although the court recognized that "[l]ithium exploration is an important public interest at a time when the United States is striving to transition to renewable sources of energy," it nonetheless held that the national interest in lithium does not "permit a

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

federal agency to short-cut its regulatory consultation obligations or reasoned evaluation of the effects of its undertaking." *Id.* at 1198.

So too here. CRM and the Park Service cannot invoke generalized "national security interests" to push forward a harmful mining project on Mojave National Preserve land while disregarding the legal constraints that Congress imposed to protect National Park System resources. The Supreme Court has cautioned that "national-security concerns must not become a talisman used to ward off inconvenient claims—a 'label' used to 'cover a multitude of sins.'" *Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 523 (1985)); *Talbott v. United States*, 176 F.4th 720, 748–49 (D.C. Cir. 2026) (applying *Ziglar* to public interest analysis in preliminary injunction motion). That caution applies with equal force here, where CRM and the Park Service invoke national security to avoid ordinary limits on agency action and environmental protection.

The Park Service's reliance on *San Carlos Apache Tribe v. U.S. Forest Serv.* to support its national security argument is also unavailing. Defs.' Opp'n at 25 (citing 803 F. Supp. 3d 879, 956 (D. Ariz. 2025), aff'd, 170 F.4th 879 (9th Cir. 2026), 172 F.4th 641 (9th Cir. 2026)). There, the court found the public interest favored a land transfer for a copper mine that Congress had expressly authorized through statute after years of deliberation. *Id*. at 956. Congress has made no comparable determination for Colosseum Mine; instead, it preserved that land through the CDPA.

Moreover, any alleged national security interests ring hollow given the impossibility of extracting or processing rare earth elements at Colosseum during the pendency of an injunction. In fact, neither CRM nor the Park Service claim that there *are* commercially viable rare earth deposits at Colosseum Mine, only that there *may* be. *See* Defs.' Opp'n at 25 ("additional exploration at the Colosseum Mine may demonstrate the potential to mine for rare earth elements in the future"); CRM's Opp'n at 17 (claiming that Colosseum has "geologic links" to a different rare earth mine, "indicating the presence of rare earth elements"). Accordingly, there is no

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

evidence to CRM's and the Park Service's claims that an injunction would interfere with the United States' nebulous "national security" interests.

Finally, pecuniary harm alone, including lost revenues, operational costs, and investment-backed expectations, does not outweigh imminent, irreparable environmental harm, particularly inside a national preserve. *Se. Alaska Conservation Council v. U.S. Army Corps*, 472 F.3d 1097, 1101 (9th Cir. 2006) (finding that "the public interest strongly favor[ed] preventing environmental harm" despite a countervailing public "economic interest in the mine" because delay would not "reduce significantly any future economic benefit that may result from the mine's operation"). Ultimately, the public interest favors careful consideration of environmental impacts before mining operations at Colosseum proceed to an irreparable extent. *All. For the Wild Rockies*, 632 F.3d at 1138.

## CONCLUSION

For the foregoing reasons, NPCA requests that this Court reject the Park Service's and CRM's arguments and enter a preliminary injunction until it has decided NPCA's claims, enjoining the Park Service (1) to set aside their April 2025 Decision that renewed mining operations may proceed at Colosseum Mine in Mojave National Preserve, (2) to halt and prohibit further operations at Colosseum pending the resolution of this case, and (3) to monitor and enforce public access rights along Colosseum Road leading to and past Colosseum Mine.

Dated: July 13, 2026                    Respectfully submitted,

                                        GREGORY C. LOARIE (CA Bar No. 215859)
                                        gloarie@earthjustice.org

                                        /s/ Katrina A. Tomas
                                        KATRINA A. TOMAS (CA Bar No. 329803)
                                        ktomas@earthjustice.org
                                        EARTHJUSTICE
                                        1 Sansome Street, Suite 1700

San Francisco, California 94104
T: (415) 217-2000 ● F: (415) 217-2040

GABRIEL F. GREIF (CA Bar No. 341537)
ggreif@earthjustice.org
EARTHJUSTICE
707 Wilshire Blvd., Ste. 4300
Los Angeles, CA 90017
T: (415) 217-2000 ● F: (415) 217-2040

*Counsel for Plaintiff*

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff National Parks Conservation Association, certifies that this brief contains 6,966 words, which:

 _X_  complies with the word limit of L.R. 11-6.1.


Dated: July 13, 2026                          /s/ Katrina A. Tomas
                                              KATRINA A. TOMAS (CA Bar No. 329803)

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION