GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org
KATRINA A. TOMAS (CA Bar No. 329803)
ktomas@earthjustice.org
EARTHJUSTICE
1 Sansome Street, Suite 1700
San Francisco, California 94104
T: (415) 217-2000 ● F: (415) 217-2040

GABRIEL F. GREIF (CA Bar No. 341537)
ggreif@earthjustice.org
EARTHJUSTICE
707 Wilshire Blvd., Ste. 4300
Los Angeles, CA 90017
T: (415) 217-2000 ● F: (415) 217-2040

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR, *et al.*, <br><br> Defendants. | No.: 2:26-cv-4002-CAS-AS <br><br> **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S REPLY** <br><br> Date: July 27, 2026 <br> Time: 10:00 AM <br> Judge: Hon. Christina A. Snyder |

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S REPLY

Pursuant to Federal Rule of Evidence 201, Plaintiff National Parks Conservation Association (NPCA) hereby requests that the Court take judicial notice of the following document in connection with NPCA's Reply In Support of NPCA's Motion for Preliminary Injunction, filed concurrently herewith: The brief entitled *Federal Defendant's Memorandum in Support of Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment* in *Rayco v. Bernhardt*, No. 2:21-CV-00512-SVW-GJS, 2024 WL 4329006 (C.D. Cal. Jan. 9, 2024). A true and correct copy of the brief is attached hereto as Exhibit 1.

This Court may take judicial notice of a fact "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

"[T]he Court may take judicial notice of matters of public record." *Moore v. Navarro*, No. C 00-03213 MMC, 77, 2004 WL 783104, at *2 (N.D. Cal. Mar. 31, 2004). Such "matters of public record" include documents filed in federal district court. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (taking judicial notice of a motion to dismiss filed in a separate, prior matter); *Ray v. Lara*, 31 F.4th 692, 702 n.4 (9th Cir. 2022) ("We may take judicial notice of district court records."). Specifically, a court may take judicial notice of complaints and briefs filed in another case to determine what issues were before the court and litigated. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

Based on the foregoing, NPCA respectfully requests that the Court take judicial notice of Exhibit 1, a brief filed in this District Court.

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S REPLY

Dated: July 13, 2026

Respectfully submitted,

GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org

/s/ Katrina A. Tomas
KATRINA A. TOMAS (CA Bar No. 329803)
ktomas@earthjustice.org
EARTHJUSTICE
1 Sansome Street, Suite 1700
San Francisco, California 94104
T: (415) 217-2000 ● F: (415) 217-2040

GABRIEL F. GREIF (CA Bar No. 341537)
ggreif@earthjustice.org
EARTHJUSTICE
707 Wilshire Blvd., Ste. 4300
Los Angeles, CA 90017
T: (415) 217-2000 ● F: (415) 217-2040

*Counsel for Plaintiff*

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S REPLY

# Exhibit 1

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

SHANNON BOYLAN, (DC Bar No. 1724269)
shannon.boylan@usdoj.gov
150 M Street NE
Washington, D.C. 20002
Tel.: (202) 598-9584 / Fax: (202) 305-0506

*Attorneys for Federal Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| RAYCO, LLC, | ) CASE NO. 2:21-cv-00512-SVW-GJS |
| | ) |
| Plaintiff, | ) **FEDERAL DEFENDANT'S** |
| v. | ) **MEMORANDUM IN SUPPORT** |
| | ) **OF CROSS-MOTION FOR** |
| DEBRA HAALAND, in her official | ) **SUMMARY JUDGMENT AND** |
| capacity as Secretary of the United | ) **RESPONSE TO PLAINTIFF'S** |
| States Department of the Interior, | ) **MOTION FOR SUMMARY** |
| | ) **JUDGMENT** |
| Defendant. | ) |
| | ) Hearing Date: Monday, April 10, 2023 |
| | ) Time: 1:30 p.m. |
| | ) Courtroom: 10A, 10th Floor |
| | ) Judge: Hon. Stephen V. Wilson |
| | ) |

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ
**RJN - Exhibit 1**
**Page 5**

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

LEGAL BACKGROUND ............................................................................................1

    I.     Mineral disposal under the Mining Law of 1872....................................1

    II.    Staking or "locating" a mining claim......................................................2

    III.   Staking or "locating" a mill site...............................................................4

    IV.   Patenting under the Mining Law...............................................................5

FACTUAL BACKGROUND .......................................................................................7

    I.     The mining claims and sites at issue........................................................7

    II.    The patent applications at issue...............................................................10

    III.   Cima Cinder Mine ...................................................................................14

    IV.   Other mining claims on the subject lands. ..............................................15

STANDARD OF REVIEW ........................................................................................15

ARGUMENT ..............................................................................................................16

    I.     INTERIOR'S FINDING THAT PLAINTIFF RELOCATED, RATHER THAN AMENDED, THEIR MINING CLAIMS WAS BASED ON A CORRECT INTERPRETATION OF THE LAW .....16

        A.    Interior was not required to look beyond the location notices in determining that the 1979 and 1991 Notices were relocations and not amendments. ....................................16

        B.    To the extent the Court finds that further factual development is needed to determine whether the 1979 and 1991 Notices were relocations, the appropriate remedy is to remand the decisions to the agency for reconsideration.......25

    II.    INTERIOR'S DENIAL OF THE MILL SITE PATENTS WAS BASED ON A CORRECT INTERPRETATION OF THE CALIFORNIA DESERT PROTECTION ACT ............................26

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ               i

RJN - Exhibit 1
Page 6

    A.    Congress intended the section 508 patenting restriction to apply to "any patents issued after the date of enactment.".......26

        1.    Section 508's patenting restriction was intended to apply to "any" patent issued after enactment as part of the CDPA's "regulation of mining" in the Preserve.................................................................27

        2.    Construing the CDPA's patenting restriction as applying to any patent thereafter issued is consistent with the statute's purpose. .............................29

        3.    Interior's interpretation of section 508 is reasonable. ....32

    B.    Plaintiff's remaining arguments fail. .......................................33

CONCLUSION.................................................................................35

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ        ii

RJN - Exhibit 1
Page 7

# TABLE OF AUTHORITIES

**Cases**

*Andrus v. Shell Oil Co.*,
446 U.S. 657 (1980) ............................................................................................2

*Best v. Humboldt Placer Mining Co.*,
371 U.S. 334 ....................................................................................................33

*Bismark Mountain Gold Mining Co. v. N. Sunbeam Gold Co.*,
95 P. 14 (Idaho 1908) ......................................................................................23

*Bohmker* v. *Oregon*,
903 F.3d 1029 (9th Cir. 2018) .............................................................. 1, 2, 3

*Cameron v. United States*,
252 U.S. 450 (1920) ........................................................... 6, 7, 8, 34

*Charles Lennig*,
5 Pub. Lands Dec. 190 (1886) ........................................................................5

*Chrisman v. Miller*,
197 U.S. 313 (1905) ............................................................................... 3, 23

*Corley v. United States*,
556 U.S. 303, 129 S. Ct. 1558 (2009) ............................................................32

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ........................................................................................30

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) ........................................................................................20

*Forbes v. Gracey*,
94 U.S. 762 (U.S. 1876) ...................................................................................3

*Freese v. United States*,
639 F.2d 754 (Ct. C. 1981) ..............................................................................31

*Hagerman v. Thompson*,
235 P.2d 750 (Wyo. 1951) ..............................................................................23

*Harvey v. Havener*,
135 Mont. 437 (1959) ......................................................................................23

*Independence Mining Co. v. Babbitt*,
   105 F.3d 502 (9th Cir. 1997)......................................................................6

*Kern Oil Co. v. Crawford*,
   76 P. 1111 (Cal. 1903)..............................................................................19

*Lands Council v. McNair*,
   537 F.3d 981 (9th Cir. 2008)....................................................................15

*McEvoy v. Hyman*,
   25 F. 596 (C. C. D. Colo. 1885) ...............................................................18

*McFarland v. Kempthorne*,
   545 F.3d 1106 (9th Cir. 2008)..................................................................16

*McMaster v. United States*,
   731 F.3d 881 (9th Cir. 2013) ....................................... 5, 26, 29, 31, 33

*Nat'l Mining Ass'n v. Kempthorne*,
   512 F.3d 702 (D.C. Cir. 2008) .................................................................33

*Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*,
   475 F.3d 1136 (9th Cir. 2007)..................................................................16

*Nw. Envtl. Advocs. v. Nat'l Marine Fisheries Serv.*,
   460 F.3d 1125 (9th Cir. 2006)..................................................................20

*Pepperdine v. Keys*,
   198 Cal. App. 2d 25 (1961).......................................................................4

*Pidgeon v. Lamb*,
   24 P.2d 24 P.2d 206 (Cal. App. 1933) ............................................. 18, 19

*R.T. Vanderbilt Co. v. Babbitt*,
   113 F.3d 1061 (9th Cir. 1997)..................................................................25

*River Runners for Wilderness v. Martin*,
   593 F.3d 1064 (9th Cir. 2010)..................................................................16

*Skaw v. United States*,
   13 Cl. Ct. 7 (1987)...................................................................................18

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) .................................................................................26

*Smelting Co. v. Kemp*,
   104 U.S. 636 (1881) ...................................................................................5

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    iv
**RJN - Exhibit 1**
**Page 9**

*Swanson v. Babbitt*,
   3 F.3d 1348 (9th Cir. 1993) ............................................................................5

*Tucson Airport Auth. v. Gen. Dynamics Corp*,
   136 F.3d 641 (9th Cir. 1998) ........................................................................35

*United States v. Lewis*,
   67 F.3d 225 (9th Cir. 1995) ..........................................................................30

*United States v. Rizzinelli*,
   182 F. 675 (D. Idaho 1910) .............................................................................6

*Waskey v. Hammer*,
   223 U.S. 85 (1912) ........................................................................................22

*West v. Standard Oil Co.*,
   278 U.S. 200 (1929) ......................................................................................34

*Wilbur v. U.S. ex rel. Krushnic*,
   280 U.S. 306 (1930) ........................................................................................6

*Wilderness Soc'y v. U.S. Fish and Wildlife Serv.*,
   353 F.3d 1051 (9th Cir. 2003) ......................................................................30

*Yosemite Gold Mining & Milling Co. v. Emerson*,
   208 U.S. 25 (1908) ........................................................................................17

**Statutes**

5 U.S.C. § 706(2)(A) ...........................................................................................16

5 U.S.C. §§ 701-06 ..............................................................................................15

16 U.S.C. § 1133(d)(3) ...........................................................................................2

16 U.S.C. § 1901 ..................................................................................................27

16 U.S.C. §§ 410aaa-4 .........................................................................................31

16 U.S.C. §§ 410aaa-41(1) ..................................................................................30

16 U.S.C. §§ 410aaa-410aaa-91 ............................................................................2

16 U.S.C. §§ 410aaa-43 .......................................................................................28

16 U.S.C. §§ 410aaa-47 .......................................................................................31

16 U.S.C. §§ 410aaa-48 ......................................................................... 27, 28, 29

30 U.S.C. § 22 ...................................................................................................1, 3

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    v
**RJN - Exhibit 1**
**Page 10**

30 U.S.C. § 23 ..................................................................................................3

30 U.S.C. § 26 ..................................................................................................2

30 U.S.C. § 28 ..................................................................................................3

30 U.S.C. § 29 ..................................................................................................3

30 U.S.C. § 35 ...............................................................................................3, 4

30 U.S.C. § 36 ..................................................................................................3

30 U.S.C. § 42 ...............................................................................................3, 5

30 U.S.C. § 42(b) .............................................................................................5

30 U.S.C. § 601 ................................................................................................2

30 U.S.C. § 611 ................................................................................................2

30 U.S.C. § 612(a) ...........................................................................................6

30 U.S.C. § 612(b) ...........................................................................................2

43 U.S.C. § 1744 ..............................................................................................8

43 U.S.C. § 1744(b) .........................................................................................8

43 U.S.C. § 1781 ............................................................................................31

Cal. Pub. Res. Code § 2303 .............................................................................4

Cal. Pub. Res. Code § 2303(b)........................................................................18

Cal. Pub. Res. Code § 2323 ...........................................................................17

Cal. Pub. Res. Code § 3902 ...........................................................................18

Cal. Pub. Res. Code § 3908 ...........................................................................21

Cal. Pub. Res. Code § 3910 .............................................................................5

Pub. L. No. 103-332, 108 Stat. 2499, 2519 ....................................................6

Pub. L. No. 103-433, 108 Stat. 4491 .............................................................27

Pub. L. No. 113-287, 128 Stat. 3094, 3272 ...................................................27

Pub. L. No. 86-390, 74 Stat. 7 .........................................................................5

U.S. Const. art. IV ............................................................................................2

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ
**RJN - Exhibit 1**
**Page 11**

vi

**Regulations**

36 C.F.R. Part 9 ...............................................................................................28

36 C.F.R. § 9.1 (1994) ................................................................................ 28, 29

43 C.F.R. § 3832.32 ...........................................................................................5

43 C.F.R. § 3833.0-5(p) (1990) .......................................................................22

43 C.F.R. § 3833.22(c) ................................................................................ 22, 23

84 Fed. Reg. 46,745 (Sept. 5, 2019). ...............................................................12

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                  vii
**RJN - Exhibit 1**
**Page 12**

## **INTRODUCTION**

At issue in this case is the Department of the Interior's ("Interior") denial of a mineral patent application as to all but 10 of the 675 acres of lands sought within the Mojave National Preserve. That decision was compelled by Plaintiff's failure to record the changes to the location of its mining claims while the minerals in question remained subject to entry under the Mining Law of 1872. While Plaintiff plays down the significance of its error, the regulatory location requirement matters because of Congress's decision in 1955 to withdraw cinders and other "common varieties" of minerals from disposal under the Mining Law. Thus, it is not material that Plaintiff has historically mined within the footprint of its originally intended claim. What matters here is that Plaintiff's attempt to assert property rights under the Mining Law on lands other than those originally noticed, and after Congress withdrew the minerals in question from the Mining Law, prevents Interior from conveying the acres Plaintiff newly recorded in 1979 and 1991. Plaintiff's claim relating to 22.5 acres of mill sites must similarly be denied, because it is foreclosed by the California Desert Protection Act of 1994. That Act provides only for patenting of minerals— and not the surface-estate—and thus, Interior's denial of patent as to the non-mineral mill sites was in accordance with law. Therefore, Federal Defendant respectfully requests the Court deny Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion for Summary Judgment.

## **LEGAL BACKGROUND**

**I.      Mineral disposal under the Mining Law of 1872**.

The Mining Law of 1872 authorizes disposal of certain minerals from the federal lands to which the law applies. *See* 30 U.S.C. § 22; *see also Bohmker* v. *Oregon*, 903 F.3d 1029, 1034-36 (9th Cir. 2018) (describing the history of the Mining Law). Under the Mining Law, "citizens of the United States and those who have declared their intention to become such" may take minerals from federal lands

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                          1
**RJN - Exhibit 1**
**Page 13**

free of charge without the need for any lease, contract, or permit from the United States. *Id.* at 1034.

Because the Property Clause of the Constitution gives Congress power over federal property, U.S. Const. art. IV § 3, cl. 2, Congress can withdraw the Mining Law's disposal authority at any time. *See Andrus v. Shell Oil Co.*, 446 U.S. 657, 657-58 (1980). Such statutory withdrawals can be as broad or as narrow as Congress chooses. Relevant here, Congress can withdraw certain minerals from disposal under the Mining Law, as it did in the Surface Resources Act of 1955. 30 U.S.C. § 611 (removing "common varieties of sand, stone, gravel, pumice, pumicite, or cinders" from disposal under the Mining Law, and instead making those minerals subject to permit or sale under the Materials Act of 1947, 30 U.S.C. § 601). Or Congress can withdraw certain federal lands from the operation of the Mining Law, as it did in the California Desert Protection Act of 1994. 16 U.S.C. §§ 410aaa to 410aaa-91 ("CDPA") (withdrawing millions of acres of federal lands for wilderness, national parks, state parks, and other special places). Congress can also withdraw just one stick in the bundle of rights that would otherwise be conveyed under laws providing for the disposal of federal property. *See, e.g.*, Surface Resources Act, 30 U.S.C. § 612(b) (reducing the "exclusive right of possession" afforded to mining claimants under 30 U.S.C. § 26 to a nonexclusive right for mining claims located after July 23, 1955);[1] Wilderness Act of 1964, 16 U.S.C. § 1133(d)(3) (reducing the right to a full fee patent to a right to a minerals-only patent).

## II.    Staking or "locating" a mining claim.

Long before Congress enacted the first general laws governing federal mineral disposal, states and local jurisdictions had promulgated rules and regulations that

---

[1] The United States and its licensees and permittees are still blocked from accessing lands subject to valid pre-1955 mining claims and sites, regardless of whether the government's use would endanger or materially interfere with prospecting, mining or processing operations or reasonably incident uses. *See* 30 U.S.C. § 612(b).

governed miners' rights to mineral deposits, including mineral deposits on federal lands. Under these state laws and "local customs or rules of miners in the several mining districts," *see* 30 U.S.C. § 22, priority of possession as between the miners was adjudicated based on compliance with procedural requirements, such as distinctly marking the boundaries of the claimed lands on the ground, posting a notice describing the lands claimed, and recording that notice with the county or local record office as evidence to all others that the lands described in the notice were not vacant or unappropriated. *See generally* 2 *Lindley on Mines* § 350, at 811 (3d ed. 1914) (describing local customs).

A core purpose of the Mining Law was to allow "mining claims" staked or "located" on federal lands under the existing miners' rules and regulations to be enforceable as against the United States, as well as other miners.[2] *See* 30 U.S.C. §§ 23, 26, 27, 35, 36, 42; *Chrisman v. Miller*, 197 U.S. 313, 320-21 (1905). Recognition of mining claims by the United States ensured the miner's ability to assert its rights to the claimed federal lands in the event of any subsequent withdrawal, encumbrance, or transfer, and—better still—provided the opportunity to obtain fee title or "patent" to those lands. *See* 30 U.S.C. §§ 29, 35, 36, 42.

The Mining Law also introduced some unifying principles with respect to maximum mining claim size, minimum annual labor needed to hold possession of a mining claim, and manner of recording, and Congress expressly recognized the authority for states and local jurisdictions to continue to regulate these and other aspects of miners' possessory rights. 30 U.S.C. § 28; *Bohmker*, 903 F.3d at 1048 n.1. For example, the Mining Law requires placer[3] mining claims staked on lands

---

[2] Location of a mining claim does not give the mining claimant ownership of the federal minerals until severance. *See Forbes v. Gracey*, 94 U.S. 762, 766 (U.S. 1876).

[3] *See* 30 U.S.C. § 35 (addressing "[c]laims, usually called 'placers,' including all forms of deposit, excepting veins of quartz, or other rock in place").

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                      3
**RJN - Exhibit 1**
**Page 15**

surveyed by the United States to "conform as near as practicable with the United States system of public land surveys and the rectangular subdivisions of such surveys" and expressly states that no placer mining claim "shall include more than twenty acres for each individual claimant," 30 U.S.C. § 35, although "two or more persons or association of persons" may locate up to 160 acres in a single placer claim. *Id.* § 36. California law at the time these placer mining claims were located in 1948 stated:

> Where the United States survey has been extended over the land embraced in the location, however, the [placer] claim may be taken by legal subdivision and no other reference than those of such survey shall be required, and the boundaries of a claim so located and described need not be staked or monumented. The description by legal subdivisions shall be deemed the equivalent of marking.

1939 Cal. Stat. 1080 (codified as Cal. Pub. Res. Code § 2303); *see Pepperdine v. Keys*, 198 Cal. App. 2d 25, 31 (1961) (stating that § 2303 provides that "if a United States survey exists the description may be by legal subdivision without marking or staking the boundaries"). The California statute and the Mining Law thus work in concert, with the federal requirement for placer claims on surveyed lands to "conform as near as practicable with the United States system of public-land surveys, and the rectangular subdivisions of such surveys" supporting the state statute making it unnecessary for placer mining claimants who located by legal subdivisions under the public land survey system to engage in the posting and marking required for lode claims and placer claims on unsurveyed lands.

**III.    Staking or "locating" a mill site**.

 "A mill site is a tract of land, not to exceed five acres, on which can be placed processing facilities and other structures used to support the extraction of minerals from the claim." *Swanson v. Babbitt*, 3 F.3d 1348, 1350 (9th Cir. 1993); 30 U.S.C. § 42(b) (specifying that mill sites dependent on placer mining claims are used or

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    4
**RJN - Exhibit 1**
**Page 16**

occupied for mining, milling, processing, beneficiation, or other mining operations); 43 C.F.R. §§ 3832.32, 3832.34(a). The core requirements to validly claim federal lands as a mill site (as opposed to a mining claim) are that the lands are nonmineral in character and that there is actual, good faith "use or occupa[ncy]." *See Charles Lennig*, 5 Pub. Lands Dec. 190, 192 (1886).[4]

Until 1960 holders of placer mining claims could not locate mill sites to use in association with their claims,[5] *see* Pub. L. No. 86-390 (1960) (codified as amended at 30 U.S.C. § 42(b); indeed California did not enact that authority until 1988. *See* Act of Mar. 18, 1960, Pub. L. No. 86-390, 74 Stat. 7; 1988 Cal. Stat. 920 (codified at Cal. Pub. Res. Code § 3910) (amending the state mill site statute to add "the proprietor of a placer claim" to the persons qualified to locate a mill site).

## IV. **Patenting under the Mining Law**.

"The patent of the United States is the conveyance by which the nation passes its title to portions of the public domain." *Smelting Co. v. Kemp*, 104 U.S. 636, 640 (1881). The right to a patent is a property interest distinct from the interest in a valid unpatented mining claim. *See McMaster v. United States*, 731 F.3d 881, 896-97 (9th Cir. 2013). Patenting is not required in order to mine federal minerals under the Mining Law, *see Wilbur v. U.S. ex rel. Krushnic*, 280 U.S. 306, 317 (1930); rather, miners pursue patenting, in large part, because fee ownership substantially increases the range of potential activities that may properly be conducted on those lands. *See*

---

[4] Neither the Mining Law nor California law require that lands subject to mill sites be less valuable than lands subject to lode or placer mining claims, or that the lands on which mill sites are staked are situated near the associated mining claim. *See* 30 U.S.C. § 42; Cal. Pub. Res. Code § 3910.

[5] Before 1960, all mining, milling, processing, beneficiation, or other operations in connection with mining on a placer mining claim would have been conducted within the boundaries of the claim itself, or another placer claim located for this purpose, or on unclaimed lands. *See generally Mill Site Location and Patenting under the 1872 Mining Law*, M-37010 (Oct. 7, 2003) (discussing the history of mill sites).

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    5
**RJN - Exhibit 1**
**Page 17**

30 U.S.C. § 612(a) (limiting use of mining claims and site to those that are reasonably incident to mining); *see, e.g.*, *United States v. Rizzinelli*, 182 F. 675, 684 (D. Idaho 1910) ("[T]he right of a locator of a mining claim to the 'enjoyment' of the surface thereof is limited to uses incident to mining operations.").[6]

The U.S. Bureau of Land Management ("BLM") has a duty to verify that a patent application is complete and complies with all the statutory requirements.[7] *Cameron v. United States*, 252 U.S. 450, 464 (1920); *see* BLM Manual Handbook H-3860-1, Mineral Patent Application Process (1991). Following that, BLM conducts an on-the-ground mineral examination to verify that the mining claims and mill sites in the patent application are valid and otherwise meet the requirements for patenting. For placer claims and mill sites, BLM's examination divides the claim or site into aliquot parts,[8] each of which must meet the legal requirements for patenting.

[6] Since 1994, Congress has imposed a moratorium on the processing of new patent applications. *See* Interior and Related Agencies Appropriations Act of 1995, Pub. L. No. 103-332 § 113, 108 Stat. 2499, 2519 (1994). Congress specifically exempted from the moratorium patent applications for which "all requirements . . . were fully complied with by the applicant" by the effective date of the moratorium. *Id.* BLM has interpreted the exemption to apply, at a minimum, to all patent applications for which a First Half of Mineral Entry - Final Certificate was issued on or before the effective date of the moratorium, which includes patent applications CACA28826 and CACA28827.

[7] Once BLM determines that the patent applicant has satisfied the "paperwork" requirements of the Mining Law and has paid the purchase price, the Department issues the FHFC. The FHFC confers no rights on the patent applicant and a patent is not issued until after BLM determines that the mining claim is valid. *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 506 (9th Cir. 1997); *see Entitlement to a Mineral Patent Under the Mining Law*, M-36990, at 9 (Nov. 12, 1997) (rejecting the proposition that "equitable title" vests upon FHFC issuance).

[8] The word "aliquot" means "a portion for a larger whole." The concept of "aliquots" or "aliquot parts" in the land management context describes how agencies divide up the public domain into regular parcels that are more easily managed or transferred. Thus a 160-acre association placer claim would have sixteen 10-acre aliquot parts and a 5-acre mill site would have two 2.5 acre aliquot parts.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ

6

BLM then documents its findings from the mineral examination in a mineral report that identifies whether and to what extent the mining claims and sites for which patent is sought satisfy the requirements under the Mining Law. If the mineral examiner recommends "clearlisting" for patent, the Secretary or her delegee will make a final decision on the application. If the mineral examiner recommends an administrative contest proceeding to declare the mining claims or sites void, the BLM State Director (or her delegee) will issue a contest complaint.

## FACTUAL BACKGROUND

### I.    The mining claims and sites at issue.

On June 1 and 2, 1948, the Iwo Jima, Cinder No. 2, and Cinder No 3, association placer mining claims were located on surveyed lands in Township 14 North, Range 12 East, San Bernardino Meridian (T.14.N., R.12.E., SBM[9]), San Bernardino County, California. AR00013 (Cinder No. 2), AR00015 (Cinder No. 3), AR00148 (Iwo Jima). Consistent with federal and state law, the notices of location for the Iwo Jima, Cinder No. 2, and Cinder No. 3 claims were recorded with the county on June 29, 1948 (the 1948 Notices) and were described by legal subdivision of the public land survey. *Id.* The lands claimed in the Iwo Jima 1948 Notice included the 160 acres in the center of section 15; the lands claimed in the Cinder No. 2 1948 Notice included the 160 acres comprising the entire southwest quarter of section 20; and the lands claimed in the Cinder No. 3 1948 Notice included the 160 acres in the center of the north half of section 29. *Id.* Each of the 1948 Notices listed the same eight locators: Mr. Ray, Mrs. Ray, Vernon Ray, Delores Hutchinson,

---

[9] The location notices and the patent application use the abbreviation "SBBM," which stands for San Bernardino Base (or Baseline) and Meridian. *See also* AR02479, AR02486.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    7
**RJN - Exhibit 1**
**Page 19**

Dorothy Hafenfeld, Robert Hafenfeld, Robert Stephens, and Carmen Stephens.[10] AR02487.

Five years later, Mr. Ray obtained sole ownership of all three of the 160-acre association placer claims from the other co-locators, AR02487 (2020 mineral report noting quitclaim deeds to Mr. Ray signed on May 6, 1953), including from Mrs. Ray. AR00107.

On October 3, 1979, Mr. Ray filed an "amended" location notice for the Iwo Jima association placer claim (the Iwo Jima 1979 Notice) in the San Bernardino County Recorder's Office. AR00150. The legal subdivisions claimed in the Iwo Jima 1979 Notice still described 160 acres, but the lands described were now approximately 1.5 miles west of the lands claimed in the 1948 Notice.[11] *See* AR02521.

The following week, Mr. Ray recorded the Iwo Jima 1979 Notice and the 1948 Notices for the Cinder No. 2 and Cinder No. 3 placer mining claims with BLM, as required under section 314 of FLPMA, 43 U.S.C. § 1744.[12] AR02487 (BLM date stamp noting Oct. 9, 1979, recordation date).

On September 4, 1991, "amended" location notices for all three mining claims were recorded with San Bernardino County (the "1991 Notices"). AR00017 (Cinder No. 2), AR00018 (Cinder No. 3), AR00152 (Iwo Jima). Each of the 1991 Notices listed the Emerson A. Ray and Fay R. Ray 1990 Trust ("Trust") as the sole owner,

[10] Mr. Ray and Vernon Ray were the only locators to sign the 1948 Notices. AR00013 (1948 Cinder No. 2 Notice), AR00015 (1948 Cinder No. 3 Notice), AR00148 (1948 Iwo Jima Notice).

[11] By Mr. Ray's admission, the lands in the 1979 Iwo Jima Notice were also three miles further south than the lands in the 1948 Iwo Jima Notice. AR00150 (notation describing distance from "Valley Wells, Calif.").

[12] In 1976, Congress amended the Mining Law to require holders of existing mining claims to file a copy of the "official record" of their mining claims and sites with the Department within the three-year period following October 21, 1976. 43 U.S.C. § 1744(b).

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    8

rather than the eight original locators.[13] AR00017 (Cinder No. 2), AR00018 (Cinder No. 3), AR00152 (Iwo Jima). Also, the 1991 Notices differed from previous location notices as to the descriptions of the lands claimed: for the Iwo Jima placer mining claim, the 1991 Notice omitted the north 40 acres of that mining claim as described in the Iwo Jima 1979 Notice, which reduced the size of the claimed lands from 160 acres to 120 acres, AR00152; for the Cinder No. 2 placer mining claim, the legal subdivisions described lands that were, but for 10 acres, different from the 1948 Notice, AR00017; and for the Cinder No. 3, the lands claimed were completely different from the 1948 Notice. AR00018.

The same day, the Trust recorded 51 mill sites,[14] which had been located the previous day on lands adjacent to the lands claimed in the 1991 Notices.[15] AR01202. The location notices for the mill sites associated with the Iwo Jima placer mining claim claimed the same 40 acres of lands that had been included as part of the mining claim in the Iwo Jima 1979 Notice but that were relinquished in the Iwo Jima 1991 Notice. *See* AR02494. The lands claimed in 1991 for several of the mill sites associated with the Cinder No. 2 and Cinder No. 3 mining claims were within the legal subdivisions described in the 1948 Notices for those claims. *Compare, e.g.*, AR02511 (showing relative position of the 1948 descriptions and the 1991

---

[13] This is in contrast to the Iwo Jima 1979 Notice, and the initial 1979 recordations with BLM that showed the original eight locators as owners, AR00151, notwithstanding the 1953 transfers to Mr. Ray's sole ownership. AR02487 (BLM date stamp noting Oct. 9, 1979 recordation date), AR02489.

[14] Thirty-two mill sites (covering 157.5 acres) were associated with the Cinder No. 2 placer mining claim; 11 mill sites (covering 55 acres) were associated with the Cinder No. 3 placer mining claim; and 8 mill sites (covering 40 acres) were associated with the Iwo Jima placer mining claim.

[15] Two of these mill site location notices were promptly amended by the Trust within weeks of location, *see* AR00739, AR00743, because they described the same legal subdivisions and were therefore inaccurate. *See* AR00737, AR00741 (both describing the N1/2 NW1/4 SE1/4 NE 1/4 of Sec. 19, T.14.N., R.12.E., SBM).

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    9
**RJN - Exhibit 1**
**Page 21**

descriptions), *with* AR02498 (map including mill sites). The 1991 Notices and the location notices for the mill sites were recorded with BLM on September 12, 1991. AR01451.

## II.     The patent applications at issue.

On September 23, 1991, BLM received two patent applications from the Emerson A. Ray and Fay R. Ray 1990 Trust. AR00008 (patent application for Cinder No. 2, Cinder No. 3, and associated mill sites dated September 20, 1991, serialized as CACA 28826); AR00142 (patent application for Iwo Jima and associated mill sites dated September 20, 1991, serialized as CACA 28827). Patent application CACA 28826 described "the land applied for" as "CINDER NO. 2 (As Amended [in 1991]), containing 160 acres, and CINDER NO. 3 (As Amended [in 1991]), containing 160 acres" as well as 43 mill sites.[16] AR00009. Patent application CACA 28827 described "the land applied for" as "IWO JIMA (As Amended [in 1979 and 1991])," as well as 8 mill sites. AR00143.

BLM promptly began processing the patent applications. *See, e.g.*, AR00303 (Jan. 27, 1992 handwritten memorandum documenting preliminary review of patent applications); AR00709-10 (Feb. 19, 1992 transmittal memo to BLM California Desert District Office); AR00316 (Apr. 29, 1992 handwritten notation of conversation with applicant regarding required revisions to the publisher's agreement for CACA28826). BLM signed the First Half of Mineral Entry Final Certificates (FHFC) for the patent applications on May 7, 1992. *See* AR00334.

After issuance of the FHFCs, BLM conducted field work and gathered information needed to prepare a mineral report to determine whether "the land applied for" in patent applications CACA28826 and CACA28827 satisfied the

---

[16] On March 30, 1994, BLM declared four of the mill sites in CACA void *ab initio* because they were situated on lands that were not open to operation of the Mining Law as of the date of location. AR00715-17. BLM's March 30, 1994 decision also canceled the FHFC and rejected patent application 28826 as to those four mill sites. AR00716.

requirements for obtaining a patent. *See, e.g.*, AR00712 (May 5, 1993, memorandum noting completion of two field examinations and preliminary conclusions), AR00356-58 (Oct. 14, 1994 conversation record discussing history and production of the Cima mine).[17] BLM was unable to find the applicable section corners, and thus devised another method to register the geologic and mine features to the public land survey. *See* AR00405, AR00454. A mineral report determining whether each mining claim and site met the requirements for patenting, based on the position of the deposit and other features in relation to the public land survey system established by this method, was completed in June 1999 (the 1999 Mineral Report).[18] AR00378.

BLM Headquarters returned the 1999 Mineral Report to the California State Office on June 27, 2002, for reconsideration. AR01871. In October 2003, BLM completed a revised mineral report (the 2003 Mineral Report), determining that only 60 acres of the Cinder No. 2 placer claim met the requirements for obtaining a patent. AR01180 ("Under the BLM guidelines, the Cinder No. 3 and Iwo Jima [Placer Mining Claims] in the subject [Mineral Patent Applications] . . . cannot be supported by a discovery of a valuable mineral deposit"). The 2003 Mineral Report also determined that only nine mill sites or portions thereof, totaling 27.5 acres, satisfied the requirements for patenting. AR01189 (noting that the recommendation was "[s]ubject to final legal review of the application by the Office of the Solicitor

---

[17] During this time BLM was also working on the mineral report for another patent application involving mining claims owned by the Emerson Ray Trust. AR00399 (describing BLM's review of the patent application for the Cinderlite placer mining claims).

[18] The 1999 Mineral Report concluded that the Department should issue a patent for a 50-acre portion of the Cinder No. 2 placer mining claim, and one 5-acre mill site associated with that mining claim (to be selected by the patent applicant). The mineral report recommended initiating contest proceedings with respect to the remaining acreage.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    11

**RJN - Exhibit 1**
**Page 23**

concerning the patentability of the mill sites").[19] The 2003 mineral report received technical approval from BLM's Washington Office on December 14, 2007, AR01875, but was returned to the BLM California State Office in 2014 for analysis of several issues. AR02486; *see also* AR01889 (email exchange between BLM California Energy and Minerals Branch Chief and BLM Chief Mineral Examiner).

In May and September 2018, BLM conducted additional on-the-ground fieldwork to address the issues raised in the Departmental review process. AR02517. During this fieldwork, BLM realized that the method used in the 2003 Mineral Report to position the mineral deposits and facilities with respect to the public land survey boundary lines was likely flawed.[20] *See* AR02518 (stating that during the September 2018 field work the mineral examiners determined that the southwest corner monument of Section 20 "was likely further west than depicted in the 2003 report"). Accordingly, at the mineral examiners' request, AR01976, a dependent resurvey of section 20 was conducted to ascertain the legal boundaries of that section, and was officially filed on October 7, 2019. *See* Filing of Plats of Survey: California, 84 Fed. Reg. 46,745 (Sept. 5, 2019). After using the correct section boundaries as established in the 2019 dependent resurvey, BLM found that the "lands claimed" in the 1991 Notices and mill site location notices covered different

---

[19] The 2003 Mineral Report determined that all of the mill sites in patent application CACA28827 associated with the Iwo Jima mining claim, and the majority of the mill sites in patent application CACA28826 associated with the Cinder No. 2 and Cinder No. 3 mining claims, failed to meet the requirements for patenting. *See* AR01183-87.

[20] In the prior report, BLM had noted "errors on the topographic maps that may or may not affect the location of the mining claims with respect to the cinder cones," AR00454, but was not able to arrange for a dependent resurvey. AR00454. Instead BLM used the closest known public land survey monuments, along with information from a mineral survey approved by BLM in 1979, a "triangulation survey" prepared by BLM in 1996, global positioning system data taken in 1998, and the 1857 public land survey to "register" the position of the landforms and improvements with their respective mining claims or sites. AR00405, AR00454;

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                        12
**RJN - Exhibit 1**
**Page 24**

parts of the deposits and different facilities than what was described in the 2003 Mineral Report.[21] AR02526-27. By correctly positioning the 10 acres of the Cinder No. 2 placer mining claim common to the 1948 Notice and the 1991 Notice, BLM determined that the requirements for patenting were met as to those lands, as well as six mill sites dependent on the Cinder No. 2. AR02479, AR02481-82. BLM documented its findings and recommendations in an addendum to the 2003 Mineral Report (the 2020 Addendum Mineral Report). AR02467.

On July 16, 2020, following BLM Headquarters and legal review of the patent applications and the 2020 Addendum Mineral Report, the Interior Department issued four decisions with respect to patent applications CACA28826 and 28827. First, the Principal Deputy Assistant Secretary for Land and Minerals Management issued a decision canceling the FHFC and rejecting the patent applications as to the six mill sites. AR03690. Although the six mill sites were found to meet the requirements for patenting in the 2020 Addendum Mineral Report, the Principal Deputy Assistant Secretary's decision explained that section 508 of the CDPA required all patents issued after the statute's enactment to convey only minerals, and that the nonmineral character of mill sites thus prevented them from being patented altogether. *See* AR03691 (citing *Patenting of Mining Claims and Mill Sites in Wilderness Areas*, M-36994 (May 22, 1998)).[22]

---

[21] For example, before the boundary lines were corrected by the dependent resurvey, the 10-acre parcel that was included in the patent would have been situated on the east flank of the cinder cone, coextensive with the post-resurvey position of the east half of the Cinder 2 M 17 and Cinder 2 M 18 mill sites, as well as the Cinder 2 M 28 mill site that were found to be nonmineral in character. *Compare* AR02528 (comparison of 10-acre parcel in 2003 Mineral Report and the 2019 Surveyed location), *with* AR02498 (map of mill sites).

[22] The decision, however, did not declare the mill sites void. It instead stated that the Trust "may continue to hold these mill sites as unpatented mill sites, subject to compliance with applicable maintenance requirements and all other requirements of

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    13
**RJN - Exhibit 1**
**Page 25**

Second, the Deputy Assistant Secretary issued a decision cancelling the FHFC and rejecting the patent application as to the lands described in the Iwo Jima 1979 Notice and the Cinder No. 2 and Cinder No. 3 1991 Notices, except for the 10 acres common to the 1948 Notice and 1991 Notice for Cinder No. 2. *See* AR03599. The Principal Deputy Assistant Secretary's decision was based on the analysis in the 2020 Addendum Mineral Report finding that the 1991 Notices "took in considerable amounts of new acreage not included in the 1948 location notices" and thus constituted an attempted relocation in 1991 for common variety minerals which, because of the enactment of the Surface Resources Act, were no longer subject to entry under the Mining Law. AR03600. The Principal Deputy Assistant Secretary thus additionally declared all of the mining claim acreage not included within the 1948 Notices void *ab initio*. AR03600.

The third action by the Interior Department was the issuance of the patent to the 10-acre aliquot part of the Cinder No. 2, which was signed by the Principal Deputy Assistant Secretary at the time he issued the other two decisions. Finally, the California State Office issued an administrative contest complaint declaring the remaining mill sites void.

## III.  "Cima Cinder Mine"

The "Cima Cinder Mine" consists of the three association placer claims at issue in this case, as well as the Cinder No. 4, Cinder No. 5, Cinder No. 6, Cinder Annex No. 1, Cinder Annex No. 2, and Cinder Annex No. 3 mining claims, the Cima Cinder Millsite, and certain lands in section 16 operated under a lease from the State of California. AR00842; *see also* AR00010, AR01220. Shortly after Mr. Ray became the sole owner of the three association placer mining claims, he began leasing the properties that comprised the Cima Cinder Mine. *See* AR00010 (patent application CACA28826 describing leases in 1953, 1954, 1955, 1956, 1965, 1971,

the Mining Law." AR03691 (informing the Trust of the September 1, 2020 annual maintenance fee deadline).

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                        14
**RJN - Exhibit 1**
**Page 26**

1978, and 1984). Many of the leases in the record describe the mining claims subject to the leases by legal subdivision; with respect to the Iwo Jima, Cinder No. 2, and Cinder No. 3 mining claims, where the leases include the legal subdivisions, the legal subdivisions match those claimed in the 1948 Notices. *See, e.g.*, AR00868 (1984), AR00887 (1978), AR00892 (1955), AR00895 (1955).

## IV.   Other mining claims on the subject lands.[23]

Between April 13 and May 2, 1981, Mr. and Mrs. Ray and six others, including presumed members of the Ray family, located several 160-acre association placer claims, known as the "Oro Fina" placer mining claims, in sections 17, 19, 20, 29, and 30 of T.14.N., R.12.E., SBM. AR02489. Each of these sections was entirely encumbered by the Oro Fina mining claims. AR02527 (map).[24] All of the Oro Fina mining claims remained active in BLM's records until 1992, and some as late as 2007. AR02489. The sections entirely encumbered by the Oro Fina mining claims are the same sections of T.14.N., R.12.E., SBM, that were subsequently described in the 1991 Notices for the Cinder No. 2, Cinder No. 3, and Iwo Jima association placer mining claims. AR02489.

## STANDARD OF REVIEW

Agency decisions are reviewed under the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06. *See Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008). Under the APA, agency decisions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In accordance with that standard, an agency's decision will be overturned,

---

[23] The mineral reports prepared in conjunction with the patent applications only mention the Oro Fina group, but BLM records show at least two other groups of mining claimants whose claims covered the same lands involved in these patent applications.

[24] Although not addressed in the 2020 Addendum Mineral Report, Section 15 was also entirely encumbered by association placer claims in the "Oro Fina" group.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    15

**RJN - Exhibit 1**
**Page 27**

only if the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*McFarland v. Kempthorne*, 545 F.3d 1106, 1110 (9th Cir. 2008) (citations and quotations omitted). The standard of review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007) (citation omitted). The APA "does not allow the court to overturn an agency decision because it disagrees with the decision." *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010) (per curiam) (citation omitted).

## **ARGUMENT**

**I.    INTERIOR'S FINDING THAT PLAINTIFF RELOCATED, RATHER THAN AMENDED, THEIR MINING CLAIMS WAS BASED ON A CORRECT INTERPRETATION OF THE LAW**

**A.    Interior was not required to look beyond the location notices in determining that the 1979 and 1991 Notices were relocations and not amendments**.

Interior's determination that the 1979 and 1991 Notices constituted relocations and not amendments of the original 1948 Notices was legally correct. Plaintiff asserts several bases upon which this Court should find that the substantial differences in land description contained in the 1979 and 1991 Notices should be treated as merely correcting defects or errors in the 1948 Notices, rather than as new descriptions adverse to the original locations. *See* Pl.'s Mem. In Support of Mot. of Summ. J. ("Pl. Br."), at 15-18, ECF No. 49-1. The tenuous lynchpin of Plaintiff's

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                      16
**RJN - Exhibit 1**
**Page 28**

argument is its contention "that the claims have always actually been located exactly where the amended legal descriptions describe." *Id.* at 16. Plaintiff's argument fails, however, because as a matter of law, the "actual" geographic location of the mining claims in 1948 was where the 1948 Notices described them.

The object of location notices is to "make known the purpose of the discoverer to claim title to the [claim] to the extent described and to warn others of the prior appropriation" of the lands to which the posted notice applied. *See Yosemite Gold Mining & Milling Co. v. Emerson*, 208 U.S. 25, 31 (1908) (citing 1 *Lindley on Mines* § 350, at 633 (2d ed. 1903)). Accordingly, California law has long recognized the legal effect of properly recorded location notices for placer mining claims as to the lands claimed in the notice. *See* 1897 Cal. Stat. 216 (ch. 159 § 5 stating that a "placer notice or certificate of location, when filed for record [with the county], shall be deemed and considered prima facie evidence of the facts therein recited"); Cal. Pub. Res. Code § 2323 (1947) (stating that the official records of location notices for mining claims maintained by the county recorder's office are receivable as evidence "under the same circumstances and rules as are provided by law for using copies of instruments related to real estate, duly executed or acknowledged or proved and recorded"). Plaintiff's contention that "*multiple* sources of evidence should be considered when attempting to determine a mining claim's actual location," Pl. Br. at 15-16, thus fails as a general principle here.

This Court should similarly reject Plaintiff's invitation to treat the 1948 Notices as presumptively erroneous with respect to the lands claimed. Pl. Br. at 17 (stating that "it was almost expected that certificates of location would contain errors that would need to be corrected"). The lode mining claims described in the case cited by Plaintiff—which are often irregular in shape (because they follow a vein of ore) and are described by metes and bounds—often do require corrections to their location notices. *See* Pl. Br. at 17 (citing *McEvoy v. Hyman*, 25 F. 596, 600 (C. C.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ 17

**RJN - Exhibit 1**
**Page 29**

D. Colo. 1885)).[25]   But those considerations do not extend to the placer claims at issue here. The land descriptions in the 1948 Notices were consistent with the applicable California law providing that miners could secure rights to placer claims on surveyed lands solely by referencing the legal subdivisions of the United States survey in the location notice. Cal. Pub. Res. Code § 2303(b) ("[N]o other reference than those of such survey shall be required."[26]); *Pidgeon v. Lamb*, 24 P.2d at 207-08 24 P.2d 206, 207-08 (Cal. App. 1933) (citing what is now 30 U.S.C. § 35, which

---

[25] *See also, e.g, Tipton Gold Mining Co.*, 1900 I.D. LEXIS 124, *6 (1900) (noting, with respect to a lode claim dispute, that "[s]light discrepancies between the location notice and the location as marked on the ground are not material, as they may be explained by the lack of proper facilities for making an accurate survey at the time of location"); *Skaw v. United States*, 13 Cl. Ct. 7, 39 (1987) (relying on subsequent land description by legal subdivision of the public land survey to adjudicate discrepancies in prior placer claim location notices describing unsurveyed lands by metes and bounds).

[26] Plaintiff's assertion, Pl. Br. at 16-17, that the ambiguous reference to "Valley Wells" in the 1948 Notices along with the U.S. Geological Survey topographical map it asks the Court to take judicial notice of, *see* ECF No. 49-2, negates the binding effect of the legal subdivisions unambiguously described in the 1948 Notices is thus unavailing. This is in part because California law has never required location notices for placer claims described by legal subdivision to contain a description of the claim by reference to some other object or permanent monument. *See* Cal. Pub. Res. Code § 3902; *see also, e.g.*, Act of Mar. 27, 1897, ch. 159 § 5, 1897 Cal. Stat. 214, 215; Act of Mar. 15, 1909, ch. 32 § 1426c 1909 Cal. Stat. 313, 314; Act of Sept. 19, 1979, ch. 93 § 2303, 1939 Cal. Stat. 1080. The probative value of the Valley Wells references is further reduced given that the proffered map, which was not in existence at the time of location, contains two places called "Valley Wells," neither of which—contrary to Plaintiff's contention—result in positioning the mining claims within the sections identified in the 1991 Notices. The record also weighs against relying on the "Valley Wells" notation, given that if the locators were merely confused about the number and quadrant for the survey section and Valley Wells was the controlling landmark, the stated distance from Valley Wells should have remained the same in the 1948 and 1979 Iwo Jima Notices. *Compare* AR00148 *with* AR00150 (description in the 1979 Iwo Jima Notice is 3 miles further south and 1.5 miles further west of "Valley Wells, Calif." than the 1948 Notice).

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    18

provides that no further survey is required before patenting). Indeed, describing the lands by legal subdivision meant that Plaintiff would have had no cause, and indeed no power, to refine the boundaries based on its own subsequent survey, as in *McEvoy*, or otherwise find that the "actual" location of the claims had changed. *See Kern Oil Co. v. Crawford*, 76 P. 1111, 1113 (Cal. 1903); *see also id.* at 1114 ("The public surveys are as permanent and fixed as anything can be in that line, and any fractional part of a section can be readily found and its boundaries ascertained by that method for all time to come, and is necessarily more stable and enduring than marking it by perishable or destructible stakes or monuments.").

Importantly, describing the claimed lands by legal subdivision in the 1948 Notices gave Plaintiff rights to the identified lands even without marking the claim corners on the ground or otherwise posting the notice on the ground. *See Pidgeon*, 24 P.2d at 207-08 (stating that for placer claims described by legal subdivision, "it is unnecessary to post the notice of location at the point of discovery or to mark the exterior boundaries when a placer claim is located where the United States survey has been extended over the land embraced in the location" because "the United States government, by its public survey, has already provided the markings by which the boundaries can be traced and no other monuments or markings can be used with which to trace the boundaries.").[27] It is thus of no consequence whether the BLM mineral examiners ever examined the lands described in the 1948 Notices to determine whether such markings could be found there, *see* Pl. Br. at 21 n.9—none

---

[27] Plaintiff's contention, that the need for BLM to do a dependent resurvey in its field work demonstrates how difficult it is to locate section lines even with modern equipment, is unavailing. While BLM could not find the Section 20 corner cadastral markers in 2019, that says nothing about Plaintiff's ability to locate them in 1948 when it was far more likely for the markers to be intact.

were necessary to secure the locators' rights to the lands described as a matter of law.[28]

Further, the administrative record contradicts—or, at minimum, does not fully support—Plaintiff's assertion of record evidence that the "actual" lands claimed in 1948 were the lands described in the 1991 Notices. Pl. Br. at 18-22 (citing to maps[29], photos, and production records). For example, while the 2003 Mineral Report did

[28] Further, Plaintiff's implication that BLM found discovery monuments known to have been erected in 1948 is not supported by the record. Pl. Br. at 21 ("Every placer claim discovery monument found was located in an area corresponding to the amended legal descriptions."). While the record acknowledges that discovery monuments for Cinder No. 2 and Cinder No. 3, and a "presumed" discovery monument for the Iwo Jima claim were found, it does not state that the location notices found for the Cinder No. 2 and Cinder No. 3 claims was the 1948 Notice, and no notice at all was found as to the Iwo Jima claim. *See* AR03442.

[29] Plaintiff asks this Court to take judicial notice of a USGS topographical map and consider it as an extra-record document. *See* Pl's Br. at 17 n.8. While Defendant does not refute the authenticity of the map, it nonetheless opposes this request because Interior did not consider the map in making its decision and therefore it should not be considered. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) ("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." (internal citation omitted)); *see also Nw. Envtl. Advocs. v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125, 1144 (9th Cir. 2006) (Courts may not "consider[] extra-record evidence to determine the correctness . . . [or] wisdom of the agency's decision."). Plaintiff's reference to one of the exceptions to the record review doctrine—where admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision—is not applicable here. First, the map does not purport to accurately display the cadastral survey lines. *See* ECF No. 49-2 ("Dashed land lines indicate approximate locations"). Second, as explained in n. 26 *supra*, the map only compounds the ambiguity of the reference to "Valley Wells, Calif." in the 1948 Notices." Therefore, the map is not helpful to the Court in determining whether Interior considered all relevant factors. Moreover, besides referencing the exception to the record review doctrine, Plaintiff has made no attempt to carry its "heavy burden to show that the additional materials sought are necessary to adequately review the [agency's] decision." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ        20
RJN - Exhibit 1
Page 32

confirm production *from the Cima Cinder Mine* during the relevant timeframe, *see* Pl. Br. at 21 (citing AR02666-68 (2003 Mineral Report, T.3)), it contains no information stating that cinders were produced *from the lands described in the 1991 Notices*.[30] *See* AR01226-30. Indeed, the referenced production information in the 2003 Mineral Report and the leases described therein confirm that Plaintiff believed it controlled the lands described in the 1948 Notices. *Compare, e.g.*, AR01227 (attributing production to "lessee R. Castle"), *with* AR01629 (1955 lease between Emerson A. Ray and Richard Castle stating that Mr. Ray is the owner of the five mining claims to be leased, "legally described" in the same location as the 1948 Notices); AR01228 (attributing production to Cima Cinder Products), *with* AR01606, AR01622 (1979 lease between Emerson Ray and Cima Cinder Products describing the Iwo Jima, Cinder No. 2, and Cinder No. 3 mining claims using the descriptions in the 1948 Notices).

Even assuming that the 1948 Notices did not have the legal effect of claiming the lands described, the changes Plaintiff purported to make with the 1979 and 1991 Notices exceeded what is allowed under relevant authorities providing for the amendment of a location notice, while still retaining the original location date. California law has long provided that a miner who "apprehends that his or her original location notice was defective, erroneous, or that the requirements of the law had not been complied with before filing" may "file an amended notice" and still "secur[e] the benefit" of the original location. Cal. Pub. Res. Code § 3908; *see also* 1909 Cal. Stat. 315 (same). BLM's regulations in effect at the time Plaintiff filed the 1991 Notices similarly provided that correction of defects, omissions, and other

---

[30] The 2003 Mineral Report does acknowledge production during 1953-1962 from the Cinder No. 2 claim, but without any reference to where that claim was situated. Additionally, Table 3 does not contain information showing that cinders were produced and marketed from the Iwo Jima and Cinder No. 3.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    21
**RJN - Exhibit 1**
**Page 33**

errors would be allowed as an "amended" location without causing a change from the original location notice date:

> Amended location means a location that is in furtherance of an earlier valid location and that may or may not take in different or additional unappropriated ground. An amendment may:
>
> (1) Correct or clarify defects or omissions in the original notice or certificate of location; or
>
> (2) Change the legal description, mining claim name, position of discovery or boundary monuments, or similar items. An amended location notice relates back to the original location notice date.
>
> ... No amendment is possible if the original location is void.

43 C.F.R. § 3833.0-5(p) (1990); *see id.* § 3833.0-5(q) (1990) (defining relocation as "the establishment of a new mining claim, mill site, or tunnel site."). Examples of allowable defects or errors in addition to those listed in BLM's regulations include a reduction in acreage, so long as the original discovery point is preserved, *see Waskey v. Hammer*, 223 U.S. 85, 90-91 (1912), and correction of clerical errors. *Karen N. Owen*, 176 IBLA 168, 171 (2008) (finding that it was obvious from the record that the claimant put down the wrong year for the date of location). Such limited changes to an original location notice are proper under an "amended" notice and relate back to the date by which the mining claimant's rights to the lands and mineral accrued. *See also* 43 C.F.R. § 3833.22(c) (current BLM regulations governing amendments).

Substantive changes to the location notice, however, have been construed as adverse to the original notice and result in the staking of a new mining claim with a new location date. *See Patsy Brings*, 119 IBLA 319, 325 (1991). In *Patsy Brings*, The Interior Board of Land Appeals (IBLA) found that a miner's purported amendments to a location notice for a placer mining claim was in fact a relocation

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                                    22
**RJN - Exhibit 1**
**Page 34**

where the subsequent location notice "describe[d] new land not included in the original location." *Id.* at 325. The IBLA held that to the extent the purported amendment described ground not identified in the original location notice, the subsequent location notice "preserves only that part of the original described land that is common to the original location and the amendment." *Id.*; *see also Harvey v. Havener*, 135 Mont. 437, 448 (1959) (claimant can rely on rights acquired by original location only "[a]s to the portion of ground included both in the original location and the location as amended or relocated"); *Bismark Mountain Gold Mining Co. v. N. Sunbeam Gold Co.*, 95 P. 14, 18 (Idaho 1908) (same).

With respect to location by legal subdivision, only correction of *obvious* errors in the legal subdivision referenced are allowed without resulting in a relocation. *See, e.g.*, *Hagerman v. Thompson*, 235 P.2d 750, 756-58 (Wyo. 1951) (allowing for amendment of location notice that described claim in relation to public land survey system and used the descriptor "SE4 NE4" instead of "SE 1/4 of the NE 1/4"); *N.C. Rice, Jr.*, 153 IBLA 185, 186 (2000) (allowing an amended notice of location because "the Township 40 S. and Range 2 1/2 W. . . . does not exist in the Salt Lake Meridian."); *see also* AR00737, AR00739, AR00741, AR00743 (original and "amended" mill site location notices filed by the Trust and correcting obvious errors in land descriptions). The 1979 and 1991 Notices did not cure similar "obvious defects" in the 1948 Notices; rather, the 1979 and 1991 Notices contain substantially different legal subdivisions from those in the 1948 Notices. *See* AR02510. Even if the original location descriptions were made in error due to Plaintiff's inability to determine the claims' relationship to the cadastral survey lines, that does not explain why the shape of the Cinder No. 2 changed from a square to an elongated octagon. AR02511. Nor does it explain how the northwest corner of the Cinder No. 3 claim, while still abutting Cinder No. 2, is no longer aligned with the midline of Cinder No. 2. Finally, it fails to explain how the Iwo Jima claim, whose location date is just one day prior to that of the other two claims, moved approximately 1.5 miles closer to

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                           23

**RJN - Exhibit 1**
**Page 35**

Cinder No. 2. The significant changes in location, shape, and the relative locations of each claim cannot be explained by Plaintiff's professed inability to properly position its mining claims in relation to the public land survey. *See R. Gail Tibbetts et al. v. BLM*, 62 IBLA 124, 131-132 (1982) (finding that appellant's claim that change in lands described in original and amended location notices was due to inability to determine the precise position of the claims in relation to the cadastral survey did not explain why the physical location changed to such a degree or why the relationship of the various claims changed).

In sum, there is a stark difference between the amendments to location notices allowed under State and Federal Law and the far more substantive changes Plaintiff made here. And that difference is especially important here, because "if land withdrawn subsequent to an original location could be included in an amended location, the purposes of Departmental withdrawals would be frustrated and withdrawals would be without effect." *U.S. v. Johnson.*, 100 IBLA 322, 337 (1987). Here, the withdrawal of cinders from disposition under the Mining Law by Congress constitutes an "intervening right" that would be frustrated if the 1979 and 1991 Notices related back to the date of the 1948 Notices. *See Patsy A. Brings*, 119 IBLA at 324.

Plaintiff has failed to demonstrate any basis for finding that Interior erred in determining that the 1979 and 1991 Notices constituted relocations of claims for common variety minerals withdrawn by the Surface Resources Act in 1955. Consequently, the Court should affirm Interior's decision finding the Iwo Jima, Cinder No. 3, and portions of the Cinder No. 2 mining claims void *ab initio* as a matter of law.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    24
**RJN - Exhibit 1**
**Page 36**

**B.    To the extent the Court finds that further factual development is needed to determine whether the 1979 and 1991 Notices were relocations, the appropriate remedy is to remand the decisions to the agency for reconsideration.**

In its Proposed Judgment, Plaintiff requests the Court remand the case to Interior "with the order that Plaintiff's FHFC be reinstated and patent applications approved in full." ECF No. 49-3. This is not the appropriate remedy. If this Court were to find that Interior failed to consider certain evidence or that there are otherwise material factual questions that prevented Interior from finding, as a matter of law, that the 1979 and 1991 Notices constituted relocations, those questions would need to be resolved at the agency level before any new decision on the patent applications could issue. Resolution of those questions would likely require initiating an administrative contest proceeding in which BLM and Plaintiff would present evidence in a hearing on the record, and an Administrative Law Judge would issue a decision on the relocation vs. amendment issue. *See R. Gail Tibbetts*, 62 IBLA, at 125 (noting referral for a hearing on the amendment vs. relocation issue). For these reasons, an order reinstating the FHFC would not be an appropriate remedy in this case.

There are also no circumstances under which this Court could order the issuance of a patent, because Interior has not yet determined whether the remaining lands in the 1991 Notices satisfy the requirements for patenting[31]; as such the patent applications have not reached the point where the duty to issue a patent is purely ministerial. *See R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1067 (9th Cir. 1997) ("[T]he Secretary has no authority to issue a patent until he is satisfied that the

---

[31] For example, while Interior had previously recommended 60 acres of the Cinder No. 2 mining claim and 27.5 acres of associated mill sites for patenting, *see* AR020503-04 (2003 Mineral Report), that recommendation was prior to the dependent resurvey and would need to be revisited along with the determinations of validity for the remaining mining claim and mill site acreage in the patent applications.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                                      25
**RJN - Exhibit 1**
**Page 37**

applicant has fully complied with the requirements [of the Mining Law].”). Plaintiff fails to cite to anything in the record supporting its assertion that, “but for” the determination that the 1979 and 1991 Notices constituted relocations, Interior would have issued the patents “in their entirety.” *See* Pl. Br. at 11.[32] Therefore, to the extent the Court finds for Plaintiff on any of its claims, the Court must remand the decisions to the agency for reconsideration.

## II.    INTERIOR'S DENIAL OF THE MILL SITE PATENTS WAS BASED ON A CORRECT INTERPRETATION OF THE CALIFORNIA DESERT PROTECTION ACT

Interior appropriately denied patent applications for six mill sites because section 508 of the CDPA authorizes Interior to issue patents only for mineral deposits, thus precluding any issuance of patents for mill sites, which are, by definition, nonmineral.  Plaintiff's arguments to the contrary, Pl. Br. at 27-31, cannot be reconciled with the CDPA's plain text, purpose, and legislative history.

### A.    Congress intended the section 508 patenting restriction to apply to “any patents issued after the date of enactment.”

The question of whether Interior properly interpreted the CDPA as limiting all patents thereafter issued in the Preserve to conveying only the mineral deposits and, as a consequence, barring issuance of a patent to mill sites in the Preserve[33]—

---

[32] This Court could also decline to order Interior to issue the patents on the basis that Plaintiff has not heretofore sought that relief. *See* Pl. Br. at 31 (asking for the court to set aside the challenged decision); Complaint, at 21-22 (prayer for relief).

[33] Interior's position that the phrase “only to the minerals” in section 508 barred issuance of patent to mill sites relied on a Solicitor's Opinion to which this Circuit has afforded deference. AR03691 (citing *Patenting of Mining Claims and Mill Sites in Wilderness Areas*, M-36994 (May 22, 1998); *see McMaster v. United States*, 731 F.3d 881, 892 (9th Cir. 2013) (“We conclude that the Solicitor's Opinion [M-36994] is entitled to respect under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)].”). Plaintiff did not directly challenge this interpretation.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                        26
**RJN - Exhibit 1**
**Page 38**

is a question of statutory interpretation. And the statutory language, structure, purpose, and legislative history of the CDPA demonstrate that Congress intended for patents to issue only with respect to minerals deposits within the Preserve after 1994—to the exclusion of non-mineral mill sites—notwithstanding the accommodation for valid existing rights elsewhere in section 508 of the CDPA.

### 1. Section 508's patenting restriction was intended to apply to "any" patent issued after enactment as part of the CDPA's "regulation of mining" in the Preserve.

Section 508 of the CDPA formed the basis of Interior's decision to reject the patent application as to the six mill sites. AR03691. As enacted by Congress, that section read:

> Sec. 508. REGULATION OF MINING. Subject to valid existing rights, all mining claims located within the preserve shall be subject to all applicable laws and regulations applicable to mining within units of the National Park System, including the Mining in the Parks Act (16 U.S.C. § 1901 et seq.), and any patent issued after the date of enactment of this title shall convey title only to the minerals together with the right to use the surface of lands for mining purposes, subject to such laws and regulations.

California Desert Protection Act of 1994, Pub. L. No. 103-433 § 508, 108 Stat. 4491 (codified as amended at 16 U.S.C. § 410aaa-48).[34]

The first clause of section 508 generally provides that all mining operations conducted within the Preserve on "mining claims" must comply with applicable laws

---

[34] Consistent with Congress's 2014 enactment of the National Park Service portions of Title 16 of the United States Code as positive law, section 508's reference to the Mining in the Parks Act was replaced by the phrase "section 1865(b) of title 18 and subchapter III of chapter 1007 of title 54." *See* 16 U.S.C. § 410aaa-48; *see also* Act of Dec. 19, 2014, Pub. L. No. 113-287 § 6(e), 128 Stat. 3094, 3272.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                                            27

**RJN - Exhibit 1**
**Page 39**

and regulations, including the Mining in the Parks Act and regulations promulgated thereunder. 16 U.S.C. § 410aaa-48. The inclusion of the "subject to valid existing rights" language recognizes a separate category of lands in the Preserve that would *not* be required to comply with the Part 9A regulations after enactment: private inholdings within the BLM-managed public lands being added to the Preserve under section 503 and 504. *See* 16 U.S.C. §§ 410aaa-43, 410aaa-44. Prior to enactment of the CDPA, owners of these private inholdings within BLM-managed public lands had the right to conduct mining operations without complying with federal mining regulations. *See* 16 U.S.C.S. § 410aaa-59. *See generally* S. Rep. 103-165, at 57-61 (additional comments of Sens. Wallop, Murkowski, Nickles, Craig, and Bennett discussing inholdings in the lands to be included within the Preserve). The first clause of section 508 necessarily recognizes that those non-regulated, pre-CDPA, private inholdings had "valid existing rights" to continue to conduct mining operations free of federal regulation after the inclusion of the surrounding lands in the Preserve, just as they had before the CDPA.

The second clause of section 508 identifies an additional, prospective category of lands within the Preserve: lands that would be patented under the Mining Law after the date of enactment of the CDPA. Section 508's "only to the minerals" patenting restriction ensured that the United States would always retain some ownership interest in this category of lands. *See* 16 U.S.C. § 410aaa-48. That retention of federal ownership in "any" lands thereafter patented under the Mining Law in the Preserve ensured that any mining operations on those lands would have to comply with National Park Service regulations. 36 C.F.R. § 9.1 (1994); *see also McMaster*, 731 F.3d at 898 (noting that "by virtue of the fact that [the patent applicant] received only a mineral patent, he is required to obtain a special use permit [from the federal land manager] prior to using the surface of the land").

The plain language of section 508 thus shows that Congress intended for the "subject to valid existing rights" language to apply only to the first clause, and not

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                28

to the patenting restriction in the second clause.

### 2. Construing the CDPA's patenting restriction as applying to any patent thereafter issued is consistent with the statute's purpose.

It is "a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quotations and citation omitted). Thus, "[i]f necessary to discern Congress's intent," this court "may read statutory terms in light of the purpose of the statute." *Wilderness Soc'y v. U.S. Fish and Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) , *amended on reh'g,* 360 F.3d 1374 (9th Cir. 2004); *see also United States v. Lewis*, 67 F.3d 225, 228-29 (9th Cir. 1995) ("Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme.").

Congress's stated intent for the CDPA was to protect the "particular ecosystems and transitional desert type found in the Mojave Desert area lying between [Death Valley and Joshua Tree National Parks] on public lands now afforded only impermanent administrative designation as a national scenic area[.]" 16 U.S.C. § 410aaa-41(1). This express purpose supports the conclusion that Congress intended to increase protections for the Preserve by applying the patenting restriction to "any" patent issued thereafter, thus ensuring continuing Park Service regulatory jurisdiction over mining operations.

Reading section 508 in context also supports Interior's interpretation. The CDPA contained numerous withdrawals of lands from some or all of the public land laws, including the mining laws, each of which was expressly "subject to valid existing rights" and contained language substantially identical to that in section 507 of the CDPA related to the Preserve:

SEC. 507. WITHDRAWAL. *Subject to valid existing rights, all Federal lands* within the preserve *are hereby withdrawn from* all forms

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                          29
**RJN - Exhibit 1**
**Page 41**

of entry, appropriation, or disposal under the public land laws; *from location, entry, and patent under the United States mining laws;* and from disposition under all laws pertaining to mineral and geothermal leasing, and mineral materials, and all amendments thereto.

CDPA § 507, 108 Stat. 4491 (1994) (codified as amended at 16 U.S.C. § 410aaa-47) (emphasis added); *see also, e.g.*, 16 U.S.C. §§ 410aaa-4 (Death Valley National Park), 410aaa-25 (Joshua Tree National Park), 43 U.S.C. § 1781 note (Dinosaur Trackway Area of Critical Environmental Concern). As relevant here, withdrawal under section 507 cut off miners' prospective ability to locate new mining claims and submit new patent applications in the Preserve, while allowing mining claimants with vested rights to mining claims located before enactment to continue to hold those claims, and patent applicants with "valid existing rights" before enactment to continue to proceed to patent. *See also McMaster*, 731 F.3d at 886 (characterizing the Wilderness Act's "subject to valid existing rights" clause as "limit[ing] the creation of future mining interests, while preserving some pre-existing mining interests").

It is undisputed that only mining claimants who had established a right to a patent before enactment of section 507's "withdraw[al] from . . . patent under the United States mining laws" could thereafter obtain a patent. 16 U.S.C. § 410aaa-47; *see Freese v. United States*, 639 F.2d 754, 758 (Ct. C. 1981) (finding that the mining claimant had not established "valid existing rights" before the "withdraw[al] from all . . . patent under the mining laws of the United States" and thus had no right to a patent (citation omitted)). Plaintiff would similarly exempt from the next section's "only to the minerals" patenting restriction any mining claimant who had established a right to a patent before enactment of section 508. *See* Pl. Br. at 6. But the universe of patent applicants with "valid existing rights" from the section 507 withdrawal is entirely coextensive with the universe of patent applicants that Plaintiff asserts would have "valid existing rights" from the section 508 patenting restriction.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                    30
**RJN - Exhibit 1**
**Page 42**

Therefore, under Plaintiff's interpretation, the minerals-only restriction in section 508 would never apply to anyone because miners *with* valid existing rights would be exempted from the restriction, and miners *without* valid existing rights would be barred from receiving a patent at all under Section 507. Plaintiff's interpretation of the phrase "subject to valid existing rights" as applying also to the minerals-only patenting restriction would thus nullify the effect of the second phrase of section 508. Under the "standard rules of statutory construction" Plaintiff acknowledges, each part of a statute should be given effect. *Corley v. United States*, 556 U.S. 303, 304, 129 S. Ct. 1558, 1560 (2009) (explaining the "basic interpretive canon" that "[a] statute should be construed [to give effect] to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (internal citations omitted)). Therefore, the minerals-only patenting restriction in section 508 cannot be read to also be "subject to valid existing rights."

In arguing that Congress intended to exempt some patent applicants from the patenting restriction in the second clause of section 508, Plaintiff relies primarily on cases addressing the scope of "valid existing rights" after a withdrawal. *See* Pl. Br. at 28-29 (citing cases involving non-mining permits, contracts, and authorizations). These cases are inapposite, however, given that in recognizing that the six mill sites "satisfied the requirements for patenting under the Mining Law because they are being used and occupied properly under the Mining Law and are non-mineral in character," Interior has implicitly recognized that the mill sites were valid and existing as of the date of the withdrawal. AR03691; *see also id.* (stating that "[o]nce the First Half Final Certificate is cancelled, you may continue to hold these mill sites as unpatented mill sites, subject to compliance with applicable maintenance requirements and all other requirements of the Mining Law").[35]

---

[35] For this reason, Plaintiff's characterization of Interior's decision as voiding the six mill sites at issue is also mistaken. *See* Pl. Br. at 1 (stating that BLM only patented

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ

31

**RJN - Exhibit 1**
**Page 43**

Finally, the legislative history demonstrates that Congress did not intend for the "subject to valid existing rights" language to apply beyond the first clause in section 508. After describing the effect of the first clause of section 508, the Senate Report states succinctly, and in a separate sentence: "Patents issued after the date of enactment of this title will convey title only to the minerals together with the right to use the surface of the lands for mining purposes subject to such laws and regulations." S. Rep. No. 103-165, at 14. The legislative history thus supports Interior's interpretation that Congress did not intend for there to be exemptions from the patenting restriction.

### 3.	Interior's interpretation of section 508 is reasonable.

Congress did not define the term "valid existing rights" with respect to its application in the section of the CDPA addressing the Preserve,[36] and the term, without more, is generally deemed to be ambiguous. *See, e.g.*, *McMaster*, 731 F.3d at 889 (holding that "the meaning of 'valid existing rights' in [the Wilderness Act of 1964, 16 U.S.C.] § 1133(d)(3) is ambiguous under *Chevron* step one"); *Nat'l Mining Ass'n v. Kempthorne*, 512 F.3d 702, 707-08 (D.C. Cir. 2008). In the event this court finds the application of the term "valid existing rights" in section 508 to be ambiguous, however, it should defer to the Interior's construction of that phrase as applying only to the first clause of section 508.

Congress has delegated plenary authority to the Secretary of the Interior to

---

10 acres of land, and declared the remaining claims "void *ab initio*"), 28 (alleging the "denial of six mill sites").

[36] While the CDPA uses the term "subject to valid existing rights" multiple times in Title I through V, Congress only defined "valid existing rights" in Title X, in the provision addressing the applicability of the mineral disposal laws to the historic Bodie Bowl gold mining district. *See* California Desert Protection Act § 1004, 108 Stat. at 4510 ("Valid Existing Rights. –As used in this section, the term 'valid existing rights' in reference to the general mining laws means that ...").

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ	32
**RJN - Exhibit 1**
**Page 44**

determine issues pertaining to the Mining Law and mineral patent applications. *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 335 ("The Department has been granted plenary authority over the administration of public lands, including mineral lands; and it has been given broad authority to issue regulations concerning them."); *see also West v. Standard Oil Co.*, 278 U.S. 200, 219 (1929) (with respect to patenting determinations, the Secretary acts as a special tribunal with judicial functions); *Cameron*, 252 U.S. at 459-60 ("the execution of the laws regulating the acquisition of rights in the public lands and the general care of these lands is confided to the land department, as a special tribunal").

Interior's construction of the CDPA constitutes a permissible and reasonable exercise of that delegated authority. Moreover, Interior's interpretation is entirely consistent with the CDPA's purpose and legislative history, which evidences Congress's desire to protect the natural resources of the California desert to the fullest extent possible. *See* California Desert Protection Act of 1994 § 101, 108 Stat. at 4472 (declaring that "preservation of desert wilderness necessarily requires the highest forms of protective designation and management"); *id*. (finding that "the wilderness values of desert lands are increasingly threatened by and especially vulnerable to impairment, alteration, and destruction by activities and intrusions associated with incompatible use and development").

### B.    Plaintiff's remaining arguments fail.

Plaintiff makes two other arguments for finding infirm Interior's decision denying the Trust's patent application as to the six mill sites: first, that "DOI's own delays" caused the patent application to be subject to the section 508 patenting restriction; and second, that the court should follow Plaintiff's interpretation of section 508 because its interpretation "effectively functions as a bar to agencies effecting a taking of property, with or without just compensation." Pl. Brief at 30.

In arguing for what is essentially equitable relief based on "unreasonable delay" in processing patent application CACA28826,[37] Pl. Br. at 30-31, Plaintiff necessarily concedes that the section 508 patenting restriction applies to any patent issued after the CDPA's enactment. But even if equitable relief were available here, which it is not, the record shows no evidence of agency delay as of the date the CDPA was enacted.

While the Trust submitted patent application CACA28826 in September 1991, the Trust did not submit sufficient documentation for BLM to issue the FHFC until May 7, 1992. AR00334 (May 15, 1992 letter from Rose Fairbanks regarding issuance of FHFC on May 7, 1992); *see also* AR00303 (January 27, 1992 handwritten memorandum by J.R. (Jim) Evans documenting preliminary review of patent applications); AR00316 (April 29, 1992 handwritten notation by Barbara Gauthier-Warriner of conversation with applicant regarding required revisions to the publisher's agreement for CACA28826). After issuance of the FHFC, BLM continued to adjudicate the patent application, one result of which was the issuance of the March 30, 1994 decision declaring 4 mill sites in CACA28826 void *ab initio* because they were located on lands not open to location. AR00344.

Plaintiff's remaining argument is that this Court cannot affirm Interior's decision if doing so required reading the CDPA "to defeat a property interest." Pl. Br. at 31. Plaintiff cites no authority for this proposition. Ultimately, whether the CDPA effected a legislative taking is outside the jurisdiction of this court. *See Tucson Airport Auth. v. Gen. Dynamics Corp*, 136 F.3d 641, 646 (9th Cir. 1998) (holding that the Tucker Act, 28 U.S.C. § 1346(a)(2), vests exclusive jurisdiction over takings cases in the Court of Federal Claims). The only question for purposes of this APA lawsuit is whether Interior's determination that it was bound by section

---

[37] As this court is aware, plaintiff's previous mandamus lawsuit was resolved through settlement without any finding by this court of unreasonable delay or any admission by the Secretary of delay.

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                                      34

**RJN - Exhibit 1**
**Page 46**

508 to deny Plaintiff's patent application as to the six mill sites was reasonable and in accordance with applicable law. As demonstrated above, the answer to that question is yes.

## CONCLUSION

For the foregoing reasons, Federal Defendant respectfully requests the Court grant Federal Defendant's Cross-Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

DATED: February 3, 2023

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Shannon Boylan*
SHANNON BOYLAN (DC Bar No. 1724269)
United States Department of Justice
150 M Street NE
Washington, D.C. 20002
Tel: (202) 598-9584
Fax: (202) 305-0506
shannon.boylan@usdoj.gov

*Attorneys for Federal Defendant*

FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Rayco, LLC v. Haaland*, 2:21-cv-00512-SVW-GJ                    35
**RJN - Exhibit 1**
**Page 47**