ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

DANIEL LUECKE
daniel.luecke@usdoj.gov
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 598-7863

KATHARINE LAUBACH
katharine.laubach@usdoj.gov
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th St. – North Terrace, Ste. 600
Denver, CO 80202
Tel: (202) 353-5765

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, et al.,<br><br>Defendants. | Case No. 2:26-cv-04002-CAS-AS<br><br>**FEDERAL DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Federal Defendants respectfully submit this supplemental brief to address section 508 of the California Desert Protection Act (CDPA) and the Court's tentative ruling that the "valid existing rights" protected by that section include only "property and possessory rights" conferred under the federal mining laws. *See* Civil Minutes for July 27, 2026 (Court's Tentative) 23-29.

The National Park Service (NPS) properly construed the term "valid existing rights" in section 508 to include an approved mining plan of operations. The restrictive definition of "valid existing rights' in the Court's Tentative incorrectly imports a definition from another statutory section (that by its terms is confined only to that section) and contravenes several canons of construction. Because that error is at the heart of the Court's determination that Plaintiff is likely to succeed on the merits, the Court should revisit that determination and deny Plaintiff's motion.

## I.  NPS Correctly Construed Section 508 to Include the Approved Plan of Operations for the Colosseum Mine.

Section 508 of the CDPA provides that, "[s]ubject to valid existing rights," all mining claims on land within the Mojave National Preserve are subject to regulation under the Mining in the Parks Act (MPA). Pub. L. No. 103-433 (PL 103-433), § 508, 108 Stat. 4471, 4491 (Oct. 11, 1994). In 2025, NPS determined that the approved plan of operations for the Colosseum Mine is a "valid existing right" for purposes of this provision and did not require further approval for operations covered by the approved plan. *See* Opp. Ex. 15.

NPS's interpretation of section 508 was consistent with the text, structure, and purpose of the CDPA; the agency's reading is reinforced by the statute's legislative history and published court decisions. *See generally* ECF No. 24 (Opp.) 11-16 (incorporated herein by reference). Exceptions for "valid existing rights" (sometimes called savings clauses) are found throughout the public land laws. Courts construing these provisions interpret the term in the context of the statutory default rule for which the exception is being provided. *See, e.g., McMaster v. United*

1

*States*, 731 F.3d 881, 890 (9th Cir. 2012) (holding that the Wilderness Act "clearly excepts 'valid existing rights' from the rule that patents should be issued to only the mineral estate"); *Meridian Land & Min. Co. v. Hodel*, 843 F.2d 340, 343 (9th Cir. 1988) (describing "valid existing rights" as an "exception to the ban on surface mining" imposed by the immediately following subsection).  Stated differently, the nature of the default rule imposed by a statute defines the scope of the "valid existing rights" that are being exempted from it.  The default rule established in section 508 is regulation under the MPA, which consists primarily of requirements for the submission and approval of new operations plans.  *See* 36 C.F.R. §§ 9.8–9.10.  Therefore, the "valid existing rights" excepted from the rule include any "existing" right to mine under an approved plan of operations.

Interpreting "valid existing rights" to include a previously approved plan of operations is also consistent with the regulatory backdrop against which the CDPA was enacted.  Mining regulations in effect at the time of the CDPA's enactment (and still in effect today) afford certainty to miners with an approved plan of operations.  These regulations give miners a right to engage in operations under the plan until is revoked or suspended; they limit agency revocation authority over such plans; and they provide miners with due process rights if their operations plan is revoked.  *See* 43 C.F.R. § 3809.423; *id.* § 3809.602; *id.* §§ 3809.800–3809.809.  *See also United States v. Hall*, 751 F. Supp. 1380, 1382 (E.D. Cal. 1990) ("the operating plan is at the heart of the creation of an authorized claim" and cannot be revoked without due process).

The legislative history of the CDPA shows that Congress intended to protect these reliance interests.  Senator Feinstein, co-sponsor of the CDPA, made clear that, under the statute, "[a]ll active mines are protected," and "[a]ll active mines that have been approved to proceed and mine will be able to do so."  Cong. Rec., 103d Cong. (1993-1994), p. S4115 (Apr. 12, 1994).  Neither of these statements is accurate if the CDPA requires mines that have approvals to proceed to again submit new

2

approval requests. By contrast, NPS's determination that the approved plan of operations for the Colosseum Mine constitutes a "valid existing right" under section 508 implements this expressly stated legislative intent.

Plaintiff has cited no authority that supports—much less *compels*—a reading of "valid existing rights" that excludes approved plans of operation. The Court's Tentative Order implicitly confirms that defect by relying on a statutory provision that Plaintiff did not cite (section 1004 of PL 103-433). The Court's reliance on that provision is misplaced. NPS's construction of the statute is the correct one.

## II. Using Section 1004 To Define "Valid Existing Rights" in Section 508 Constitutes Plain Error.

Although the phrase "valid existing rights" is undefined in section 508 of the CDPA, the Court concluded the phrase has the same meaning that Congress gave it in a definition section of a different statute, section 1004(b) of PL 104-433. *See* Court's Tentative 23-29. This conclusion is incorrect, and construing section 508 by reference to section 1004(b) would contravene the text of both provisions.

### A. Section 1004 is Not Part of the CDPA.

Section 1004 is a provision of Title X, the Bodie Protection Act, and it imposes limitations on entry and development in the historic Bodie Bowl that are "subject to valid existing rights." PL 103-433, § 1004(a). Section 1004(b) specifically defines "valid existing rights" by reference to "the general mining laws." PL 103-433, § 1004(b). The Court concludes that Congress intended this definition to apply to the CDPA, and that it limits "valid existing rights" to include only "property or possessory rights conferred by the United States under the federal mining laws . . . , e.g., mineral rights, surface use rights, and possibly title." Court's Tentative 24.

The Court's reliance on section 1004 is based on an incorrect assumption that Title X of PL 103-433 is part of the CDPA. *See, e.g., id.* at 23 (3d para., referring to "Title X of the CDPA"); *id.* at 24 (3d para., same); *id.* at 25 (1st para., same). In

fact, the Court finds that the definition of "valid existing rights" in section 1004 is not only part of the CDPA but the "*only*" legislative definition of "valid existing rights" that Congress intended to apply to it. *See id.* at 23 ("Congress defined 'valid existing rights' only once in the CDPA, in Title X"). But Title X is *not* a part of the CDPA. The CDPA includes Titles I through IX, plus two prefatory sections. PL 103-433, § 1. The CDPA does not include Title X or, thus, section 1004. The Court's tentative holding that section 1004 represents Congress's intended definition of "valid existing rights" for the CDPA is therefore a plain error of law.

The statutory analysis in the Court's Tentative (at 23-29) all flows from this fundamental error. Although the Court discusses the takings standard and other case law, it does so only to reinforce its initial conclusion that definition in section 1004 is the correct one. *See* Court's Tentative 29 (citing "CDPA at § 1004(b)" in summary of conclusion). Because that conclusion is plainly erroneous, the statutory analysis in the Court's Tentative should be reconsidered in full.

## B. Employing the Definition of "Valid Existing Rights" in Section 1004 Would Violate Established Canons of Statutory Interpretation.

The first canon of statutory interpretation is the presumption "that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). The text of section 1004(b) expressly states that it is defining "valid existing rights" only "as used in this section"—*i.e.*, section 1004 of PL 103-433. It would be contrary to the statutory text, and thus congressional intent, to apply section 1004(b)'s definition to section 508. Further, the inclusion of a specific definition shows that Congress knew how to impose a more restrictive definition of "valid existing rights" if it intended to do so. This choice is significant in light of Ninth Circuit precedent that existed prior to the CDPA. In *Aleknagik Natives Ltd. v. United States*, 806 F.2d 924 (9th Cir. 1986), the court construed the term "valid existing rights" in the Alaska Native Claims Settlement Act, which did not contain a specific statutory definition. The court held

that the term "does not necessarily mean present possessory rights or even a future [possessory] interest," but may also include an entity's "[l]egitimate expectations" created "by the government's own prior representations" under the previous statutory scheme. *Id.* at 927. This holding supports reading section 508 to include an approved operations plan. Congress could have legislated around this holding in section 508 but chose not to do so.

Limiting "valid existing rights" in section 508 to only property or possessory rights would also violate of the canon against superfluity. *See Hibbs v. Winn*, 542 U.S. 88, 89 (2004). Applying its cramped definition of "valid existing rights," the Court construed section 508 as "recogniz[ing] that all mining claims in the preserve are subject to regulation so long as those regulations do not deprive the holders of valid existing mining claims of their property or possessory rights under the mining laws." Court's Tentative 25. But that "recognition" would be superfluous. Section 507 of the CDPA independently provides that the creation of preserve does not extinguish existing mining claims. Congress could not have intended the exception for "valid existing rights" in section 508 merely to duplicate the protection expressly provided in section 507. Moreover, it is sensible that "valid existing rights" reaches more broadly in section 508, which establishes a default regulatory regime, than in section 507, which defines the scope of the specific act of withdrawing the land for the preserve. The Court's proposed interpretation of section 508 should be rejected on this additional ground.

## CONCLUSION

NPS correctly concluded that the approved plan of operations for the Colosseum Mine is a "valid existing right" under section 508 of the CDPA. Plaintiff's Motion for a Preliminary Injunction should be denied.

DATED:  August 3, 2026         Respectfully submitted,

                               ADAM R.F. GUSTAFSON
                               Principal Deputy Assistant Attorney General

                               */s/ Daniel Luecke*
                               DANIEL LUECKE
                               daniel.luecke@usdoj.gov
                               U.S. Department of Justice
                               Environment & Natural Resources Division
                               Natural Resources Section
                               P.O. Box 7611
                               Washington, D.C. 20044
                               Tel: (202) 598-7863

                               KATE LAUBACH (CO Bar No. 42694)
                               katharine.laubach@usdoj.gov
                               U.S. Department of Justice
                               Environment & Natural Resources Division
                               Natural Resources Section
                               999 18th Street – North Terrace, Ste. 600
                               Denver, CO 80202
                               Tel: (202) 353-5765

                               *Attorneys for Federal Defendants*