JEFFER MANGELS & MITCHELL LLP
KERRY SHAPIRO (Bar No. 133912)
*kshapiro@jeffer.com*
MICHAEL H. STRUB, JR. (Bar No. 153828)
*MStrub@jeffer.com*
HA CHUNG (Bar No. 332571)
*hchung@jeffer.com*
3 Park Plaza, Suite 1100
Irvine, California 92614-2592
Telephone: (949) 623-7200
Facsimile: (949) 623-7202

HOLLAND & HART LLP
MURRAY FELDMAN (pro hac vice)
*mfeldman@hollandhart.com*
JENNIFER SCHELLER NEUMANN (pro hac vice)
*jsneumann@hollandhart.com*
AMELIA YOWELL (pro hac vice)
*AGYowell@hollandhart.com*
ANDREA J. DRIGGS (Bar No. 223224)
*AJDriggs@hollandhart.com*
800 W. Main Street, Suite 1750
Boise, Idaho 83702
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

Attorneys for Intervenor-Defendants
COLOSSEUM RARE METALS, INC.
and DATELINE RESOURCES LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, et al.<br><br>Defendants. | Case No. 2:26-cv-4002-CAS-AS<br><br>**INTERVENOR-DEFENDANTS COLOSSEUM RARE METALS, INC. AND DATELINE RESOURCES LTD.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF NATIONAL PARKS CONSERVATION ASSOCIATION'S MOTION FOR PRELIMINARY INJUNCTION** |

80774157v1

Case No. 2:26-cv-4002-CAS-AS

Intervenor-Defendants' Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction

The Tentative Order (T.O.) errs by (i) importing Title X's "valid existing rights" definition into § 508, despite Congress's express limitation of that definition to Title X; (ii) rendering § 508's protection surplusage by assuming Titles V and X share a common purpose; (iii) ignoring Ninth Circuit precedent in the *Grand Canyon Trust* cases holding that an agency-approved plan of operations permits resumed operations in withdrawn lands without new authorization; and (iv) relying on a "takings standard" rationale that ignores Congress's freedom to protect more than the Takings Clause requires and DOI's longstanding view that VER extend beyond vested possessory interests. These errors defeat the T.O.'s likelihood-of-success finding, and the Court should deny Plaintiff's requested preliminary injunction.  Lodged concurrently with this supplemental brief is a proposed modification to the Court's proposed Order if the Court grants the motion.

## I.      TITLE X'S VER DEFINITION DOES NOT GOVERN § 508

The T.O. imports the Bodie Protection Act's "valid existing rights" definition, CDPA Title X § 1004(b), into § 508—despite Congress's express limitation of that definition to "[a]s used in this section," i.e., § 1004 alone. Pub. L. No. 103-433, § 1004(b), 108 Stat. 4471, 4510 (1994). Courts must honor such section-specific definitions and give the statute "the effect its language suggests." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160–62, 168 (2018) ("When Congress includes particular language in one section of a statute but omits it in another," the court "presumes that Congress intended a difference in meaning." (citation omitted)); *Limited, Inc. v. Comm'r*, 286 F.3d 324, 336–37 (6th Cir. 2002) (rejecting argument that "bank" had same meaning in different parts of Tax Code). Title X is not even part of the CDPA: Section 711 confirms that "[a]ny reference to the term 'this Act' in titles I through IX shall be deemed to be solely a reference to sections 1 and 2, and titles I through IX." *Id*. §§ 1, 711.

The legislative history confirms that it is impossible that Congress relied on Title X's language when it wrote § 508. Section 508's "[s]ubject to valid existing rights" framework appeared in the earliest bill (H.R. 2929, introduced July 17, 1991) and remained through every subsequent draft, while Title X did not appear until the eighth of

Intervenor-Defendants' Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction

nine versions—the House's engrossed amendment to S.21 on July 27, 1994, just months before enactment.[1] A definition added at the final stage and expressly cabined to a different section cannot carry the meaning of language Congress preserved unchanged across eight prior drafts spanning three years.

Titles V and X address different situations through different mechanisms. Bodie Bowl contained a historic, abandoned mining district Congress sought to preserve as a historic site,[2] *see* Pub. L. No. 103-433, § 1002, so Title X withdrew it from further entry and mandated expedited validity reviews of all existing unpatented claims, *id.* §§ 1002(9), 1004(c). The Mojave, by contrast, had approved existing mines Congress wanted to preserve; it required validity determinations only as a precondition to approving *new* plans of operations, Pub. L. No. 103-433, tit. V, § 509(a), and separately singled out specific claims for expedited review, *id.* § 509(b)(1)–(3). Had Congress intended every existing Mojave operation to obtain a new plan of operations, it would simply have required a validity review of all claims, as it did for Bodie Bowl. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Nev. Resort Ass'n v. JB Viva Vegas, LP*, 163 F.4th 1240, 1247 (9th Cir. 2026) (citation omitted).

The T.O. is also factually wrong that Bodie was under NPS jurisdiction. Before and after the CDPA, Bodie Bowl lands were solely private, BLM-administered, or State Park lands—never NPS-administered. Ex. A at 13. Bodie is not part of the National Park System; it is a National Historic Landmark and California State Historic Park. Pub. L. No. 103-433, § 1002(3), 108 Stat. 4471, 4509 (1994); *see* 36 C.F.R. § 65.2 (b) (landmark

---

[1] H.R. 2929, 102d Cong. (introduced July 17, 1991); S. 21, 103d Cong. (introduced Jan. 21, 1993); S. 21, 103d Cong. (engrossed amendment in House July 27, 1994); Pub. L. No. 103-433, tit. X, 108 Stat. 4471, 4499 (1994).

[2] The Bodie Bowl Valid Existing Rights Determinations, Part I: Report, Bureau of Land Management, 1997 (attached as Ex. A), at 47.

Intervenor-Defendants' Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction

designation confers no authority over the land absent independent federal jurisdiction). Congress would not have imported a definition of VER for Bodie from the subsequent Title X into the prior Title V when there were no existing mines in Bodie, and Bodie is not even regulated by NPS.

## II.    508 MUST PROTECT MORE THAN POSSESSORY RIGHTS

Reading VER in § 508 to protect only the same possessory right already protected by § 507 renders § 508's savings clause surplusage. *Duncan v. Walker*, 533 U.S. 167, 174 (2001). Having already preserved existing claims and barred new ones in § 507, Congress could have subjected "all mining claims" to NPS regulation in § 508 without any savings clause. Indeed, the CDPA used identical § 507 language to withdraw lands for Death Valley and Joshua Tree, §§ 305, 405, and subjected them to NPS regulation without any reservation for valid existing rights, §§ 303, 403. The T.O.'s assertion (at 25) that §§ 507 and 508 serve "distinct purposes" does not resolve this inconsistency, since it describes both savings clauses as protecting the same "property" and "possessory rights" of valid claim holders. The T.O.'s alternative "takings standard" rationale does not aid its construction. The T.O. reasons (at 28–29) that its narrow § 508 reading "offers the same protection from a regulatory taking" because an NPS-approval requirement would not itself effect a taking. But the constitutional floor is not the statutory ceiling: that a regulation might survive Takings Clause scrutiny says nothing about what Congress chose to protect by statute. Requiring CRM to submit an entirely new, discretionary plan of operations for activities authorized under a validly approved 1985 BLM Plan does not regulate that authorization; it eliminates it. *Herr v. U.S. Forest Service*, 865 F.3d 351 (6th Cir. 2017), is inapposite; it addressed littoral rights, not whether agency-approved operational authorization can constitute a VER. *Id*. at 357.

## III.    AN APPROVED POO IS A VER THAT SURVIVES  WITHDRAWAL

Interior has long recognized that VER are not confined to vested, Fifth Amendment interests.  VER are "those rights short of vested rights that are immune from denial or extinguishment by the exercise of secretarial discretion." Solic.'s Op. M-36910

Intervenor-Defendants' Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction

(Supp.), 88 I.D. 909, 912 (Oct. 5, 1981); *see* Secretarial Ord. No. 3016, 85 I.D. 1, 5–6 (Dec. 14, 1977). The Ninth Circuit likewise recognizes that VER encompass "legitimate expectations" created by the government's own prior representations, *Aleknagik Natives, Ltd. v. U.S.*, 806 F.2d 924, 926–27 (9th Cir. 1986), and DOI's Alaska withdrawal regulation confirms VER "of a temporary or limited nature" can arise from "leases . . . contracts, permits, rights-of-way, or easements"—the same type of interest at issue here. 43 C.F.R. § 2650.3-1(a).

Given the structure of the CDPA, the best reading is that Congress intended Title V to  operate like an ordinary FLPMA withdrawal, under which "operations may continue as accepted or approved and do not require a validity examination unless or until there is a material change in the activity" where an "approved Plan[] of Operations . . . w[as] in place prior to the withdrawal." BLM Handbook H-3809-1, § 8.1.5. This tracks the general proposition that a transfer of regulatory jurisdiction between federal agencies does not extinguish authorizations issued under the predecessor's regime absent a clear statement of contrary intent. *Cf.* 5 U.S.C. § 907. It also comports with the understanding that "[a]ll mines that have been approved to proceed and mine will be able to do so." 140 Cong. Rec. S7049, 7074 (Apr. 12, 1994).

The Ninth Circuit confirms that existing plans of operations survive FLPMA withdrawals. In *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1159–61 (9th Cir. 2018), the government withdrew BLM land near the Grand Canyon "subject to valid existing rights," and a mine operating under a decades-old plan of operations resumed operations under that same plan without new authorization because the original approval of a plan of operations is "complete when the plan [is] approved" and resumed operations "did not require any additional government action." *Id.* at 1163–68 (citation omitted). Likewise, *Grand Canyon Trust v. Williams* explained that a FLPMA withdrawal "subject to valid existing rights means that existing mines could continue to operate" under their plans of operations—a reading later confirmed on the merits, holding that an approved plan of operations is a "mining right[] that already existed" at the time of the withdrawal. 98 F.

Intervenor-Defendants' Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction

Supp. 3d 1044, 1053 (D. Ariz. 2015) (citation modified); *Grand Canyon Tr. v. Provencio*, 467 F. Supp. 3d 797, 805 (D. Ariz. 2020), aff'd, 26 F.4th 815 (9th Cir. 2022).

The Mining in the Parks Act, like CDPA § 507, withdrew land from mineral entry "[s]ubject to valid existing rights," Pub. L. No. 94-429, 90 Stat. 1342, § 3 (Sept. 28, 1976), but had no corollary to § 508—instead giving the agency broad authority to regulate "all activities resulting from the exercise of valid existing mineral rights" in existing Park units, ***without any reservation for valid existing rights***. *Id.* § 2. That the MPA's implementing regulations already let NPS extend operations existing on January 26, 1977, 36 C.F.R. § 9.9(d), and temporarily allow activities pending plan approval, *id.* § 9.10(g), confirms § 508's savings clause does additional work beyond what these regulations provide; Congress would not have needed § 508's reservation if it intended § 508 to be co-extensive with the MPA. The MPA's own text acknowledges VER is broader than possessory mining rights, since it authorized the Secretary to regulate only "valid existing mineral rights." Pub. L. No. 94-429, § 2.

Nor can the T.O.'s "rights under law" theory—that VER means only interests the mining laws themselves confer—be squared with § 508's text. The single reference to "valid existing rights on patented mining claims" in § 509(b)(3) addresses only the transitional treatment of specific, named claims, not the meaning of § 508's separate savings clause. And NPS's confusion does not bind this Court's independent construction of the CDPA. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). An agency's prior misreading is not evidence of what Congress intended; NPS's April 2025 letter recognizing CRM's rights aligned with the statute's terms.

## IV.    **CONCLUSION**

For these reasons, the Court should deny Plaintiff's requested preliminary injunction; if an injunction issues, it should be limited as described in the attached proposed order to protect health, safety, and CRM's ongoing obligations.

DATED: August 3, 2026

JEFFER MANGELS & MITCHELL LLP
KERRY SHAPIRO
MICHAEL H. STRUB, JR.

By:   */s/ Michael H. Strub, Jr.*
MICHAEL H. STRUB, JR.

DATED: August 3, 2026

HOLLAND & HART LLP
MURRAY FELDMAN
JENNIFER SCHELLER NEUMANN
AMELIA YOWELL
ANDREA J. DRIGGS

By:   */s/ Murray Feldman*
MURRAY FELDMAN

Attorneys for Intervenor-Defendants Dateline Resources Ltd. and Colosseum Rare Metals, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August, 2026, I electronically filed the foregoing **INTERVENOR-DEFENDANTS COLOSSEUM RARE METALS, INC. AND DATELINE RESOURCES LTD.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF NATIONAL PARKS CONSERVATION ASSOCIATION'S MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Gabriel F. Greif<br>Earthjustice<br>707 Wilshire Blvd, Suite 4300<br>Los Angeles, CA 90017<br>415-217-2000<br>Fax: 415-217-2040<br>Email: ggreif@earthjustice.org | Attorneys for Plaintiff National Parks Conservation Association |
| Gregory Cahill Loarie<br>Katrina Anais Tomas<br>Earthjustice<br>1 Sansome Street, Suite 1700<br>San Francisco, CA 94104<br>415-217-2000<br>Fax: 415-217-2040<br>Email: gloarie@earthjustice.org<br>Email: ktomas@earthjustice.org | Attorneys for Plaintiff National Parks Conservation Association |
| Daniel Luecke<br>DOJ-Enrd<br>Natural Resources Section<br>P.O. Box 7611<br>Washington, DC 20044-7611<br>202-598-7863<br>Email: daniel.luecke@usdoj.gov | Attorneys for Defendant U.S. Department of the Interior; Defendant Doug Burgum; Defendant National Park Service; Defendant Jessica Bowron; Defendant Kevin Schluckebier |
| Katharine Laubach<br>United States Department of Justice<br>PO Box 7611<br>Washington, DC 20044-7611<br>202-305-8568<br>Email: katharine.laubach@usdoj.gov | Attorneys for Defendant U.S. Department of the Interior; Defendant Doug Burgum; Defendant National Park Service; Defendant Jessica Bowron; Defendant Kevin Schluckebier |

*/s/ Michael H. Strub, Jr.*

Intervenor-Defendants' Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction