GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org
KATRINA A. TOMAS (CA Bar No. 329803)
ktomas@earthjustice.org
EARTHJUSTICE
1 Sansome Street, Suite 1700
San Francisco, California 94104
T: (415) 217-2000 ● F: (415) 217-2040

GABRIEL F. GREIF (CA Bar No. 341537)
ggreif@earthjustice.org
EARTHJUSTICE
707 Wilshire Blvd., Ste. 4300
Los Angeles, CA 90017
T: (415) 217-2000 ● F: (415) 217-2040

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION,<br><br>            Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et al.,*<br><br>            Defendants. | No.: 2:26-cv-4002-CAS-AS<br><br>**PLAINTIFF'S SUPPLEMENTAL RESPONSE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

PLAINTIFF'S SUPPLEMENTAL RESPONSE

The Court's tentative ruling correctly construes "subject to valid existing rights" in section 508 of the California Desert Protection Act (CDPA) to encompass "only the property and possessory rights conferred by the United States to the holders of valid mining claims." *See* Civil Mins. for July 27, 2026 (Tentative) at 29. Federal defendants (NPS) and intervenors (CRM) cite no contrary authority.[1]

**1.     Courts Have Consistently Construed the Phrase "Valid Existing Rights" to Mean Only Property Rights.**

Opposing parties do not identify a single case in which a court has construed the phrase "valid existing rights" to encompass anything short of property rights. Instead, courts have held that "valid existing rights" mean "any property interest as to which application of any prohibition . . . would effect a taking." *Meridian Land and Min. Co. v. Hodel*, 843 F.2d 340, 346 (9th Cir. 1988).

*McMaster v. United States,* 731 F.3d 881 (9th Cir. 2013), is also consistent with the Court's tentative. There, the rights at issue—patents and mining claims—are both property rights. *Id.* at 888, 895. The Ninth Circuit never suggested that "subject to valid existing rights" means grandfathering an approval that was not squarely a property right. Rather, *McMaster* held that valid existing rights under the Wilderness Act refer to rights conferred by a mining patent. *Id.* at 894-96. The Court looked to the statute's purpose, finding that the Wilderness Act's emphasis on "maximiz[ing] protection of the wilderness" supported construing "valid existing rights" narrowly. *Id.* at 893, 895-96. Similarly, the CDPA affords statutory protection to the Mojave Desert's "outstanding natural, cultural, historical, and recreational values." 16 U.S.C.

---

[1] Even if section 508 could be construed to allow mining in the Preserve under preexisting BLM plans of operations, the 1985 BLM Plan at issue here does not encompass current mining operations at Colosseum, and NPS's April 2025 finding to the contrary is arbitrary and capricious. *See* Mem. P. & A. Mot. Prelim. Inj., Dkt. 20-1; Reply, Dkt. 30. Because the Court's tentative concludes correctly that the plain language of the CDPA requires an NPS-approved plan, it does not reach NPCA's alternative arguments regarding the scope of the 1985 Plan. Tentative at 30.

PLAINTIFF'S SUPPLEMENTAL RESPONSE

§ 410aaa-41(2), (3). *McMaster* thus confirms that a "valid existing right" is a property right or, at least, a reasonable expectation of one. Tentative at 29.

*Aleknagik Natives Ltd v. United States*, 806 F.2d 924 (9th Cir. 1986), is distinguishable and does not support treating an approved plan of operations as a valid existing right. There, the Ninth Circuit construed "valid existing rights" under the Alaska Native Claims Settlement Act (ANCSA), which withdrew public lands near Native villages from public appropriation, subject to valid existing rights. *Id.* at 925-26. The court's discussion of "legitimate expectations" was tied to property interests arising from government representations under a statutory scheme. *Id.* at 926-27; *see also Seldovia Native Ass'n, Inc. v. Lujan*, 904 F.2d 1335, 1342-43 (9th Cir. 1990) (finding a valid existing right where Congress granted claimant a purchase option creating expectation of acquiring property interest). Ultimately, *Aleknagik* turned on whether such representations create legitimate expectations of title, not whether a valid existing right encompasses plans of operations. The Ninth Circuit has also cabined *Aleknagik* to that specific statutory and factual context. *McMaster*, 731 F.3d at 894-95, 894 n.7. In the mining context, by contrast, the government made no representation that a plan of operations creates an entitlement immune from the CDPA's withdrawal. *See* Creole Corp., 146 IBLA 107, 118-23, 1998 WL 804643, at *9-12 (Oct. 20, 1998) (upholding decision to require modification of "duly approved" plan of operations to comply with Wilderness Act regulations following withdrawal subject to valid existing rights). Instead, section 508(a) conditions plan approval on prior validity determinations, which is the opposite of a governmental representation that a plan of operations constitutes a protected right. 16 U.S.C. § 410aaa-49(a).

*U.S. v. Hall* did not consider the scope of any valid existing rights clause; it involved a criminal defendant whose plan of operations was unilaterally revoked outside any regulatory framework and the agency threatened to never approve a new plan again. 751 F. Supp. 1380, 1380-83 (E.D. Cal. 1990). Here, as the Court noted, the regulatory requirement to seek NPS approval does not deprive CRM of any property

PLAINTIFF'S SUPPLEMENTAL RESPONSE

interest in its mining claims. Tentative at 28, n.6.

**2.     A Mining Plan of Operations Does Not Convey a Property Right.**

The Court properly found that BLM did not confer "valid existing rights" by approving the 1985 Plan for Colosseum Mine. Tentative at 29. To establish a valid existing right under the mining laws, an agency must "ascertain whether a claimant has made a discovery of a valuable mineral deposit, thus endowing them with 'valid existing rights'" that recognize the holder's property interest in the underlying mining claim. *Vane Mins. v. United States*, 116 Fed. Cl. 48, 57-58 (2014); *Wilderness Soc'y v. Dombeck*, 168 F.3d 367, 375 (9th Cir. 1999) (holding "valid existing rights" requires "discovery of a valuable mineral deposit that would survive the closure of the wilderness areas to mineral exploration").

Indeed, a mining claim is "invalid and confers no right without a discovery of valuable minerals on the claim." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 33 F.4th 1202, 1210 (9th Cir. 2022) (*Rosemont*). In *Rosemont*, the court held that the Forest Service acted arbitrarily in approving a plan of operations based on the incorrect assumption that the operator's mining claims were valid. *Id.* at 1221, 1224. Without a validity determination, the operator could not dump waste rock on Forest Service land even with an approved plan. *Id.* at 1224. If the plan conferred valid existing rights, the validity determination would not have been required. Indeed, a plan of operations is not the source of mining rights and is "nothing more than a description of how an operator proposes to conduct various activities on the public land," and a prerequisite to exercising mining rights. Creole Corp., 1998 WL 804643, at *17. The 1985 Plan itself plainly states that "[a]pproval of this plan will not now or in the future serve as a determination of the validity of any mining claims." Wilcox Decl., Ex. A. at 88. Opposing parties offer no authority to the contrary.

In the *Havasupai* line of cases, the court affirms that "[r]ights to a mineral deposit on public land are not conferred by agency action; they are acquired by the miner's own actions of location and discovery." *Havasupai Tribe v. Provencio*, 906

4

F.3d 1155, 1162 (9th Cir. 2018). There, the agency also reviewed the preexisting plan to determine whether any laws or regulations had changed that "might require additional federal actions to be taken before operations resume." *Id.* at 1160. No review would be necessary if plans of operations conferred valid existing rights.

**3.      The CDPA's Legislative History Confirms Congress Intended Mining Claims in the Preserve to Be Subject to Park Service Regulation.**

The legislative history does not support opposing parties' interpretation. To the contrary, Senator Dale Bumpers, the bill's co-sponsor, explained that the CDPA would "allow[] those existing mining rights to continue but with . . . *a little steeper criteria as to whether or not we are going to permit them to be mined*." S. Hearing 103-186, Before the Subcomm. on Pub. Lands, at 174 (1993) (emphasis added). Likewise, NPS testified that NPS land with "existing mining or mining claims . . . would be managed under the [Mining in the Parks Act (MPA)]," subjecting those mining claims to "reasonable regulations and providing that valid existing rights exist." S. Hearing 102-624, Hearings on S.21 Before the Subcomm. on Pub. Lands (Pt. 2), at 53 (1992). NPS also said that "when there is a valid existing right, a plan of operation must be approved by [NPS]." *Id.* at 54. Senator Feinstein's statement cited by NPS here is consistent with this understanding: Mines located on valid existing claims can continue to operate, but only subject to NPS regulations. *See* Fed. Defs.' Supp. Br., Dkt. 44 at 2.

**4.      Federal Authorities Have Confirmed That Mining on NPS Land Is Subject to Regulation Under the MPA.**

Agency regulations and interpretations also confirm that mining in national parks will be subject to NPS regulations. Like section 508 of the CDPA, BLM's regulations recognize "valid existing rights" on lands incorporated into the National Park system, but confirm that "*access and permission to operate* mining claims and sites within units of the National Park System are now governed by [MPA and its regulations]." 43 C.F.R. § 3811.2-2 (1994) (emphasis added). If a plan of operations

PLAINTIFF'S SUPPLEMENTAL RESPONSE

constituted a valid existing right, then "access and permission to operate" preexisting operations could not be regulated by NPS. *Ibid.*

NPS regulations likewise confirm that plans of operations are not valid existing rights. The MPA withdrew new parks from exploration and development under the Mining Law of 1872, "subject to valid existing rights." Pub. L. No. 94-429 § 3, 90 Stat. 1342 (Sept. 28, 1976). Yet NPS regulations gave preexisting operations 120 days to secure plan approval, 36 C.F.R. § 9.9(d) (1979), and the regulations specifically allow temporary continuation of "existing operations" pending plan approval upon withdrawal of lands, 36 C.F.R. § 9.10(g). Those carve-outs would be unnecessary if prior plans of operations were valid existing rights.

Solicitor's Opinion M-36910 also notes that valid existing rights "may constitutionally be regulated and their value diminished for a legitimate government purpose" and that the Mining Law of 1872 expressly allows the government to continue to regulate these rights. *See* Solic.'s Op. M-36910, 88 Interior Dec. 909, 914, 914 n.7 (Oct. 5, 1981). Indeed, the Solicitor's Opinion even acknowledges that valid existing rights must be "property interests rather than mere expectancies." *Id.* at 911.

Finally, NPS confirmed in both *Rayco v. Bernhardt*, No. 2:21-CV-00512-SVW-GJS, 2024 WL 4329006 (C.D. Cal. Jan. 9, 2024) and in 2023 correspondence with CRM that mining operations conducted within the Preserve must comply with the MPA. *See* Wilcox Decl., Dkt. 20-2, Ex. C at 232; Reply, Dkt. 30 at 11-12. Opposing parties offer no legal basis for their reversal of position, which runs counter to Congress' intent in enacting the CDPA.

### Conclusion

The Court's tentative correctly concludes that section 508 of the CDPA "does not exempt the holders of mining claims who have BLM-approved plans of operation from the MPA regulation." Tentative at 30. NPCA is lodging herewith a revised proposed order that refines slightly the modified proposed order lodged by CRM (Dkt. 46-1).

PLAINTIFF'S SUPPLEMENTAL RESPONSE

Respectfully submitted,

GREGORY C. LOARIE (CA Bar No. 215859)
gloarie@earthjustice.org

Dated: August 7, 2026              /s/ Katrina A. Tomas
                                   KATRINA A. TOMAS (CA Bar No. 329803)
                                   ktomas@earthjustice.org
                                   EARTHJUSTICE
                                   1 Sansome Street, Suite 1700
                                   San Francisco, California 94104
                                   T: (415) 217-2000 ● F: (415) 217-2040

                                   GABRIEL F. GREIF (CA Bar No. 341537)
                                   ggreif@earthjustice.org
                                   EARTHJUSTICE
                                   707 Wilshire Blvd., Ste. 4300
                                   Los Angeles, CA 90017
                                   T: (415) 217-2000 ● F: (415) 217-2040

                                   *Counsel for Plaintiff*

PLAINTIFF'S SUPPLEMENTAL RESPONSE