UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-04002-CAS-ASx | Date | October 26, 2026 |
| Title | National Parks Conservation Association v. U.S. Dept. of the Interior, et al | | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Gregory Loarie

Attorneys Present for Defendants:
Katharine Laubach

Attorneys Present for Intervening Defendants:
Kerry Shapiro
Michael Strub, Jr.

**Proceedings:** **ZOOM HEARING RE:** AND DATELINE RESOURCES LTD.'S MOTION FOR STAY PENDING APPEAL (Dkt. 57, filed September 18, 2026)

FEDERAL DEFENDANTS' MOTION FOR STAY PENDING APPEAL (Dkt. 62, filed September 25, 2026)

## I. INTRODUCTION

On April 15, 2026, plaintiff National Parks Conservation Association ("NPCA" or "Plaintiff") filed a complaint for declaratory and injunctive relief against defendants U.S. Department of the Interior ("DOI"); Doug Burgum, in his official capacity as Secretary of the Interior; National Park Service ("NPS"); Jessica Bowron, in her official capacity as Comptroller for NPS and currently exercising the delegated authority of the Director of NPS; and Kevin Schluckebier, in his official capacity as Acting Superintendent of the Mojave National Preserve (collectively, the "Federal Defendants"). Dkt. 1 ("Compl."). On July 15, 2026, the Court granted the motion of Dateline Resources Ltd. and Colosseum Rare Metals, Inc. (collectively, "CRM" or the "Intervenor-Defendants") to intervene as defendants, subject to limitations. Dkt. 32.

In its complaint, plaintiff alleges that the federal defendants' April 2025 decision authorizing CRM to proceed with new mining operations at Colosseum Mine within the Mojave National Preserve violates the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 706(2)(A), because it is not in accordance with (1) the Mining in the Parks Act (the "MPA"); (2) the California Desert Protection Act (the "CDPA"); or (3) the National Environmental Policy Act ("NEPA"). Compl. ¶¶ 78, 89, 95. Plaintiff also alleges that the federal defendants' assertion that CRM's expired plan of operations approved by U.S. Bureau and Land Management ("BLM") in 1985 "remains in effect" is arbitrary and capricious, in violation of the APA. Id. ¶ 82. Plaintiff also alleges that the federal defendants' April 3, 2025 assertion that renewed mining by CRM at Colosseum Mine "does not require a validity [determination]" is arbitrary and capricious, in violation of the APA. Id. ¶ 90.

Plaintiff seeks an order from the Court: (1) setting aside and vacating the federal defendants' April 2025 decision authorizing CRM to proceed with operations at Colosseum Mine, as well as any subsequent agency actions relying on the April 2025 decision; (2) declaring that the federal defendants' April 2025 decision violated the MPA, the CDPA, and NEPA; (3) enjoining the federal defendants from authorizing or otherwise allowing further operations at Colosseum Mine pending compliance with all applicable laws and regulations; and (4) awarding plaintiff costs of litigation, including reasonable attorneys' fees and costs. Id. at 21.

On June 23, 2026, plaintiff filed a motion for a preliminary injunction. Dkt. 20. On August 10, 2026, the Court granted plaintiff's motion, ordering that: (1) the federal defendants set aside NPS's April 2025 decision, pending final judicial review on the merits; (2) the federal defendants are enjoined from allowing mining operations within Mojave National Preserve absent compliance with all applicable laws and regulations, including 36 C.F.R. § 9.10; (3) intervenor-defendants shall halt operations within Mojave National Preserve in an orderly and safe manner, including demobilization of equipment and drill rigs, implementation of safety measures, and inspection of the site in a manner that ensures the site is safe and secure, and are enjoined from continuing operations within Mojave National Preserve absent compliance with all applicable laws and regulations; (4) defendants and intervenor-defendants shall file status reports within 15 days of the order and again within 15 days of the deadline to comply with the Court's third order to implement demobilization and site safety measures; and (5) no security need be given by plaintiff to make the order effective (the "Preliminary Injunction" or the "August 10, 2026 Order"). Dkt. 53 ("Prelim. Inj. Order").

On September 22, 2026, the federal defendants filed a notice of appeal to the Ninth Circuit Court of Appeals from this Court's August 10, 2026 Order granting plaintiff's

motion for a preliminary injunction. Dkt. 59. On the same day, intervenor-defendants filed a notice of appeal to Ninth Circuit Court of Appeals from the same order. Dkt. 60.

On September 18, 2026, intervenor-defendants filed their motion to stay the Court's August 10, 2026 Order pending appeal. Dkt. 57 ("CRM Mot."). On September 25, 2026, the federal defendants filed their motion to stay the Court's August 10, 2026 Order pending appeal. Dkt. 62 ("Fed. Mot."). On October 5, 2026, plaintiff filed an opposition. Dkt. 66 ("Opp."). On October 9, 2026, the federal defendants filed a reply. Dkt. 67 ("Fed. Reply"). On the same day, intervenor-defendants filed a reply. Dkt. 68 ("CRM Reply").

On October 26, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

The background of this case is known to the parties and is described in the Court's August 10, 2026 Order. See Prelim. Inj. Order.

## III. LEGAL STANDARD

When a notice of appeal is filed, jurisdiction over the matters being appealed generally transfers from the district court to the appeals court. See Marrese v. Am. Academy of Orthopaedic Surgeons, 470 U.S. 373, 379 (1985) ("In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal."). Federal Rule of Civil Procedure 62(d) provides an exception, however, that allows the district court to retain jurisdiction to "suspend, modify, restore, or grant an injunction" during the pendency of the appeal in order to preserve the status quo. See Mayweathers v. Newland, 258 F.3d 930, 935 (9th Cir. 2001).[1] However, Rule 62(d) "does not restore jurisdiction to the district court to adjudicate anew the merits of the case." See McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, 686 F.2d 731, 734 (9th Cir. 1982).

[1] Mayweathers and other cited cases predate the 2018 revision to Rule 62. Accordingly, they refer to Rule 62(c), which is now re-codified as Rule 62(d). See Rinnai Am. Corp. v. S. Coast Air Quality Mgmt. Dist., No. CV 24-10482, 2025 WL 5099716, at *3 (C.D. Cal. Sept. 29, 2025) (citing Fed. R. Civ. P. 62, Advisory Committee Notes).

In deciding whether to grant a stay of an injunction pending appeal, the court looks to the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). There is "substantial overlap" between this standard and the factors governing preliminary injunctions. Id.; see Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Al Otro Lado v. Wolf, 952 F.3d 999, 1007 (9th Cir. 2020) (quoting Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011)). "The first two factors of the traditional standard are the most critical." Nken, 556 U.S. at 434. To satisfy the first factor and make a strong showing of likelihood of success, the Ninth Circuit requires that "at a minimum, a petitioner must show that there is a substantial case for relief on the merits." Lair v. Bullock, 697 F.3d 1200, 1204 (9th Cir. 2012) (citation modified). "The standard does not require the petitioners to show that it is more likely than not that they will win on the merits." Id. (citation modified).

However, "[a] stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." Nken, 556 U.S. at 433 (citation modified). The party seeking a stay bears the burden of demonstrating that "the circumstances justify an exercise of that discretion." Id. at 433-34.

## IV. DISCUSSION

CRM argues that the Nken factors weigh in favor of a stay of the August 20, 2026 order granting plaintiff's motion for a preliminary injunction. First, CRM argues that it is likely to succeed on the merits of its appeal because Section 508's savings clause must "protect something beyond the possessory rights already preserved by Section 507" to avoid surplusage. CRM Mot. at 21. CRM further argues that Section 509, legislative history, agency interpretations, and Ninth Circuit case law support CRM's proposed

interpretation of Section 508’s savings clause. Id. at 22-23. Finally, CRM argues that the Court’s use of the Bodie Protection Act’s definition of “valid existing rights” is misguided. Id. at 22. The federal defendants make similar arguments with respect to the first Nken factor. See Fed. Defs. Mot. at 3-8. The federal defendants also argue that courts have interpreted “valid existing rights” to have a broad definition with respect to other statutory schemes. See id. at 6-7.

CRM next argues that it suffers irreparable harm because it continues to incur weekly payroll and operations expenses while the preliminary injunction is in place. CRM Mot. at 13-14. CRM argues that it cannot recover these losses as economic damages because the Court did not require plaintiff to post any bond when it granted the preliminary injunction. Id. at 12-13. CRM also argues that it suffers irreparable harm related to the loss of personnel and equipment; the risk of losing its water supply contract; harm to its business reputation and goodwill; the loss of “continuity and momentum” related to its program; and harm to its shareholders as a result of its loss of its OTCQB market classification, its removal from the S&P/ASX 300 Index, and the decline in the valuation of its shares. See id. at 14-20. The federal defendants argue that they suffer irreparable harm and the public interest factor favors a stay because rare earth elements are essential to national security interests. Fed. Defs. Mot. at 8-16; see also CRM Mot. at 25-27. Finally, CRM argues that the balance of equities tip in defendants’ favor because there is no evidence that plaintiff will suffer irreparable environmental harm during the nine- to eighteen-month duration of the appeal. See CRM Mot. at 24-25.

In opposition, plaintiff argues that neither CRM nor the federal defendants advance new arguments in support of their interpretation of Section 508’s savings clause. Opp. at 7. Plaintiff argues that there is no irreparable harm to defendants because the prospect of finding rare earth elements at Colosseum Mine is “speculative,” CRM’s financial losses are not prospective in nature, and the timing and nature of CRM’s market-related losses suggest that the losses are minimally attributable to the preliminary injunction. Id. at 8-13. Finally, plaintiff argues that there is “ample evidence” of irreparable harm to plaintiffs and the general public in the absence of a preliminary injunction. Id. at 13-15.

In reply, CRM and the federal defendants largely reiterate their earlier arguments. See CRM Reply; Fed. Defs. Reply.

“The bar for obtaining a stay of a preliminary injunction is higher than the Winter standard for obtaining injunctive relief.” Index Newspapers LLC v. United States Marshals Serv., 977 F.3d 817, 824 (9th Cir. 2020). Defendants “must show a *strong*

likelihood of success on the merits.” Id. (emphasis in original). Defendants here cannot make that showing. Federal defendants and CRM generally rely on the same arguments they set forth in briefing on plaintiff’s motion for a preliminary injunction.[2] The Court rejected these arguments in its August 10, 2026 Order. See Prelim. Inj. Order at 19-33. Accordingly, “[d]efendants include no new arguments or facts in the instant motion to stay pending appeal that would cause the Court to alter its original determination as to likelihood of success.” See Theorem, Inc. v. Citrusbyte, LLC, No. CV 21-4660, 2022 WL 1314041, at *2 (C.D. Cal. Jan. 18, 2022). Defendants therefore have made a weak showing with respect to the first Nken factor. See id.

To succeed on the second Nken factor, “[a]n applicant for a stay pending appeal must show that a stay is necessary to avoid likely irreparable injury to the applicant while the appeal is pending.” Al Otro Lado v. Wolf, 952 F.3d 999, 1007 (9th Cir. 2020). Under the Ninth Circuit’s “sliding scale” approach, a movant’s “burden with regard to irreparable harm is higher than it is on the likelihood of success prong, as she must show that an irreparable injury is the more probable or likely outcome.” See id. (quoting Leiva-Perez v. Holder, 640 F.3d 962, 968 (9th Cir. 2011) (per curiam)). In other words, the movant must show more than “some possibility” of irreparable injury. Id. (quoting Nken, 556 U.S. at 434).

It appears that CRM and the federal defendants raised their arguments with respect to irreparable harm, albeit in less detail, in opposition to plaintiff’s motion for a preliminary injunction. See Dkt. 24 at 23-25; Dkt. 25 at 30-32. The Court rejected those arguments, and determined that plaintiff would suffer irreparable harm if a preliminary injunction was not entered. See Prelim. Inj. Order at 33-39. In so doing, the Court overruled defendants’ objections. See id.

Moreover, the Court observes that many of defendants’ arguments involve speculation about the possible discovery of commercially viable rare earth elements at Colosseum Mine, CRM’s ability to raise the necessary funds to mine such elements, and the prospect of processing any rare earth elements from Colosseum Mine at a nearby existing facility. See, e.g., CRM Mot. at 3, 18-19; Opp. at 8-10. Such speculation does

---

[2] In response to plaintiff’s argument to this effect, see Opp. at 7, CRM identifies four arguments that CRM claims plaintiff “has never answered,” see CRM Reply at 12-13. Regardless of whether plaintiff has addressed these arguments, the Court has already considered each of the four arguments as presented in briefing on the motion for a preliminary injunction. See, e.g., Dkt. 24 at 12-13; Dkt. 45 at 1-5; Dkt. 43 at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| Case No. | 2:26-cv-04002-CAS-ASx | Date | October 26, 2026 |
|---|---|---|---|
| Title | National Parks Conservation Association v. U.S. Dept. of the Interior, et al | | |

not support a finding that irreparable harm is "the more probable or likely outcome" while appeal is pending. See Al Otro Lado, 952 F.3d at 1007 (quoting Leiva-Perez, 640 F.3d at 968) (declining to credit the movant's "speculation" about future harm or movant's failure to "significantly mitigate the harm created by its own . . . practices"). Accordingly, under the "sliding scale" approach, defendants have not made a strong enough showing of likely irreparable harm to offset their low likelihood of success on the merits. See id. at 1014.

Because defendants have not made a showing of a strong likelihood of success on the merits or likely irreparable harm, the Court need not address the third and fourth Nken factors. See Index Newspapers, 977 F.3d at 824 ("[T]he first two Nken factors are the most critical, and that the second two factors are only considered if the first two factors are satisfied."); see also Sequen v. Albarran, 814 F. Supp. 3d 1068, 1071-72 (N.D. Cal. 2025) (declining to address the remaining Nken factors where movants failed to show any likelihood of success on the merits).[3]

Finally, the Court addresses CRM's request for bond.[4] While the August 10, 2026 Order is on appeal, the Court has jurisdiction to "suspend, modify, restore, or grant an

---

[3] Even if the Court were to consider the third and fourth Nken factors, the fact remains that the preliminary injunction was entered to protect the "public interest in preventing irreparable environmental injury . . . in the context of requiring NPS to be faithful to the CDPA and the MPA." See Prelim. Inj. Order at 38. As the Court explained in its August 10, 2026 Order, "[a]bsent federal legislation superseding the CDPA, the Court does not consider [a] speculative national security interest to displace Congress's stated interest in protecting the California desert." See id. at 39; see also Dkt. 62-2, Ex. B (reflecting disagreement among senators about the relative importance of national security and environmental implications of rare earth element mining at a February 24, 2026 hearing before the Senate Committee on Armed Services).

[4] At the October 26, 2026 hearing, CRM expressly requested that the Court impose a bond if the Court denied its motion to stay the preliminary injunction. In support of its request, CRM directed the Court's attention to Johnson v. Couturier, 572 F.3d 1067 (9th Cir. 2009), Est. of Casillas v. City of Fresno, 471 F. Supp. 3d 1035 (E.D. Cal. 2020), and Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc., 600 F.2d 1189 (5th Cir. 1979). The Court finds these cases inapposite. In Johnson, the Ninth Circuit affirmed the district court's issuance of preliminary injunctions and remanded the case to the district court to determine the sufficiency of bond, pursuant to Federal Rule of Civil Procedure

injunction," see Fed. R. Civ. P. 62(d), but it is divested of jurisdiction to materially change the terms of the preliminary injunction. See Nat. Res. Def. Council, Inc. v. Sw. Marine Inc., 242 F.3d 1163, 1166 (9th Cir. 2001) ("[A]ny action taken pursuant to Rule 62([d]) 'may not materially alter the status of the case on appeal.'" (quoting Allan Ides, The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed, 143 F.R.D. 307, 322 (1992))). Rule 62(d) "grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal; it 'does not restore jurisdiction to the district court to adjudicate anew the merits of the case.'" Id. (quoting McClatchy Newspapers, 686 F.2d at 734)). In short, Rule 62(d) confers "narrowly limited" authority to modify a preliminary injunction pending appeal. See McClatchy Newspapers, 686 F.2d at 734.

While it is conceivable that the Court could fashion some form of bond to address harms claimed by defendants, it is not clear that the Court retains jurisdiction to modify the bond requirement in connection with the instant motion to stay. Some out-of-circuit courts have found that they retained jurisdiction to impose or modify the terms of a security bond while an appeal of the preliminary injunction was pending. See Drake Univ. v. Des Moines Area Cmty. Coll. Found., No. 4:24-CV-00227, 2025 WL 1484430, at *2 (S.D. Iowa Feb. 18, 2025) (finding that modification of the security bond would not "go to the merits of the underlying case or . . . materially alter its status on appeal"); George Sink PA Inj. Laws. v. George Sink II L. Firm LLC, No. 2:19-CV-01206, 2019 WL 6318778, at *3 (D.S.C. Nov. 26, 2019) (finding that the district court had jurisdiction

---

65(c). See Johnson, 572 F.3d at 1086. In Casillas and Poplar Grove, the courts imposed supersedeas bonds when considering motions to stay enforcement of final judgments, pursuant to Federal Rule of Civil Procedure 62(b). Casillas, 471 F. Supp. 3d at 1036-37; Poplar Grove, 600 F.2d at 1190 (relying on Rule 62(d), which is now codified at Rule 62(b)); see also Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist., No. 210CV02414KJMKJN, 2019 WL 2715616, at *2 (E.D. Cal. June 28, 2019) ("What was substantively Rule 62(d) [prior to the 2018 revisions] is now labeled Rule 62(b)."). None of these cases discussed the district court's ability to impose or modify bond on a motion to stay a preliminary injunction pending appeal, pursuant to Rule 62(d). See also Thomas & Betts Corp. v. Panduit Corp., 1995 WL 103309, at *2 (N.D. Ill. Feb. 28, 1995) (distinguishing the jurisdictional questions that arise with respect to motions to modify *supersedeas* bonds from those related to motions to modify *injunctive* bonds because "the increase in a supersedeas bond can never result in the dissolution of the very issues on appeal before the [a]ppellate [c]ourt").

to "resolve the defect" of its original preliminary injunction, which failed to address the issue of bond or other security as required by Federal Rule of Civil Procedure 65(c)). However, in Thomas & Betts Corp. v. Panduit Corp., 1995 WL 103309 (N.D. Ill. Feb. 28, 1995), the Northern District of Illinois concluded that it did not have jurisdiction to increase bond from $500,000 to $71 million while appeal of the preliminary injunction was pending. See Thomas & Betts, 1995 WL 103309 at *2. According to the court, "if an increase in an injunctive bond results in the inability of the party being protected by the injunction to post the bond, then this change affects the entire injunctive order." Id. at 2. The court explained that the non-moving party's inability to post bond would effectively "dissolve the injunction and make the proceeding before the Court of Appeals moot." Id. Accordingly, the court found it lacked jurisdiction over the motion because to grant the motion would affect "a material change in the entire injunctive order." Id. at *2-3.

The Court need not decide whether it has jurisdiction to grant CRM's request for bond in the instant matter.[5] Assuming *arguendo* that the Court could impose bond at this stage, it would decline to do so for the reasons set forth in its August 10, 2026 Order. See Prelim. Inj. Order at 40. Defendants did not request a bond at the time of plaintiff's motion for a preliminary injunction, as noted in the Court's August 10, 2026 Order. See id. Moreover, it appears that CRM and the federal defendants raised their arguments with respect to irreparable harm, albeit in less detail, in opposition to plaintiff's motion for a preliminary injunction. See Dkt. 24 at 23-25; Dkt. 25-3 at 30-32. Accordingly, defendants have failed to provide meaningfully new facts that would require that bond be

[5] In addition to the Court's determination that it would deny bond in the event that it has jurisdiction over CRM's request for bond, the Court need not resolve the question of jurisdiction "to the extent that [CRM's] motion may also be construed as one for an indicative ruling under Rule 62.1." Cf. E. Bay Sanctuary Covenant v. Barr, 391 F. Supp. 3d 974, 980 (N.D. Cal. 2019), aff'd, 964 F.3d 832 (9th Cir. 2020), and aff'd sub nom. E. Bay Sanctuary Covenant v. Garland, 994 F.3d 962 (9th Cir. 2020) (relying on Rule 62.1 in the alternative after finding that the district court had jurisdiction to consider a motion to restore the nationwide scope of a preliminary injunction pursuant to Rule 62(d)); Fed. R. Civ. P. 62.1(a) ("If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.").

posted. Finally, as the Court explained in its August 10, 2026 Order, "[t]he court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." See id. (quoting People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency. 766 F.2d 1319, 1325 (9th Cir.), amended, 775 F.2d 998 (9th Cir. 1985)); see also Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1126 (9th Cir. 2005) (noting the Ninth Circuit's "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation").

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' motions to stay the Court's August 10, 2026 Order pending appeal.

IT IS SO ORDERED.

00:20
Initials of Preparer CMJ